1  EDMUND G. BROWN JR.
   Attorney General of the State of California
2  DANE R. GILLETTE
   Chief Assistant Attorney General
3  JULIE L. GARLAND
   Senior Assistant Attorney General
4  ANYA M. BINSACCA
   Supervising Deputy Attorney General
5  SCOTT C. MATHER, State Bar No. 190912
   Deputy Attorney General
6   455 Golden Gate Avenue, Suite 11000
    San Francisco, CA  94102-7004
7   Telephone:  (415) 703-5709
    Fax:  (415) 703-5843
8   Email:  Scott.Mather@doj.ca.gov

9  Attorneys for Respondent Ben Curry, Acting Warden

10

11              IN THE UNITED STATES DISTRICT COURT

12            FOR THE NORTHERN DISTRICT OF CALIFORNIA

13                    SAN FRANCISCO DIVISION

14

15  **HAROLD HAWKS,**                          C07-5039 JSW

16                              Petitioner,

17              v.                             Judge:     The Honorable
                                                          Jeffrey S. White
18  **BEN CURRY,**

19                              Respondent.

20

21  **ANSWER TO PETITION FOR WRIT OF HABEAS CORPUS; MEMORANDUM OF
                      POINTS AND AUTHORITIES**

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**TABLE OF CONTENTS**

Page

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................. 7

INTRODUCTION ............................................................. 7

ARGUMENT ............................................................. 7

THE STATE COURT'S DENIAL OF PETITIONER'S HABEAS CLAIMS WAS NOT CONTRARY TO OR AN UNREASONABLE APPLICATION OF CLEARLY ESTABLISHED FEDERAL LAW, NOR BASED ON AN UNREASONABLE DETERMINATION OF THE FACTS. ............................................................. 7

A.   Petitioner Received All Process Due under the Only United States Supreme Court law Addressing Due Process in the Parole Context. ............................................................. 8

B.   The Ninth Circuit's Some-Evidence test Is Not Clearly Established Supreme Court Law, and thus Is Not Applicable to Petitioner's Claims under AEDPA. ............................................................. 9

C.   Even if the Some-Evidence Standard Is Clearly Established Federal Law, the Standard Was Correctly Applied by the State Court. ............................................................. 12

D.   Petitioner Fails to Demonstrate that the Board's Decision Was Otherwise Unlawful. ............................................................. 17

   1.   Petitioner cannot show that the Board is required, before denying parole based in part on the commitment offense, to engage in a comparative review of similar offenses by other inmates or consider the proportionality of his sentence under the Board's sentencing matrices. ............................................................. 18

   2.   The Board may rely on static factors to deny parole. ............................................................. 19

   3.   The Board's regulatory provision regarding consideration of the commitment offense is not unconstitutionally vague given that the challenged term has more specific and detailed standards than similar terms used in death penalty statutes that have been upheld as valid against vagueness challenges in the United States Supreme Court. ............................................................. 21

CONCLUSION ............................................................. 24

1

**TABLE OF AUTHORITIES**

2                                                                                    **Page**

3    **Cases**

4    *Apprendi v. New Jersey*
     530 U.S. 466 (2000)                                                             15
5
     *Arave v. Creech*
6    507 U.S. 463 (1993)                                                         22, 23

7    *Benny v. U.S. Parole Comm'n*
     295 F.3d 977 (9th Cir. 2002)                                                     6
8
     *Biggs v. Terhune*
9    334 F.3d 910 (9th Cir. 2003)                                               20, 21

10   *Blakely v. Washington*
     542 U.S. 296 (2004)                                                             15
11
     *Carey v. Musladin*
12   __ U.S. __ 127 S. Ct. 649 (2006)                                          5, 9-12

13   *Crater v. Galaza*
     491 F.3d 1119 (9th Cir. 2007)                                                   10
14
     *Cunningham v. California*
15   __ U.S. __, 127 S. Ct. 856 (2007)                                              15

16   *Foote v. Del Papa*
     492 F.3d 1026 (9th Cir. 2007)                                                   11
17
     *Garner v. Jones*
18   529 U.S. 244 (2000)                                                            23

19   *Greenholtz v. Inmates of Nebraska Penal & Correctional Complex*
     442 U.S. 1 (1979)                                                      4, *passim*
20
     *Gurley v. Rhoden*
21   421 U.S. 200 (1975)                                                            17

22   *Gutierrez v. Griggs*
     695 F.2d 1195 (9th Cir. 1983)                                               6, 18
23
     *Hayward v. Marshall*
24   No. 06-5392, __ F.3d __, 2008 WL 43716 (9th Cir. Jan. 3, 2008)              20, 21

25   *In re Dannenberg*
     34 Cal. 4th 1061 (2005)                                                4, 12, 16-19
26
     *In re Honesto*
27   130 Cal. App. 4th 81 (2005)                                                    16

28

## TABLE OF AUTHORITIES  (continued)

**Page**

*In re Rosenkrantz*
29 Cal. 4th 616 (2002)                                              6, 12, 16, 17

*Irons v. Carey*
505 F.3d 846 (9th Cir. 2007)                                            12, 20

*Jancsek v. Oregon Board of Parole*
833 F.2d 1289 (9th Cir. 1987)                                                 9

*Jones v. Gomez*
66 F.3d 199 (9th Cir. 1995)                                                  16

*Juan H. v. Allen*
408 F.3d 1262 (9th Cir. 2005)                                                13

*Lockyer v. Andrade*
583 U.S. 63 (2003)                                                           8

*Maynard v. Cartwright*
486 U.S. 356 (1988)                                                      21-23

*Middleton v. Cupp*
768 F.2d 1083 (9th Cir. 1985)                                                18

*Nelson v. City of Irvine*
143 F.3d 1196 (9th Cir. 1998)                                                17

*Nguyen v. Garcia*
477 F.3d 716 (9th Cir. 2007)                                                 11

*Pedro v. Or. Parole Bd.*
825 F.2d 1396 (9th Cir. 1987)                                             8, 16

*Pulley v. Harris*
465 U.S. 37 (1984)                                                           18

*Rompilla v. Beard*
545 U.S. 374 (2005)                                                          10

*Rose v. Hodges*
423 U.S. 19 (1975)                                                        6, 18

*Sandin v. Conner*
515 U.S. 472 (1995)                                                          4

*Sass v. Cal. Bd. of Prison Terms*
461 F.3d 1123 (9th Cir. 2006)                                          4, 12, 20

*Schriro v. Landrigan*
___U.S.___, 127 S. Ct. 1933 (2007)                                       10, 11

**TABLE OF AUTHORITIES  (continued)**

|  | Page |
|---|---|
| *Stanley v. Cal. Supreme Court*<br>21 F.3d 359 (9th Cir. 1994) | 1 |
| *Superintendent v. Hill*<br>472 U.S. 445 (1985) | 9, 13 |
| *Wainwright v. Greenfield*<br>474 U.S. 284 (1986) | 11 |
| *Wiggins v. Smith*<br>539 U.S. 510 (2003) | 10 |
| *Wilkinson v. Austin*<br>545 U.S. 2384 (2005) | 9, 11 |
| *Williams v. Taylor*<br>529 U.S. 362 (2000) | 7 |
| *Wolff v. McDonnell*<br>418 U.S. 539 (1974) | 11 |
| *Ylst v. Nunnemaker*<br>501 U.S. 797 (1991) | 8 |

**Constitutional Provisions**

| United States Constitution | |
|---|---|
| Sixth Amendment | 11 |

**Statutes**

| 28 U.S.C. | |
|---|---|
| § 2254 Rule 2(a) | 1 |
| § 2254(a) | 5, 18 |
| § 2254(d) | 9, 12, 17 |
| § 2254(d)(1)-(2) | 7, 11 |
| § 2254(e)(1) | 13 |

| California Code of Regulations, Title 15 | |
|---|---|
| § 2402(a) | 18, 19 |
| § 2402(b) | 14, 16 |
| § 2402(c)(1)(A) | 14 |
| § 2402(c)(1)(E) | 15, 21, 23 |
| § 2403(a) | 18 |

| California Penal Code | |
|---|---|
| § 3041 | 4, 6, 18, 19 |
| § 3041(b) | 19 |
| § 3046(c) | 17 |

1  EDMUND G. BROWN JR.
   Attorney General of the State of California
2  DANE R. GILLETTE
   Chief Assistant Attorney General
3  JULIE L. GARLAND
   Senior Assistant Attorney General
4  ANYA M. BINSACCA
   Supervising Deputy Attorney General
5  SCOTT C. MATHER, State Bar No. 190912
   Deputy Attorney General
6   455 Golden Gate Avenue, Suite 11000
    San Francisco, CA  94102-7004
7   Telephone:  (415) 703-5709
    Fax:  (415) 703-5843
8   Email:  Scott.Mather@doj.ca.gov

9  Attorneys for Respondent Ben Curry, Acting Warden

10

11              IN THE UNITED STATES DISTRICT COURT

12          FOR THE NORTHERN DISTRICT OF CALIFORNIA

13                  SAN FRANCISCO DIVISION

14

| | |
|---|---|
| 15  **HAROLD HAWKS,** | C07-5039 JSW |
| 16                          Petitioner, | **ANSWER TO PETITION FOR WRIT OF HABEAS CORPUS; MEMORANDUM OF POINTS AND AUTHORITIES** |
| 17      v. | |
| 18  **BEN CURRY,** | |
| 19                          Respondent. | Judge:    The Honorable Jeffrey S. White |

20

21      As an Answer to the Petition for Writ of Habeas Corpus filed by inmate Harold Hawks,

22  Respondent Ben Curry, Acting Warden at the Correctional Training Facility in Soledad,

23  California,[1/] alleges as follows:

24      1.    Petitioner is lawfully within the custody of the California Department of Corrections

25  ─────────────────────────────────────────────

26      1. The proper respondent in this action is Acting Warden Curry. *Stanley v. Cal. Supreme Court*, 21 F.3d 359, 360 (9th Cir. 1994) (holding that the warden where petitioner is incarcerated is
27  the proper respondent); Rule 2(a), 28 U.S.C. § 2254. But because the actions complained of in this petition concern a parole consideration hearing, the Board of Parole Hearings is used interchangeably
28  with Respondent in this Answer and supporting memorandum of points and authorities.

Answer to Pet. for Writ of Habeas Corpus; Mem. of P. & A.              *Hawks v. Kane, et al.*
                                                                       C07-5039 JSW

1  and Rehabilitation after being convicted of second degree murder with use of a firearm in June

2  1987, and sentenced to an indeterminate prison term of 15 years to life. (Ex. 1, Abstract of

3  Judgment; Ex. 2, Jul. 27, 2006 Subsequent Parole Consideration Hearing Transcript, at 1.)

4  Petitioner was also convicted of two counts of assault with a deadly weapon, for which the

5  sentences were stayed. (Ex. 3, Abstract of Judgment-Commitment.) Petitioner is not challenging

6  the validity of his commitment or sentence in these proceedings, but rather the Board's July 2006

7  parole denial.

8      2.    Petitioner does not contest that he received notice of his 2006 parole hearing, appeared

9  at the hearing, and received a copy of the Board's decision finding him unsuitable for parole.

10  (*See generally* Pet.)

11      3.    The Board denied Petitioner parole at the 2006 hearing, finding that he was "not yet

12  suitable for parole and would pose an unreasonable risk of danger to society or a threat to public

13  safety if released from prison." The Board based this decision in part on the gravity of his

14  murder offense, which Hawks committed while driving on a freeway on August 22, 1986. The

15  murder arose out of a dispute between Hawks and the driver of another vehicle (a van driven by

16  Mr. Dwyer) regarding use of the "fast lane." At that time, Mr. Dwyer was driving the Dwyer

17  family and a friend to the hospital to seek care for the Dwyers' son, who had been injured in a

18  motorcycle competition. In response to the dispute over use of the passing lane, Hawks

19  eventually removed a shotgun while driving, loaded it, "aimed it at the van," and fired it. The

20  shot struck Patricia Dwyer, the boy's mother, killing her as it severed her aorta, and then exited

21  Ms. Dwyer's throat, striking and critically injuring passenger Wendy Varga. (Ex. 2 at 30-38; Ex.

22  4, Probation Officer's Report, at 2-5; Ex. 5, Mar. 2006 Life Prisoner Evaluation Report [Board

23  Report], at 1; Ex. 6, Nov. 2004 Board Report, at 1-2.)

24      4.    The Board denied Petitioner parole in part based on the circumstances of his murder

25  offense. The Board found that the murder was carried out in a manner that was "especially

26  callous," demonstrated "an exceptionally callous disregard for human life," involved multiple

27  victims, and was based on a motive that was "inexplicable in relation to the offense." In support

28  of its decision, the Board noted that Petitioner had been involved in "what would be described

1    today as a road rage incident." The Board specifically considered the fact that Petitioner was

2    "already angry when he chose to drive after drinking" and that rather disengaging from the

3    conflict, Petitioner chose to load a shotgun, point it at the Dwyers' van, and fire it. (Ex. 2 at 149-

4    50.)

5         5.    The Board also considered the opposition to parole from Riverside County District

6    Attorney and the victim's next of kin. (Ex. 2 at 150-51; see also Ex. 2 at 109-21 [Deputy District

7    Attorney's closing statement], 142-48 [victim's next-of-kin statements].)

8         6.    Although it found him unsuitable for parole, the Board commended Petitioner on

9    several criteria that tended to support his suitability for parole, including his positive in-prison

10   programming. (Ex. 2 at 151-52.)

11        7.    Before filing his federal petition, Petitioner sought relief in the state courts. Petitioner

12   filed a habeas corpus petition in the Riverside County Superior Court.[2/] On March 2, 2007, the

13   superior court denied his petition, stating that the Board has "broad discretion in release

14   decisions" and that the court "may inquire only whether some evidence in the record supports the

15   decision." The superior court then found that "[t]here is a sufficient record" supporting the

16   Board's decision to deny Petitioner parole. (Ex. 7, Cal. Super. Ct. Order.)

17        8.    Petitioner next filed a habeas corpus petition in the California Court of Appeal,

18   generally alleging the same claims as in his federal petition. On May 9, 2007, the Court of

19   Appeal summarily denied the petition. (Ex. 8, Cal. Ct. Appeal Pet.;[3/] Ex. 9, Cal. Ct. Appeal

20   Order.)

21        9.    Petitioner subsequently filed a petition for review in the California Supreme Court,

22   generally alleging the same claims as in his federal petition. On July 25, 2007, the California

23   Supreme Court summarily denied the petition. (Ex. 10, Cal. Sup. Ct. Pet. for Review; Ex. 11,

24

25   _____

      2. Respondent has not yet been able to obtain a copy of this petition.

26
      3. Petitioner's state court petitions are produced without the exhibits because such exhibits
27   are voluminous and because substantially the same exhibits have been filed with his federal habeas
     corpus petition. If this Court orders that these documents must be filed in this case, Respondent will
28   promptly file these exhibits.

     Answer to Pet. for Writ of Habeas Corpus; Mem. of P. & A.                    *Hawks v. Kane, et al.*
                                                                                  C07-5039 JSW

1  Cal. Sup. Ct. Order.)

2      10.   Based on the petitions filed and the orders issued in his state court proceedings,

3  Petitioner appears to have exhausted his cognizable claims in the instant petition.  Respondent

4  does not admit Petitioner has exhausted his claims to the extent they are more broadly interpreted

5  to encompass any systematic issues beyond this particular parole consideration hearing.

6      11.   Respondent denies that Petitioner has shown that the state court's denial of

7  habeas corpus was contrary to, or involved an unreasonable application of, clearly established

8  Supreme Court law, or that the denial was based on an unreasonable determination of facts in

9  light of the evidence presented.  Petitioner therefore fails to make a case for relief under the

10  Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA).

11      12.   Respondent denies that Petitioner has a federally protected liberty interest in parole.

12  The Supreme Court has set forth two methodologies for determining whether a state creates a

13  federally protected liberty interest and it is not clear which applies in the parole context.  Under

14  *Greenholtz v. Inmates of Nebraska Penal & Correctional Complex*, 442 U.S. 1 (1979), California

15  inmates do not have a federal liberty interest in parole because California's parole statute

16  involves a two-step process that does not impose a mandatory duty to grant parole release unless

17  and until the Board finds an inmate suitable for parole.  *See id.* at 12 (finding that a convicted

18  person does not have a federally protected liberty interest in parole release unless the state creates

19  the interest through the "unique structure and language" of its parole statutes, thereby giving

20  inmates an expectancy in parole release); *see also In re Dannenberg*, 34 Cal. 4th 1061, 1087-88

21  (2005) (clarifying that under California Penal Code section 3041, the setting of a parole release

22  date is neither mandatory nor presumed); *contra Sass v. Cal. Bd. of Prison Terms*, 461 F.3d

23  1123, 1128 (9th Cir. 2006).

24      13.   Under the alternative methodology of *Sandin v. Conner*, 515 U.S. 472 (1995),

25  an inmate's constitutional liberty interest is "generally limited to freedom from restraint which

26  . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents

27  of prison life."  *Id.* at 484.  A decision to continue incarcerating an inmate who is serving a

28  potential life term simply cannot amount to an "atypical and significant hardship . . . in relation

Answer to Pet. for Writ of Habeas Corpus; Mem. of P. & A.                    *Hawks v. Kane, et al.*
                                                                              C07-5039 JSW

4

1  to the ordinary incidents of prison life." *Id.*  Therefore, California inmates do not have a liberty

2  interest in parole under either methodology.  Accordingly, because Petitioner is not in custody in

3  violation of federal law, he has not alleged a federal question and this Court does not have

4  subject matter jurisdiction to decide his petition.  28 U.S.C. § 2254(a).

5      14.  Even if Petitioner has a federally protected liberty interest in parole, Respondent

6  alleges that Petitioner had an opportunity to present his case before the Board, and that the Board

7  provided him with a detailed explanation as to why he was denied parole.  Hence, Petitioner

8  received all the process due under *Greenholtz*.

9      15.  There is no United States Supreme Court decision requiring a state parole decision

10  to be supported by some evidence.  *See Carey v. Musladin,* __ U.S. __ 127 S. Ct. 649, 654

11  (2006) (holding that the absence of Supreme Court law on a particular issue preclude habeas

12  relief under AEDPA).  Therefore, Petitioner has not shown that the state court's denial of habeas

13  corpus was contrary to, or involved an unreasonable application of, clearly established Supreme

14  Court law, or that the denial was based on an unreasonable determination of facts in light of the

15  evidence presented.  Petitioner therefore fails to make a prima facie case for relief under

16  AEDPA.

17      16.  If an evidentiary standard of review applies, Respondent denies that it is a higher

18  standard than some evidence.

19      17.  Respondent denies that Petitioner must be presumed suitable for parole, is entitled to a

20  fixed and uniform parole date under the Board's sentencing matrices, or that the Board cannot

21  find him unsuitable for parole until it has conducted a comparative review between the

22  circumstances of Petitioner's commitment offense and comparable offenses committed by other

23  inmates.

24      18.  Respondent denies that the Board was required to parole Petitioner in 2005 based on

25  the evidence in favor of parole.

26      19.  Respondent denies that the Board has unlawfully continued to rely on the

27  circumstances of Petitioner's murder offense to deny him parole.

28      20.  Respondent denies that Petitioner was entitled to parole under the statutory language of

Answer to Pet. for Writ of Habeas Corpus; Mem. of P. & A.                    *Hawks v. Kane, et al.*
                                                                             C07-5039 JSW

1  Penal Code section 3041 or that the Board's decision was based on an unlawful policy or bias

2  against paroling indeterminate term prisoners rather than on an individualized consideration of

3  Petitioner's suitability for parole.

4     21.   Respondent denies that the Board is subject to the standards imposed on sentencing

5  judges by the United States Supreme Court.

6     22.   Respondent denies that the Board's parole regulations are unconstitutionally vague.

7     23.   Respondent denies that the Board improperly addressed the objections made by his

8  attorney at the hearing.  The Board also denies that Petitioner's allegations regarding his

9  attorneys' objections state a federal claim as opposed to addressing violations of state regulations

10 and the applicable state-law hearing procedures. *See, e.g., Rose v. Hodges*, 423 U.S. 19, 21

11 (1975) (holding state law claims not cognizable in federal habeas corpus); *Gutierrez v. Griggs*,

12 695 F.2d 1195, 1197-98 (9th Cir. 1983).

13    24.   Respondent denies that the Board's decision denying parole violated Petitioner's

14 federal due process rights.

15    25.   Respondent affirmatively alleges that Petitioner fails to state or establish any grounds

16 for federal habeas corpus relief.

17    26.   If the petition is granted, Petitioner's remedy is limited to a new parole consideration

18 hearing before the Board that comports with due process. *Benny v. U.S. Parole Comm'n*, 295

19 F.3d 977, 984-85 (9th Cir. 2002) (finding that the Board must exercise the discretion in

20 determining whether or not an inmate is suitable for parole); *Rosenkrantz*, 29 Cal. 4th at 658

21 (finding that the proper remedy if a Board decision lacks some evidence is a new hearing that

22 comports with due process).

23    27.   Respondent does not contend that there is any procedural bar to this action, including

24 statute of limitations or non-retroactivity.

25    28.   Respondent denies that an evidentiary hearing is necessary in this matter.

26    29.   Except as expressly admitted above, Respondent denies, generally and

27 specifically, each allegation of the petition, and specifically denies that Petitioner's

28 administrative, statutory, or constitutional rights have been violated in any way.

1    For the reasons stated in this Answer and in the following Memorandum of Points and

2    Authorities, the Court should deny the Petition.

3                    **MEMORANDUM OF POINTS AND AUTHORITIES**

4                                    **INTRODUCTION**

5    Petitioner challenges the Board's July 2006 parole denial on the basis that the decision

6    violated his right to due process on several grounds, including that the decision was not

7    supported by sufficient evidence. This Court should deny his Petition because the state court

8    decisions denying him relief were neither contrary to, nor an unreasonable application of, federal

9    law as established by the Supreme Court, nor based on an unreasonable determination of the

10    facts. Petitioner was provided an opportunity to be heard and a written copy of the Board's

11    decision, which is all the process he is entitled to receive. And even if this Court applies the

12    some-evidence standard, Petitioner's claims still fail because the Board's decision that Petitioner

13    was unsuitable for parole and would pose an unreasonable danger to society if released was

14    supported by some evidence.

15                                    **ARGUMENT**

16    **THE STATE COURT'S DENIAL OF PETITIONER'S HABEAS
      CLAIMS WAS NOT CONTRARY TO OR AN UNREASONABLE**

17    **APPLICATION OF CLEARLY ESTABLISHED FEDERAL LAW,
      NOR BASED ON AN UNREASONABLE DETERMINATION**

18    **OF THE FACTS.**

19    Under AEDPA, when a state inmate's claim has been adjudicated on the merits in state

20    court, a federal court may grant a writ of habeas corpus on the same claim only if the state court's

21    adjudication was either (1) "contrary to, or involved an unreasonable application of, clearly

22    established Federal law, as determined by the Supreme Court of the United States;" or (2) "based

23    on an unreasonable determination of the facts in light of the evidence presented at the State Court

24    proceeding." 28 U.S.C. § 2254(d)(1)-(2).

25    "Clearly established federal law, as determined by the Supreme Court of the United States,"

26    refers to "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time

27    of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000). A state court

28    decision is contrary to established federal law if "the state court applies a rule that contradicts the

Answer to Pet. for Writ of Habeas Corpus; Mem. of P. & A.                *Hawks v. Kane, et al.*
                                                                          C07-5039 JSW

7

1  governing law set forth in [United States Supreme Court] cases," or "the state court confronts a

2  set of facts that are materially indistinguishable from a decision of [the United States Supreme]

3  Court and nevertheless arrives at a result different from [the Court's] precedent." *Lockyer v.*

4  *Andrade*, 583 U.S. 63, 73 (2003) (citations and internal quotation marks omitted). A state court

5  decision is an unreasonable application of clearly established law "if the state court identifies the

6  correct governing legal principle from [the United States Supreme Court's] decision but

7  unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 75. It is not enough

8  that the state court applies the law erroneously or incorrectly; rather, the application must be

9  objectively unreasonable. *Id.* at 75-76.

10      When, as here, the California Supreme Court denies a habeas corpus petition without

11  comment, the federal court will look to the last reasoned decision as the basis for the state court's

12  judgment. *Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991). Contrary to Petitioner's

13  allegations, the Riverside County Superior Court's order denying Petitioner's habeas claims was

14  a reasoned decision. (Ex. 7.) Specifically, the superior court held that the Board has "broad

15  discretion in release decisions" and that the court "may inquire only whether some evidence in

16  the record supports the decision." (*Id.*) The superior court then found that "[t]here is a sufficient

17  record" supporting the Board's decision to deny Petitioner parole. (*Id.*) As this decision is

18  neither contrary to or an unreasonable application of federal law, nor based on an unreasonable

19  determination of the facts in light of the evidence presented, Petitioner fails to establish a

20  violation of AEDPA standards. Therefore, his petition for writ of habeas corpus must be denied.

21  **A.    Petitioner Received All Process Due under the Only United States Supreme**
       **Court law Addressing Due Process in the Parole Context.**

22

23      The setting of a parole date is not part of the criminal prosecution so the full panoply of

24  rights afforded a defendant in a criminal proceeding are not constitutionally mandated in a parole

25  proceeding. *Pedro v. Or. Parole Bd.*, 825 F.2d 1396, 1398-99 (9th Cir. 1987). The only

26  Supreme Court decision to address the requirements of due process at a parole consideration

27  hearing has held that a parole board's procedures are constitutionally adequate if the inmate is

28  given an opportunity to be heard and a decision informing him of the reasons he did not qualify

Answer to Pet. for Writ of Habeas Corpus; Mem. of P. & A.                    *Hawks v. Kane, et al.*
                                                                             C07-5039 JSW

1    for parole. *Greenholtz*, 442 U.S. at 16.[4]

2          Here, Petitioner does not contend that he failed to receive an opportunity to be heard and

3    a statement of the grounds for which the Board found him unsuitable for parole. (*See generally*

4    Pet.) Similarly, the Board's hearing transcript reflects that Petitioner appeared at the hearing and

5    received an opportunity to be heard, and that the Board issued a decision informing him of the

6    grounds upon which he was denied parole. (Ex. 2.) Accordingly, because Petitioner thus

7    received all the process due under the United States Supreme Court precedent finding a federal

8    liberty interest in discretionary parole release, the state court decision was not contrary to or an

9    unreasonable application of clearly established federal law as determined by the United States

10   Supreme Court. *See* 28 U.S.C. § 2254(d).

11   **B.    The Ninth Circuit's Some-Evidence test Is Not Clearly Established Supreme Court
         Law, and thus Is Not Applicable to Petitioner's Claims under AEDPA.**

12

13         Petitioner alleges that the Board's decision must be overturned in part because it is not

14   supported by some evidence. This argument stems from the holding in *Superintendent v. Hill*,

15   472 U.S. 445, 455 (1985) in which the United States Supreme Court determined that some

16   evidence must support the decision of a prison disciplinary board to revoke good time credits. In

17   *Jancsek v. Oregon Board of Parole*, 833 F.2d 1289, 1290 (9th Cir. 1987), the Ninth Circuit held

18   that this standard applies not only in the disciplinary context, but the parole context as well, and

19   that some evidence must support the Board's denials of parole. Because the holding in *Jancsek*

20   is not clearly established federal law under AEDPA standards, the some-evidence standard may

21   not be applied in federal habeas proceedings challenging parole denials.

22         As the Supreme Court clarified in *Musladin*, 127 S. Ct. at 654, where the Court has not

23   applied a test or standard to a certain type of case it cannot be said that the failure of a state court

24   to do so was an unreasonable application of clearly established federal law. In *Musladin*, the

---

25        4. The Supreme Court has continued to cite *Greenholtz* approvingly for the proposition that

26   the "level of process due for inmates being considered for release on parole includes an opportunity
     to be heard and notice of any adverse decision" and noted that *Greenholtz* remains "instructive for

27   [its] discussion of the appropriate level of procedural safeguards." *Wilkinson v. Austin*, 545 U.S.

28   2384, 2397 (2005).

Answer to Pet. for Writ of Habeas Corpus; Mem. of P. & A.                    *Hawks v. Kane, et al.*
                                                                             C07-5039 JSW

1  petitioner challenged a state court decision finding that the fact that the victim's family wore

2  buttons displaying the victim's image at the defendant's trial was not inherently prejudicial. *Id.*

3  at 650. The Ninth Circuit held that the state court decision was contrary to or an unreasonable

4  application of federal law regarding state-sponsored courtroom practices. *Id.* In reversing the

5  Ninth Circuit, the Supreme Court noted that although it had articulated a test to determine

6  whether state-sponsored courtroom practices were inherently prejudicial, it had never addressed

7  the issue of whether conduct by a private party was so prejudicial that it deprived the defendant

8  of his right to a fair trial. *Id.* at 654. "Given the lack of holdings" on the specific issue, the Court

9  reversed the Ninth Circuit and held that the state court's decision was not an unreasonable

10  application of federal law. *Id.*

11       The Supreme Court has since reiterated its holding in *Musladin*, confirming that a state

12  court decision cannot be contrary to or an unreasonable application of federal law where the

13  Court has not addressed what protection or test is required in a specific factual or legal scenario.

14  In *Schriro v. Landrigan*, ___U.S.___, 127 S. Ct. 1933 (2007), the Ninth Circuit found that the

15  state court unreasonably applied *Wiggins v. Smith*, 539 U.S. 510 (2003) and *Rompilla v. Beard*,

16  545 U.S. 374, 381 (2005) when it denied federal habeas relief to a defendant asserting ineffective

17  assistance of counsel, despite the fact that he had refused to allow the presentation of any

18  mitigating evidence. *Landrigan*, 127 S. Ct. at 1942. The Supreme Court reversed that part of the

19  decision after distinguishing the facts of the case from those in *Wiggins* and *Rompilla*. *Wiggins*

20  did not address a situation in which the client had interfered with counsel's efforts to present

21  mitigating evidence. *Id.* And in *Rompilla*, the defendant had not informed the court that he did

22  not want mitigating evidence presented. *Id.* Because the high court had never addressed a

23  situation like the one raised in *Landrigan*, the state court's decision was not objectively

24  unreasonable. *Id.*

25       Several recent Ninth Circuit decisions also emphasize that there can be no clearly

26  established federal law where the Supreme Court has never addressed a particular issue or

27  applied a certain test to a specific type of proceeding. *Crater v. Galaza*, 491 F.3d 1119, 1122-23,

28  1126-27 & n.8 (9th Cir. 2007) (citing *Musladin*, the Ninth Circuit acknowledged that decisions

Answer to Pet. for Writ of Habeas Corpus; Mem. of P. & A.          *Hawks v. Kane, et al.*
                                                                    C07-5039 JSW

1  by courts other than the Supreme Court as "non-dispositive" under § 2254(d)(1)); *Foote v. Del*

2  *Papa*, 492 F.3d 1026, 1029-30 (9th Cir. 2007) (affirming district court's denial of petition

3  alleging ineffective assistance of appellate counsel based on an alleged conflict of interest

4  because no Supreme Court case has held that such an irreconcilable conflict violates the Sixth

5  Amendment); *Nguyen v. Garcia*, 477 F.3d 716, 718, 727 (9th Cir. 2007) (holding that state

6  court's decision finding *Wainwright v. Greenfield*, 474 U.S. 284 (1986) did not apply to a state

7  court competency hearing was not contrary to clearly established federal law because Supreme

8  Court had not held that *Wainwright* applied to competency hearings).

9          Because the Supreme Court developed the some-evidence standard in the context of a

10  prison disciplinary hearing, which is fundamentally different from a parole proceeding, applying

11  this standard to a parole decision cannot be clearly established federal law. *Musladin*, 127 S. Ct.

12  at 654; *Landrigan*, 127 S. Ct. at 1942. The level of due process protections to which an inmate is

13  entitled is directly related to the level of his liberty interest and the nature of the decision being

14  made. *Greenholtz*, 442 U.S. at 13-14. At a disciplinary hearing, the inquiry is retrospective and

15  factual in nature, and the prisoner faces a potential loss of credits. *Greenholtz*, 442 U.S. at 14.

16  But a decision to parole an inmate is fundamentally different. First, the level of liberty interest

17  an inmate has in the possibility of parole is markedly different from that of an inmate who is

18  facing a loss of credits. *Wolff v. McDonnell*, 418 U.S. 539, 560-61 (1974) (contrasting the

19  different interests that a parolee and a prisoner may have in their deprivation of liberty);

20  *Greenholtz*, 442 U.S. at 13-14 (distinguishing the parole suitability decision from the parole

21  revocation and disciplinary decisions). Second, a parole decision is not factual in nature. Rather,

22  it is a predictive and subjective decision requiring discretionary analysis of the inmate's

23  suitability for release. *Greenholtz*, 442 U.S. at 9-10; *Wilkinson*, 545 U.S. at 229. In fact, due to

24  the discretionary nature of parole decisions, the Supreme Court has held that, in contrast to prison

25  disciplinary hearings, due process does not require the decision-maker to specify the evidence

26  showing that a prisoner is unsuitable for parole. *Greenholtz*, 442 U.S. at 15.

27          In summary, applying the some-evidence standard to a parole proceeding is not clearly

28  established federal law. Instead, the *only* clearly established Supreme Court authority describing

Answer to Pet. for Writ of Habeas Corpus; Mem. of P. & A.                    *Hawks v. Kane, et al.*
                                                                              C07-5039 JSW

1   the process due when there is a federal liberty interest in parole simply requires that the inmate be

2   given an opportunity to be heard and advised of the reasons he was not found suitable for parole.

3   *Greenholtz*, 442 U.S. at 16.  Indeed, in *Greenholtz* the Supreme Court rejected the argument that

4   due process requires an evidentiary standard of review in parole cases, holding that there is

5   "nothing in the due process concepts as they have thus far evolved that requires the Parole Board

6   to specify the particular 'evidence' . . . on which it rests the discretionary determination that an

7   inmate is not ready for conditional release." *Id.* at 15-16.  The Supreme Court has thus explicitly

8   rejected the notion that a parole decision must be supported by any particular quantum of

9   evidence. *Id.*

10       Accordingly, because application of the some-evidence standard to parole denial

11  challenges is not clearly established Supreme Court law regarding federal due process, AEDPA

12  precludes this standard from being applied to Petitioner's claims in this case. *See* 28 U.S.C. §

13  2254(d); *Musladin*, 127 S. Ct. at 654.

14  **C.    Even if the Some-Evidence Standard Is Clearly Established Federal Law, the**
         **Standard Was Correctly Applied by the State Court.**
15

16       Even if the some-evidence standard is clearly established federal law for AEDPA

17  purposes, Petitioner's claim would nonetheless fail because he cannot show that the state court

18  unreasonably applied this standard or made an unreasonable determination of the facts.[5/]  Under

19  California law the proper level of judicial review is whether "some evidence in the record before

20  the Board supports the decision to deny parole, based upon the factors specified by statute and

21  regulation." *Rosenkrantz*, 29 Cal. 4th at 658.  Similarly, as a matter of federal due process, the

22  some-evidence standard "does not require examination of the entire record, independent

23  assessment of the credibility of witnesses, or weighing of the evidence;" rather, it is satisfied if

24  _____

25       5. Petitioner asserts that a preponderance-of-evidence standard rather than the some-evidence
    standard should be applied. (Pet. at 71-76.)  But although Petitioner contends that the federal courts
26  should not follow the California Supreme Court's decision to apply the some-evidence standard in
    both *Dannenberg* and *Rosenkrantz*, the Ninth Circuit has also recently reiterated its prior
27  determination that the some-evidence standard is the appropriate standard. *Sass*, 461 F.3d at 1128-
    29; *Irons v. Carey*, 505 F.3d 846, 851 (9th Cir. 2007).
28

Answer to Pet. for Writ of Habeas Corpus; Mem. of P. & A.                    *Hawks v. Kane, et al.*
                                                                            C07-5039 JSW

1   there is "any evidence in the record that could support the conclusion reached by the [B]oard."

2   *Hill*, 472 U.S. at 455-57; *see also Sass*, 461 F.3d at 1129 (stating that "*Hill's* some evidence

3   standard is minimal.")

4        Although Petitioner invites the Court to re-examine the facts of his case and re-weigh the

5   evidence presented to the Board, AEDPA does not permit this degree of judicial intrusion.

6   Petitioner bears the burden of proving that the state court's factual determinations were

7   objectively unreasonable. 28 U.S.C. § 2254(e)(1); *Juan H. v. Allen*, 408 F.3d 1262, 1270 (9th

8   Cir. 2005).   So long as the state court's reasoned decision was a reasonable determination of the

9   facts presented, Petitioner's claim must fail.

10       Moreover, in assessing the state court's review of Petitioner's claims, deference must be

11  afforded to both the state court's review and the underlying Board decision.   The Supreme Court

12  has recognized the difficult and sensitive task faced by the Board members in evaluating the

13  advisability of parole release.  *Greenholtz*, 442 U.S. at 9-10.  Thus, contrary to Petitioner's belief

14  that he should be paroled based on the evidence in support of parole presented at the hearing

15  (Pet. at 41-47), the Supreme Court has stated that in parole release, there is no set of facts which,

16  if shown, mandate a decision favorable to the inmate.  *Greenholtz*, 442 U.S. at 9-10.  Instead,

17  under the some-evidence standard, the court's inquiry is limited solely to determining whether

18  the state court properly found that the Board's decision to deny parole is supported by some

19  evidence in the record, i.e., any evidence.  *Hill*, 472 U.S. at 455.  As a result, the state court

20  properly determined that "[t]he court may inquire only whether some evidence in the record

21  supports the [Board's] decision." (Ex. 7.)

22       Here, Petitioner cannot show that the state court's decision denying him relief was based

23  on an unreasonable application of the *Hill* some-evidence standard or an unreasonable

24  determination of the facts.  In upholding the Board's parole denial, the state court found that the

25  Board's decision denying Petitioner parole was supported by some evidence. (Ex. 7.)

26  Specifically, the Board found that the murder was carried out in a manner that was "especially

27  callous," demonstrated "an exceptionally callous disregard for human life," involved multiple

28  victims (one killed and one injured), and was based on a motive that was "inexplicable in relation

Answer to Pet. for Writ of Habeas Corpus; Mem. of P. & A.                    *Hawks v. Kane, et al.*
C07-5039 JSW

1  to the offense." (Ex. 2 at 149-50.)  In support of its decision, the Board indicated its decision

2  was based on the evidence regarding the offense, concluding that Petitioner had been involved in

3  "what would be described today as a road rage incident." (*Id.* at 150.)  The Board specifically

4  noted as adverse circumstances that Petitioner was "already angry when he chose to drive after

5  drinking" and that rather disengaging from the conflict, Petitioner chose to load a shotgun, point

6  it at the Dwyer's van, and fire it. (*Id.*)  As a result, the state court reasonably determined that the

7  Board's findings satisfied the minimally stringent some-evidence standard.

8        In challenging the reasonableness of the state court decisions, Petitioner disputes each of

9  the Board's findings.  His arguments, however, are without merit and based on an artificially

10  narrow interpretation of the broad range of discretion due to the Board in considering the

11  circumstances of an inmate's offense under its regulatory guidelines.  For instance, Petitioner

12  contends that the Board improperly relied on the existence of multiple victims given that both

13  victims had been wounded by a single slug he fired and that there is no evidence that "multiple

14  victims were intentionally and independently attacked or killed." (Pet. at 35.)  Contrary to

15  Petitioner's argument, the Board's regulations do not require such a showing, but rather provide

16  that a relevant circumstance to be considered is any offense in which "[m]ultiple victims were

17  attacked, injured or killed in the same or separate incidents."  Cal. Code Regs. tit. 15, §

18  2402(c)(1)(A).  Indeed, at least two of the terms defining terms regarding multiple

19  victims—those "injured" or "killed"—can include both intentional and unintentional victims. *Id.*

20  Moreover, in addition to this general guideline regarding the commitment offense, the

21  regulations also provide that the Board must consider "[a]ll relevant, reliable information,"

22  including that pertaining to the commitment offense. *Id.* at § 2402(b).  Thus, the Board properly

23  considered the fact that Petitioner's murder offense had involved multiple victims.

24        Petitioner also argues that the Board could not properly deem his murder offense as

25  having been committed with exceptionally callous disregard for human life because there is no

26  evidence that his crime exceeded the bare minimum elements of a second-degree murder offense.

27  (Pet. at 37-39.)  But there is no clearly established Supreme Court law mandating such a

28  standard, nor does such a standard appear in the Board's regulations.

1    Furthermore, the Board also considered the circumstances of the murder offense during

2 the hearing, which reflected that Petitioner's conduct was not an immediate, reflexive response to

3 his anger at the manner in which the Dwyers' van was being driven.  Rather, the Board

4 specifically noted that rather than disengaging from the traffic conflict with the Dwyers,

5 Petitioner chose to load a shotgun, point it at the Dwyer's van, and fire it.  (Ex. 2 at 150.)  Indeed,

6 according to Petitioner's own statements he took the time while driving with his two-year-old

7 son in the backseat to reach back and grab a bag from his backseat that contained a shotgun and

8 ammunition, remove the shotgun, grab a shell, load the shotgun, and then aim the shotgun in the

9 direction of the Dwyer's van from "one or two car lengths" away and fire a shot towards the van.

10 (*Id.* at 41-42.)  Thus, rather than an instinctive, reflexive action — such as cutting another driver

11 off in traffic — Petitioner's offense required purposeful, deliberate, and calculated actions

12 beyond the minimum elements of a second-degree murder offense.

13    Petitioner also attempts to argue that becoming angry at another person over a traffic

14 dispute is not a very trivial motive for committing murder, but rather that his motive was

15 "explainable" even if not "excusable" given his "enraged and overwhelmed state."  (Pet. at 39.)

16 Although such emotions may serve to explain, at least in part, his motive for the crime, that

17 explanation does not make the motive for his murderous actions any less trivial "in relation to the

18 offense."  Cal. Code Regs. tit. 15, § 2402(c)(1)(E).  Thus, the Board's finding regarding the

19 trivial motive for Petitioner's murder offense is supported by some evidence.

20    In addition to disputing the Board's factual findings, Petitioner also alleges that the Board

21 erred in making factual findings that exceeded those made by the jury in his criminal case.  (Pet.

22 at 27-28, 32 n.6, 34.)  In support of this claim, Petitioner cites the due process requirements

23 applicable to a sentencing authority in a criminal matter that restrict it from increasing the

24 punishment for a crime based on factors not proven to a jury beyond a reasonable doubt.  (*Id.*)[6]

25 There is no authority, however, for applying this criminal judicial standard in the context of an

26

27    6.  Specifically, Petitioner relies on *Apprendi v. New Jersey*, 530 U.S. 466 (2000); *Blakely*

28 *v. Washington*, 542 U.S. 296 (2004); and *Cunningham v. California*, __ U.S. __, 127 S. Ct. 856 (2007).

1   administrative parole proceeding.  To the contrary, it is well established that the Board is not

2   limited by the nature of the conviction as to the evidence it can consider, most significantly

3   because the Board is not required to support its decision with evidence that meets the criminal

4   beyond-a-reasonable-doubt standard.  *See Pedro*, 825 F.2d at 1399 (holding that the full panoply

5   of rights due a defendant in a criminal proceeding is not constitutionally mandated in a parole

6   proceeding because the setting of a parole term is not part of a criminal prosecution);

7   *Rosenkrantz*, 29 Cal. 4th at 678-79.

8       Rather than being limited by the facts proved in a criminal trial, the Board's regulations

9   require that it consider "[a]ll relevant, reliable information."  Cal. Code Regs. tit 15, § 2402(b).

10  Thus, the California Supreme Court has found that "the parole authority may credit evidence

11  suggesting the inmate committed a greater degree of the offense than his or her conviction

12  evidences," such as that "one convicted only of second degree murder acted with premeditation

13  and deliberation."  *Dannenberg*, 34 Cal. 4th at 1095 n.16 (2005).  This principle is equally

14  applicable in cases where the inmate's conviction was by plea agreement rather than jury

15  determination.  *In re Honesto*, 130 Cal. App. 4th 81, 93 (2005) ("The applicable statute and

16  regulations make the facts of the offense a critical part of the Board's consideration of parole

17  suitability, and this was true when [petitioner] entered into the plea agreement").  Thus, the

18  Board properly considered all the facts regarding Petitioner's murder offense.

19      Petitioner also alleges that the Board's decision should not have been upheld merely

20  because the Board's findings were supported by some evidence, but rather only if those findings

21  established that he currently posed an unreasonable risk of danger to society.  (Pet. at 29-30.)

22  But the only authority Petitioner cites in support of this argument is California Court of Appeal

23  opinions discussing California law.  (*Id.* at 30.)  Thus, Petitioner's argument fails to demonstrate

24  a *federal* due process violation.  *See Jones v. Gomez*, 66 F.3d 199, 204-05 (9th Cir. 1995)

25  (holding that a petitioner has the burden of alleging specific facts that show a federal claim is

26  presented, or the petition is subject to dismissal).  Further, regardless of any state appellate court

27  decision, the California Supreme Court has interpreted California's statutory and regulatory

28  parole provisions as establishing that an inmate's right to due process is satisfied if the Board's

Answer to Pet. for Writ of Habeas Corpus; Mem. of P. & A.                          *Hawks v. Kane, et al.*
                                                                                    C07-5039 JSW

1  findings regarding the circumstances of the crime are supported by some evidence. *Dannenberg,*

2  34 Cal.4th at 1094-95; *In re Rosenkrantz,* 29 Cal.4th 616, 665 (2002).[7]  In any event, Petitioner's

3  claim does not establish a basis for relief given that he cannot show that the state appellate court

4  opinions he relies on are also supported by clearly established United States Supreme Court law.

5      Finally, contrary to Petitioner's allegations (Pet. at 52-53), the Board properly considered

6  the opposition to parole from the Riverside County District Attorney and the deceased victim's

7  next-of-kins' statements from Ms. Dwyer's children regarding the impact that the loss of their

8  mother had on their lives. *See Dannenberg,* 34 Cal. 4th at 1084, 1085 (holding that the Board is

9  not only required to consider the public opposition to parole, but that this factor "may be

10  influential, and even decisive in appropriate cases"); Cal. Penal Code § 3046(c); (Ex. 2 at 150-

11  51; *see also* Ex. 2 at 109-21 [Deputy District Attorney's closing statement], 142-48 [victim's

12  next-of-kin statements].)  Accordingly, the Board properly considered the public opposition to

13  parole.

14      In summary, the state court properly found that the Board had sufficient evidence to deny

15  parole.  Thus, Petitioner cannot demonstrate that the state court's decision denying his federal

16  habeas claims was contrary to or an unreasonable application of clearly established Supreme

17  Court law, or that it was based on an unreasonable interpretation of the facts.  28 U.S.C. §

18  2254(d); *Wilson,* 355 F.3d at 1154.  As a result, Petitioner's federal habeas corpus petition should

19  be denied.

20  **D.      Petitioner Fails to Demonstrate that the Board's Decision Was Otherwise Unlawful.**

21      In addition to challenging whether the evidence demonstrated his suitability for parole,

22  Petitioner also alleges that the Board's decision was unlawful on several other grounds.

23  Petitioner's arguments, however, are without merit, and thus insufficient to demonstrate the state

24

25      7. While this Court is generally not bound by state-court decisions, federal courts are bound

26  by the decision of the state's highest court interpreting its own law, *Nelson v. City of Irvine,* 143 F.3d
   1196, 1206-07 (9th Cir. 1998), as the state's highest court is the final arbiter of the meaning of the

27  state statutes.  *Gurley v. Rhoden,* 421 U.S. 200, 208 (1975).  Thus, the California Supreme Court's
   interpretation of California's parole statute in *Dannenberg* and *Rosenkrantz* is binding authority in

28  this case.  *See Nelson,* 143 F.3d at 1206-07.

Answer to Pet. for Writ of Habeas Corpus; Mem. of P. & A.                    *Hawks v. Kane, et al.*
                                                                            C07-5039 JSW

1   court unreasonably denied his petition.

2        **1.**   **Petitioner cannot show that the board is required, before denying**
             **parole based in part on the commitment offense, to engage in a**
3              **comparative review of similar offenses by other inmates or consider**
             **the proportionality of his sentence under the board's sentencing**
4              **matrices.**

5       Petitioner alleges that his federal due process rights also require that the Board conduct a

6   comparative review of similar offenses committed by other inmates in determining whether

7   Petitioner's crime is a factor weighing against suitability for parole. (Pet. at 23 n.17, 33, 58-70.)

8   In addition, Petitioner alleges that, regardless of whether the Board finds him unsuitable for

9   parole, the Board is required to set him a proportional release date based on the Board's

10   sentencing matrices. (*Id.* at 22-25, 34-36, 71.) Petitioner's claims, however, are contrary to the

11   provisions of California Penal Code section 3041, and thus he cannot show that the state court

12   unreasonably denied relief as to these claims.

13       As an initial matter, Petitioner's claims are predicated on state law questions, and thus not

14   cognizable in federal habeas corpus. *See, e.g., Rose*, 423 U.S. at 21; *Gutierrez*, 695 F.2d at

15   1197-98. Here, Petitioner's allegations fail to implicate a federal claim to the extent they are

16   based on his construction of applicable California parole regulations. As a result, the Petition

17   must be denied as to this claim. 28 U.S.C. § 2254(a); *Rose,* 423 U.S. at 21; *Gutierrez,* 695 F.2d

18   at 1197-98. Moreover, even if Petitioner is alleging that the state court erroneously interpreted or

19   applied the Board's regulations when it denied his petition, a federal court may not challenge a

20   state court's interpretation or application of state law, *Middleton v. Cupp*, 768 F.2d 1083, 1085

21   (9th Cir. 1985), or grant relief "on the basis of a perceived error of state law." *Pulley v. Harris*,

22   465 U.S. 37, 41 (1984).

23       Further, even if addressed on the merits, California Penal Code section 3041 and the

24   applicable regulations governing parole separate the suitability determination from setting a

25   release date, and make it clear that the determination of an appropriate release date occurs only

26   *after* deciding that an inmate is suitable for parole. Cal. Penal Code § 3041; Cal. Code Regs. tit.

27   15, §§ 2402(a), 2403(a) *Dannenberg*, 34 Cal. 4th at 1082-83. As a result, the Board may

28   lawfully deny Petitioner parole without "comparing [his] crime to other second degree murders,

Answer to Pet. for Writ of Habeas Corpus; Mem. of P. & A.                                 *Hawks v. Kane, et al.*
                                                                     C07-5039 JSW

1   to [the Board's] base term matrices, or to the minimum statutory prison term for that offense."

2   *Dannenberg*, 34 Cal. 4th at 1098. Accordingly, Petitioner cannot demonstrate that the state court

3   unreasonably denied his claims regarding the Board's alleged failure to conduct a comparative

4   review or set a proportional parole release date.

5         **2.     The Board may rely on static factors to deny parole.**

6         Petitioner also argues that due process precludes the Board from relying on static

7   factors—namely, the circumstances of the commitment offense—to deny parole. (Pet. at 25-26,

8   30-31, 34, 54-58.) For several reasons, Petitioner cannot show that the state court's rejection of

9   this claim was contrary to, or an unreasonable application of, clearly established Supreme Court

10  law.

11        First, California Penal Code section 3401 requires that the parole authority examine the

12  commitment offense, providing that the Board "shall set a release date unless it determines that

13  the gravity of the current convicted offense or offenses, or the timing and gravity of current or

14  past convicted offense or offenses, is such that consideration of the public safety requires a more

15  lengthy period of incarceration." Cal. Penal Code § 3041(b); *Dannenberg*, 34 Cal. 4th at 1080.

16  The applicable regulations also provide that a prisoner shall be denied parole if he "will pose an

17  unreasonable risk of danger to society if released from prison." Cal. Code Regs. tit. 15, §

18  2402(a). As a result, the California Supreme Court held in *Dannenberg* that the Board may rely

19  *solely* on the circumstances of the commitment offense to deny parole. 34 Cal. 4th at 1094.

20  Hence, "an inmate whose offense was so serious as to warrant, at the outset, a maximum term of

21  life in prison, may be denied parole during whatever time the Board deems required for 'this

22  individual' by 'consideration of the *public safety*.'" *Id.* at 1084.[8]

23        Moreover, the Board's consideration of public safety is not limited solely to the inmate's

24  potential for violence as suggested by Petitioner's argument that it is improper to consider the

25  _____

26      8. Thus while Petitioner is correct that he could earn good time credits against his sentence
(Pet. at 26), such credits would only reduce the minimum term of his sentence to make him eligible

27  for parole at an earlier date, but would not affect his maximum term given that the maximum term
is not a fixed sentence, but rather for the indefinite period of life. Rather, Petitioner would continue

28  to face a maximum period of life imprisonment. *Dannenberg*, 34 Cal. 4th at 1084.

1   static circumstances of his commitment offense given the length of time since that offense was

2   committed. Rather, the Supreme Court has indicated that the parole authority's consideration of

3   the commitment offense also must account for "whether, in light of the nature of the crime, the

4   inmate's release will minimize the gravity of the offense, weaken the deterrent impact on others,

5   and undermine respect for the administration of justice." *Greenholtz*, 442 U.S. at 8.

6        The Ninth Circuit's holding in *Biggs*, which Petitioner relies on (Pet. at 25, 30-31, 54-58),

7   does not compel a different result. In *Biggs*, the Ninth Circuit stated that the Board's continuing

8   reliance on an unchanging factor to deny parole "could result in a due process violation." *Biggs*

9   *v. Terhune*, 334 F.3d 910, 917 (9th Cir. 2003). However, the *Biggs* court did not definitively

10  indicate that reliance on an unchanging factor necessarily violates due process, only that it

11  possibly could. Indeed, the court praised Biggs for being "a model inmate," and found that the

12  record was "replete with the gains Biggs has made," including a master's degree in business

13  administration. *Id.* at 912. Nonetheless, the court denied habeas relief because the Board's

14  decision to deny parole—which relied solely on the commitment offense—was supported by

15  some evidence. *Id.* at 917.

16       Most importantly, the statement in *Biggs* is merely circuit court dicta, and not clearly

17  established federal law sufficient to overturn a state court decision under AEDPA standards. In

18  *Sass*, the Ninth Circuit emphasized that *Biggs* does not contain mandatory language, and that

19  "[u]nder AEDPA, it is not our function to speculate about how future parole hearings could

20  proceed." *Sass*, 461 F.3d at 1129. The *Sass* court then rejected the argument that the Board's

21  reliance on "immutable behavioral evidence" to deny parole violated federal due process. *Id.*

22  Similarly, in *Irons*, the Ninth Circuit overturned a district court grant of habeas corpus, holding

23  that despite substantial evidence of the inmate-petitioner's rehabilitation, the Board acted

24  properly and did not abuse its discretion by relying on the circumstances of the commitment

25  offense to deny parole. *Irons*, 505 F.3d at 852-54.

26       Finally, the recent decision in *Hayward v. Marshall*, No. 06-5392, __ F.3d __, 2008 WL

27  43716 (9th Cir. Jan. 3, 2008) (petition for rehearing pending), in which the Ninth Circuit held

28  that after twenty-nine years, the petitioner-inmate's commitment offense could no longer be used

Answer to Pet. for Writ of Habeas Corpus; Mem. of P. & A.                    *Hawks v. Kane, et al.*
                                                                            C07-5039 JSW

1  to deny parole, has no impact on the current case.  First, the *Hayward* decision is not yet final, as

2  a petition for rehearing en banc is pending.  Second, the *Hayward* court expressly limited its

3  decision to the facts presented, and emphasized that in some circumstances, the commitment

4  offense alone is sufficient to warrant a parole denial.  *Id.* at *5.  Lastly, and most importantly, the

5  holding in *Hayward* is non-dispositive circuit court dicta that may not be used to overturn a valid

6  state court decision under AEDPA standards.  Thus, the holdings in *Biggs* and subsequent cases

7  do not preclude the Board from using circumstances of the commitment offense to deny parole,

8  nor may this dicta be used to overturn a valid state court decision.

9      Accordingly, because Petitioner fails to prove that the state court decision rejecting his

10  claim regarding the Board's continued reliance on his murder offense is contrary to or an

11  unreasonable application of clearly established Supreme Court law, his federal petition must be

12  denied.

13      **3.    The Board's regulatory provision regarding consideration of the**
        **commitment offense is not unconstitutionally vague given that the challenged**
14      **term has more specific and detailed standards than similar terms used  in**
        **death penalty statutes that have been upheld as valid against vagueness**
15      **challenges in the United States Supreme Court.**

16      Petitioner alleges that the Board's regulations are unconstitutionally vague as applied to

17  him at his 2006 hearing, specifically challenging the regulation set forth at title 15 section

18  2402(c)(1) of the California Code of Regulations, which indicates that a crime committed in an

19  "especially heinous, atrocious or cruel manner" is a circumstance tending to show unsuitability

20  for parole.  (Pet. at 32 n.26.)  But while Petitioner asserts his vagueness claim regarding the

21  Board's regulations, this type of claim typically is asserted in the context of the application of

22  death penalty statutes.  For instance, in *Maynard*, the Supreme Court rejected as

23  unconstitutionally vague an Oklahoma death penalty statute that used as an aggravating factor the

24  same term at issue here–"especially heinous, atrocious, or cruel."  *Maynard v. Cartwright*, 486

25  U.S. 356, 363 (1988).  The Court did not find that this term was unconstitutional on its face, but

26  rather only that the statute was too vague because it was not applied with any limiting

27  constructions or further sub-definitions to provide some guidance to the discretion of the

28  decision-maker.  *Id.* at 364-65.

1        Subsequently, in *Arave v. Creech*, 507 U.S. 463 (1993), the United States Supreme Court

2   addressed a death penalty statute that contained a limiting construction.  The Court initially stated

3   that the language in a death penalty statute was not unconstitutionally vague unless it was "too

4   vague to provide any guidance" and the challenged language had not been further defined to

5   provide "some guidance." *Id.* at 471.  Thus, the Court held that an Idaho death penalty statute

6   citing as an aggravating factor crimes carried out with an "utter disregard for human life" was not

7   unconstitutionally vague because a limiting construction had been adopted which defined this

8   factor as those crimes demonstrating the "utmost callous disregard for human life, i.e., the cold-

9   blooded pitiless slayer." *Id.* at 407-08.  Thus, even though there was but one further sub-

10  definition that essentially restated the original term in its beginning and then added only the very

11  subjective term "cold-blooded pitiless slayer," the Court held it was sufficient to provide some

12  guidance and therefore it passed constitutional muster.  *Id.*

13       Here, the heightened scrutiny of the death penalty review in *Maynard* and *Arave* does not

14  apply because Petitioner is merely challenging a discretionary parole suitability regulation.  Thus,

15  while *Maynard* held that the term "especially heinous, atrocious, or cruel" was unconstitutionally

16  vague in the absence of a limiting construction, that reasoning would not apply to this non-death

17  penalty case.  *See Arave*, 507 U.S. at 470-71 (setting forth standard to be applied in the context of

18  challenges to death penalty statutes).  Indeed, the Supreme Court has determined that parole

19  suitability determinations necessarily require in part a discretionary, subjective analysis.  For

20  instance, in *Greenholtz* the Court reasoned:

21           [T]here is no set of facts which, if shown, mandate a decision favorable to the
             individual.  The parole determination, like a prisoner-transfer decision, may be
22           made for a variety of reasons and often involve[s] no more than informed
             predictions as to what would best serve [correctional purposes] or the safety and
23           welfare of the inmate.  The decision turns on a discretionary assessment of a
             multiplicity of imponderables, entailing primarily what a man is and what he may
24           become rather than simply what he has done.

25  *Greenholtz*, 442 U.S. at 10 [citations and quotations omitted].  Similarly, the Supreme Court later

26  adhered to this understanding of parole suitability determinations, holding that "we can say with

27  some assurance that where parole is concerned discretion, by its very definition, is subject to

28  changes in the manner in which it is informed and then exercised.  The idea of discretion is that it

Answer to Pet. for Writ of Habeas Corpus; Mem. of P. & A.                    *Hawks v. Kane, et al.*
                                                                              C07-5039 JSW

1   has the capacity, and the obligation, to change and adapt based on experience." *Garner v. Jones*,

2   529 U.S. 244, 253 (2000).  For instance, the Court determined that "[n]ew insights into the

3   accuracy of predictions about the offense and the risk of recidivism consequent upon the

4   offender's release, along with a complex of other factors, will inform parole decisions." *Id.*

5   As a result, Petitioner cannot demonstrate that the Board's parole regulations are

6   unconstitutionally vague merely because they provide the Board with substantial discretion in

7   making a subjective determination regarding his suitability for parole.

8        In the alternative, assuming that the death-penalty notice standard were to be applied here,

9   the Board's regulation far exceeds the clarity of the Idaho and Oklahoma death penalty statutes

10  discussed above, especially when it is considered in the context in which it was applied at

11  Petitioner's 2005 parole consideration hearing.  First, while the Oklahoma statute in *Maynard*

12  contained no limiting constructions and the Idaho statute in *Arave* contained only one subjective

13  sub-definition, the Board's regulation challenged in this case sets forth five additional sub-

14  definitions, some subjective and some objective.  Specifically, the Board's regulations provide

15  that in determining whether a crime was "especially heinous, atrocious, or cruel," the factors to

16  be considered include whether:  (A) multiple victims were attacked, injured, or killed; (B) the

17  offense was carried out in a dispassionate and calculated manner, such as an execution-style

18  murder; (C) the victim was abused, defiled, or mutilated during or after the offense; (D) the

19  offense was carried out in a manner that demonstrates an exceptionally callous disregard for

20  human suffering; and (E) the motive for the crime is inexplicable or very trivial in relation to the

21  offense." Cal Code Regs., tit. 15, § 2402(c)(1).  While factors "B," "D," and "E" provide

22  additional subjective limiting definitions, factors "A" and "C" provide objective considerations.

23       Given the thoroughness of the Board's regulations, a comparison to *Arave* is almost

24  unnecessary to show that the Board's regulation is not unconstitutionally vague even under the

25  heightened scrutiny which would be applied to a death penalty statute.  Indeed, given that the

26  single subjective sub-definition of "utmost callous disregard for human life, i.e., the cold-blooded

27  pitiless slayer" was deemed a sufficient limiting factor for the term "utter disregard for human

28  life" to pass constitutional scrutiny in a death penalty statute (*Arave*, 507 U.S. at 407-08), the

Answer to Pet. for Writ of Habeas Corpus; Mem. of P. & A.                              *Hawks v. Kane, et al.*
                                                                                        C07-5039 JSW

1 | Board's regulations using the term "especially heinous, atrocious, or cruel," as further limited by

2 | the regulation's five detailed sub-definitions, is not unconstitutionally vague.

3 |     Accordingly, because Petitioner cannot demonstrate that the state court's decision

4 | rejecting his vagueness claim was contrary to, or an unreasonable application of, United States

5 | Supreme Court law, his federal petition must be denied.

6 | **CONCLUSION**

7 |     The state courts' decisions upholding the Board's 2006 decision finding Petitioner

8 | unsuitable for parole is not contrary to, or an unreasonable application of, United States Supreme

9 | Court authority, nor are the state court decisions based on an unreasonable determination of the

10 | facts. Petitioner does not contest that he had an opportunity to be heard and that he received a

11 | written copy of the Board's decision. That is all the due process he is entitled to receive.

12 | Further, even if the Court applies the some-evidence standard, Petitioner cannot show that the

13 | state courts unreasonably concluded that the Board's decision denying parole was supported by

14 | some evidence. In addition, Petitioner's other claims challenging the validity of the Board's

15 | decision are without merit. Accordingly, Respondent respectfully requests that the Petition be

16 | denied and the order to show cause discharged.

17 |     Dated: February 13, 2008

18 |     Respectfully submitted,

19 |     EDMUND G. BROWN JR.
    Attorney General of the State of California

20 |     DANE R. GILLETTE
21 |     Chief Assistant Attorney General

    JULIE L. GARLAND
22 |     Senior Assistant Attorney General

    ANYA M. BINSACCA
23 |     Supervising Deputy Attorney General

24 |

25 |

    SCOTT C. MATHER
26 |     Deputy Attorney General
    Attorneys for Respondent

27 | 40220032.wpd
28 | SF2007200879

Answer to Pet. for Writ of Habeas Corpus; Mem. of P. & A.

*Hawks v. Kane, et al.*
C07-5039 JSW