# EXHIBIT 10

S152730     ORIGINAL

RECEIVED

MAY 1 7 2007

CALIFORNIA SUPREME COURT CLERK SUPREME COURT

SUPREME COURT
F I L E D

MAY 17 2007

Frederick K. Ohirich Clerk

Case No. _____ DEPUTY

In re

Harold Harvey Hawks

on Habeas Corpus

)
)
)
)
)
)
)
)
)
)
)
)

Riverside County
Superior Court
Case No. RIC463199 / CR26084

California Court of Appeal
4th App. Dist No.: E042907

**PETITION FOR REVIEW**

After Decision by the Court of Appeal,
Fourth Appellate District,
Filed May 9, 2007.

ORIGINAL

HAROLD HARVEY HAWKS
PETITIONER IN PRO PER
P.O. Box 689, G329L, D-60489
Soledad, CA  93960-0689

TABLE OF CONTENTS

Page

PETITION FOR REVIEW                                                        1

QUESTIONS PRESENTED                                                        1

NECESSITY FOR REVIEW                                                       2

ARGUMENT I

    THE PETITIONER HAS A CONSTITUTIONALLY PROTECTED LIBERTY
    INTEREST IN PAROLE AND DUE PROCESS RIGHTS UNDER THE FIFTH
    AND FOURTEENTH AMENDMENTS OF THE U.S. CONSTITUTION, THAT
    CAN NOT BE INFRINGED UPON BY AN UNCONSTITUTIONAL AND
    UNREVIEWABLE STATE COURT STANDARD OF LAW.                             4

ARGUMENT II

    THE BOARD DEPRIVED PETITIONER OF HIS LIBERTY INTEREST AND
    DUE PROCESS RIGHTS BY REPEATEDLY DENYING HIM PAROLE BASED
    ON THE UNCHANGING FACTS OF THE COMMITMENT OFFENSE AND
    IGNORING THE EVIDENCE OF HIS REHABILITATION PROGRAMMING AND
    CONTINUED EXEMPLARY BEHAVIOR WHILE INCARCERATED.                      5

ARGUMENT III

    THE BOARD'S DENIAL IS A VIOLATION OF PETITIONER'S DUE
    PROCESS RIGHTS AS A BREACH OF CONTRACTUAL OBLIGATIONS AND
    REQUIRES REMEDY AS A CONTRACT IMPLIED IN LAW.                        18

ARGUMENT IV

    A COMPARISON TO THE BOARD'S PAROLE AFFIRMATIVE SUITABILITY
    DECISIONS AND CASE LAW IN LIKE-CRIMES TO THAT OF
    PETITIONER'S SECOND DEGREE MURDER REVEALS A COMPLETELY
    ARBITRARY AND CAPRICIOUS FAILURE TO FIND PETITIONER
    SUITABLE FOR PAROLE IN VIOLATION OF DUE PROCESS OF LAW.              18

ARGUMENT V

    THE BOARD'S IMPROPER DENIAL OF PAROLE TO PETITIONER IS
    BASED UPON A MORE INVASIVE, UNLAWFUL POLITICAL POLICY
    SUPPORTED BY THE EXECUTIVE BRANCH, AS DEMONSTRATED BY A
    SIXTEEN YEAR RECORD OF THE BOARD'S FAILURE TO NORMALLY
    GRANT PAROLE IN VIOLATION OF DUE PROCESS OF LAW UNDER THE
    FIFTH AND FOURTEENTH AMENDMENTS.                                     23

ARGUMENT VI

    APPLYING THE SOME EVIDENCE STANDARD OF REVIEW TO THE
    BOARD'S DECISION IS AN UNREASONABLE APPLICATION OF STATE
    AND FEDERAL LAW IN VIOLATION OF PETITIONER'S DUE PROCESS
    RIGHTS                                                               25

CONCLUSION

TABLE OF AUTHORITIES

Cases:                                                                Page

Apprendi v. New Jersey
      (2000) 530 U.S. 466                                       3, 7, 9, 11


Biggs v. Terhune
      (2003) 334 F.3d 910          2, 3, 5, 7, 10, 13, 14, 15, 16, 17 25


Blakely v. Washington
      (2004) 542 U.S. 296, 159 L.Ed.2d 403, 124 S.Ct. 2531    3, 7, 9, 11

Board of Pardons v. Allen
      (1987) 428 U.S. 368, 96 L.Ed.2d 303, 107 S.Ct. 2415               4


Brown v. Pool
      (2003) 337 F.3d 1155                                          4, 18


Cunningham v. California
      (2007) __ U.S. __, 127 S.Ct 856                         3, 7, 9, 11


Exxon Corp. v. Heinze
      (9th Cir. 1994) 32 F.3d 1399                                     15


Gibson v. Berryhill
      (1972) 411 U.S. 564, 36 L.Ed.2d 488, 93 S.Ct. 1689               15


Godfrey v. State of Georgia
      (1980) 446 U.S. 420                                               8


Graynet v. City of Rockford
      (1972) 408 U.S. 104                                              18


Greenholtz v. Nebraska
      (1979) 442 U.S. 1, 60 L.Ed.2d 668, 99 S.Ct. 2100             4, 12


Hamdi v. Rumsfeld
      (2004) 542 U.S. 507, 159 L.Ed.2d 578, 124 S.Ct. 2633           26


In re Liber Andrade
      (2006) 46 Cal.Rptr.3d 317                                      21

In re Dannenberg
    (2005) 34 Cal.4th 1061            1, 3, 4, 5, 6, 7, 8, 9, 10, 15,
                                       16, 19, 21, 23, 25

In re Elkins
    (2006) 50 Cal.Rptr.3d 503         2, 5, 8, 10, 13, 16, 17, 21, 25

In re Fain
    (1983) 139 Cal.App.3d 295                          15

In re Wen Lee
    (2006) 49 Cal.Rptr.3d 931         2, 5, 6, 8, 9, 10, 12, 13,
                                       16, 17, 21, 25

In re Minnis
    (1972) 7 Cal.3d 639                               12, 22

In re Morrall
    (2002) 102 Cal.App.4th 280                       8, 10

In re Powell
    (1988) 45 Cal.3d 894                         8, 15, 25

In re Ramirez
    (2001) 94 Cal.App.4th 549         2, 3, 4, 6, 7, 9, 10, 13,
                                    19, 21, 22, 23, 25

In re Rodriguez
    (1975) 14 Cal.3d 639                                 23

In re Rosenkrantz
    (2002) 29 Cal.4th 616          2, 3, 4, 9, 10, 13, 16,
                                   21, 22, 23, 24, 25

In re Scott
    (2004) 119 Cal.App.4th 871       2, 5, 8, 10, 11, 12, 16, 21

In re Scott II
    (2005) 34 Cal.Rptr.3d 905        2, 5, 10, 12, 13, 16, 17, 21

In re Shaputis
    (2005) 37 Cal.Rptr.3d 324                  10, 17, 21

In re Shaputis
    2006 DJDAR 6008 (depublished)                              10

In re Ernest Smith
    (2003) 114 Cal.App.4th 343                    2, 5, 8, 10, 13, 16

In re Mark Smith
    (2003) 109 Cal.App.4th 489                                 16

In re Strum
    (1973) 11 Cal.3d 258                                       12

In re Leslie Van Houten
    (2004) 116 Cal.App.4th 339                              10, 21

Irons v. Carey
    (9th Cir. 2007) 479 F.3d 658        2, 3, 5, 7, 10, 13, 14, 15,
                                            16, 17, 21, 22, 25

Janscek v. Oregon Board of Parole
    (9th Cir. 1987) 833 F.2d 1389                               7

Little v. Haddin
    (1980) 504 F.Supp 558                                      23

Lockyer v. Andrade
    (2004) 538 U.S. 63, 123 S.Ct. 1199, 144 L.Ed.2d 144        23

Martin v. Marshall
    (N.D. Cal. 2006) 431 F.Supp.2d 1039           2, 9, 10, 12, 13,
                                            15, 16, 21, 24

Martin v. Marshall
    (N.D. Cal. 2006) 448 F.Supp.2d 1143                        24

Maynard v. Cartwright
    (1988) 486 U.S. 356                                         8

McQuillion v. Duncan
    (2002) 306 F.3d 895                                  4, 7, 25

O'Bremski v. Maass
    (9th Cir. 1990) 915 F.2d 418                               15

People v. Wingo
    (1975) 14 Cal.3d 169                                   23

Rosenkrantz v. Marshall
    (C.D. Cal. 2006) 444 F.Supp.2d 1063        2, 5, 10, 12, 13,
                                             14, 16, 17, 22

Sass v. California Board of Prison Terms
    (9th Cir. 2006) 461 F.3d 1123                         12, 21

Sanchez v. Kane
    (N.D. Cal. 2006) 444 F.Supp.2d 1049           2, 13, 16, 17

Santobello v. New York
    (1971) 404 U.S. 257                                 18

Santosky v. Kramer
    (1982) 445 U.S. 745                                 26

Schware v. Board of Bar Examiners of the State of New Mexico
    (1957) 353 U.S. 323                                 17

Schweiker v. McClure
    (1982) 456 U.S. 188, 72 L.Ed.2d 1, 102 S.Ct. 1665      15

Superintendent V. Hill
    (1985) 472 U.S. 445                      5, 7, 17, 26

United States v. Guagliardo
    (9th Cir. 2002) 278 F.Supp.2d 868                  18

United States v. Hallman
    (9th Cir. 1973) 472 F.2d 168                      18

Withrow v. Larkin
    (1975) 421 U.S. 35, 43 L.Ed.2d 712, 95 S.Ct. 1465      15

Wolff v. McDonnell
    (1974) 418 U.S. 539, 41 L.Ed.2d 935, 94 S.Ct 2963      5, 17

**United States Constitution:**

5th and 14th Amendment to the U.S. Constitution
  Due Process of Law         _passim_


**California Constitution:**

Article I, Section 15
  Due Process of Law         _passim_


**California Penal Code:**

| | |
|---|---|
| Section 190 | 6, 8, 26 |
| Section 654 | 6, 9 |
| Section 2931 | 5, 17 |
| Section 3041 | 2, 3, 5, 6, 8, 17, 18, 19, 21, 23, 26 |
| Section 3042 | 15 |
| Section 3043 | 15 |
| Section 5011 | 11 |
| Section 5075 | 24 |


**California Evidence Code:**

| | |
|---|---|
| Section 115 | 26 |
| Section 605 | 26 |


**California Code of Regulation:**

| | |
|---|---|
| Section 2250 | 15 |
| Section 2400 | 8 |
| Section 2402 | 5, 6, 8, 9, 11, 14 |
| Section 2403 | 3, 5, 7, 17, 18, 19, 23 |
| Section 2410 | 5, 17 |

CALIFORNIA SUPREME COURT

| | | |
|---|---|---|
| In re | ) ) ) ) | Case No.: _____ |
| Harold Harvey Hawks | ) ). ) ) | Riverside County Superior Court Case No. RIC463199 / CR26084 |
| on Habeas Corpus | ) .) ) ) ) | California Court of Appeal 4th App. Dist No.: E042907 |

### PETITION FOR REVIEW

TO THE HONORABLE RONALD M. GEORGE, CHIEF JUSTICE, AND TO THE HONORABLE ASSOCIATE JUSTICES OF THE SUPREME COURT OF THE STATE OF CALIFORNIA:

Petitioner, Harold Harvey Hawks, petitions this court for review following the decision of the Court of Appeal, Fourth Appellate District, Division Two, filed in that Court on 05-09-07.    A copy of the denial is attached hereto as Exhibit "A".

### QUESTIONS PRESENTED

1.    Is the Board of Prison Terms violating the Petitioner's state and federal due process and liberty interest rights when parole suitability determinations are not supported by "some evidence" having the necessary defined indicia of reliability and are guided by a vague and unreviewable state court "minimum necessary" standard imposed by In re Dannenberg (2005) 34 Cal.4th 1061?

2.    In the face of overwhelming evidence of suitability and a complete absence of any evidence of Petitioner being a current and unreasonable risk to public safety, can the Board act in an arbitrary, capricious manner to deny parole based on  the commitment offense after he has been imprisoned in excess

of his uniform term and the bright line rule established in <u>Irons v. Carey</u>
(9th Cir. 2007) 479 F.3d 658, 662-665?

    3.    Is Petitioner owed a reciprocal benefit of lessened punishment as
a result of implied contractual obligations by the Board?

    4.    Has the Board fulfilled due process when it failed to set
Petitioner's term of confinement in comparison to other like-crimes of second
degree murder by ignoring mandate of P.C. §3041(a) and the common practice of
like-crimes analysis by state and federal courts?

    5.    Does the Board's 98 percent denial rate over the past sixteen
years reflect a constitutional application of Penal Code §3041 and conformity
with <u>In re Rosenkrantz</u> (2002) 29 Cal.App.4th 616, p.683, that the Board shall
normally grant parole, or does it confirm a systematic bias against parole,
resulting in Petitioner serving a disproportionate term?

    7.    Did the Board err by not applying the preponderance of evidence
standard when deciding Petitioner's suitability?

### NECESSITY FOR REVIEW

    A grant of review and resolution of these issues by this Court is
necessary to secure uniformity of decisions and to settle important questions
of law.  The need for uniformity of decision is demonstrated by a comparison
of Petitioner's case with <u>In re Ramirez</u> (2002) 94 Cal.App.4th 549; <u>In re
Ernest Smith</u> (2003) 114 Cal.App.4th 343; <u>In re Scott</u> (2004) 119 Cal.App.4th
871; <u>In re Scott II</u> (2005) 34 Cal.Rptr.3d 905; <u>In re Wen Lee</u> (2006) 49
Cal.Rptr.3d 931; <u>In re Elkins</u> (2006) 50 Cal.Rptr.3d 503; <u>In re Weider</u> (2006)
52 Cal.Rptr.3d 147; <u>Martin v. Marshall</u>, (N.D. Cal. 2006) 431 F.Supp.2d
1039; <u>Rosenkrantz v. Marshall</u> (C.D. Cal 2006) 444 F.Supp.2d 1063;
<u>Sanchez v. Kane</u> (C.D. Cal. 2006) 444 F.Supp.2d 1049; <u>Biggs v. Terhune</u>
(9th Cir. 2003) 334 F.3d 910 and <u>Irons v. Carey</u>, <u>supra</u>, which resulted in

court findings opposite to that in Petitioner's case.  Petitioner respectfully submits that viewing these cases together demonstrates a lack of uniformity in the application of due process.  The decision in the instant case conflicts with federal due process requirements.  (Biggs v. Terhune, supra; Irons v. Carey, supra; Apprendi v. New Jersey (2000) 530 U.S. 466; Blakely v. Washington (2004) 542 U.S. 296; and Cunningham v. California (2007) __U.S.__, 127 S.Ct. 856.)  This case provides the Court with an opportunity to refine the meaning and scope of the "minimum necessary" standard, which is lawfully unreviewable and incapable of being applied in isolation.  (Dannenberg, and Rosenkrantz.)  The minimum necessary standard must accord with Petitioner's liberty interest rights.  The Court further needs to review and clarify the P.C. §3041(a) meaning of "like-terms for like-crimes" as succinctly demonstrated by this case with the Board's failure to apply the 15 C.C.R. §2403(c) Matrix in a uniform manner, violating the standards of In re Rosenkrantz, In re Ramirez, supra, Biggs v. Terhune, supra, and Irons v. Carey, supra, resulting in arbitrary, capricious and disproportionate sentencing in violation of Petitioner's due process rights.

Also, this case provides the Court with an opportunity to determine if the Board  (denying parole approximately 98 percent of the time over the past 16 years) is normally granting parole as required by the California parole scheme.  The Board's near 98% denial rate appears to mathematically reflect a historical bias against parole that deprives prisoners' due process liberty interest rights, resulting in disproportionate terms.

This case provides the Court with an opportunity to determine if the Board's program recommendations are pro forma hoops for prisoners to jump through or do the Board's recommendations hold the weight and intent of contractual obligations.  (In re Ramirez, supra; Biggs v. Terhune, supra; and

Brown v. Poole (2003) 337 F.3d 1155.)  This Court also needs to examine the

question of some evidence as a standard of proof in parole hearings, when the

preponderance of evidence is the correct standard under California statutory

law.

In sum, Petitioner submits that some evidence having the necessary

indicia of reliability does not support each of the Board's findings as

required by the U.S. Constitution 5th and 14th Amendments, the California

Constitution, Article I, Section 15, and numerous state and federal case

rulings, in violation of Petitioner's right to due process.  The issues in

this matter are more fully developed in the Court of Appeal record in this

case as reviewed by this Court as a matter of procedure per Rule 28.2(a),

transmittal of record.

### ARGUMENT I

**PETITIONER HAS A CONSTITUTIONALLY PROTECTED LIBERTY INTEREST IN PAROLE AND DUE PROCESS RIGHTS UNDER THE FIFTH AND FOURTEENTH AMENDMENTS OF THE U.S. CONSTITUTION, THAT CAN NOT BE INFRINGED UPON BY AN UNCONSTITUTIONAL AND UNREVIEWABLE STATE COURT STANDARD OF LAW.**

As the Ninth Circuit Court of Appeal held in McQuillion v. Duncan (2002)

306 F.3d 895, p.902, "California's parole scheme gives rise to a cognizable

liberty interest in release on parole.  The scheme 'creates a presumption that

parole will be granted' unless the statutorily defined determinations were

made."  The McQuillion decision is founded upon U.S. Supreme Court law.

(Greenholtz v. Nebraska (1979) 442 U.S. 1; and Board of Pardons v. Allen

(1987) 428 U.S. 368.)  The Dannenberg, supra, decision is vague, unreviewable

and runs contrary to clearly established federal law.

Absent a finding that the offense was among the gravest of offenses, the

Board has a duty to set a term to preserve proportionality and uniformity

(Dannenberg, supra, p.1080; Rosenkrantz, supra, p.683; and Ramirez, supra,

p.570.), in compliance with P.C. §3041 and the Board's 15 CCR §2403(c) matrix.
Even upon a finding of sufficient egregiousness, the Board is not excused from
setting a date indefinitely. (Biggs v. Terhune, supra, pp.917-918; Irons v.
Carey, supra, pp.661-665; and Rosenkrantz v. Marshall, supra, pp.1086-1088.)
The Dannenberg "minimum necessary" ruling destroys and evades the federally
protected liberty interest embedded in P.C. §3041, and the liberty interest in
good time credit earning. (15 CCR §2410; P.C. §§2931(a); Superintendent v.
Hill (1985) 472 U.S. 444, 453-455; and Wolff v. McDonnell (1974) 418 U.S.
539.) Petitioner's term exceeds the minimum number of years of his sentences,
and continued use of his offense to deny parole violates due process. (Irons
v. Carey, supra, pp.661-665.)

    The circumstances of Petitioner's offense fall within the Matrix (15 CCR
§2403(c), III-B) and can not be deemed as amongst the gravest and egregious
second degree murders. No evidence indicates that Petitioner is a current and
unreasonable a threat to public safety. (See 15 CCR §2402(a); In re Ernest
Smith, supra; In re Scott, supra, pp.890-892; In re Scott II, supra, pgs.924-
925, 927; In re Wen Lee, supra, p.936; and In re Elkins, supra, p.521.) The
Board violated Petitioner's liberty interest by failing to find him suitable
for parole on July 27, 2006, resulting in a disproportionate term of
incarceration.

ARGUMENT II

**THE BOARD DEPRIVED PETITIONER OF HIS LIBERTY INTEREST AND DUE
PROCESS RIGHTS BY REPEATEDLY DENYING HIM PAROLE BASED ON THE
UNCHANGING FACTS OF THE COMMITMENT OFFENSE AND IGNORING THE
EVIDENCE OF HIS REHABILITATION PROGRAMMING AND CONTINUED EXEMPLARY
BEHAVIOR WHILE IN PRISON**

    Petitioner appeared before the Board on July 27, 2007 for the sixth
time, being denied for one year. In 1987, Petitioner was convicted of second
degree murder for the shooting death of a passenger in a vehicle with which

Petitioner had a freeway altercation in August 1986. Petitioner was also convicted of assault with a deadly weapon against the driver of said vehicle and a second passenger struck by the same, single shot. Petitioner was acquitted of first degree murder and all specific intent attempted murder charges, with the assault charges being stayed. (P.C. §654.) Petitioner was sentenced to 17 years to life, admits to and accepts responsibility for the offense.

Petitioner's denial was based on the unchanging factors of his offense. The hearing is devoid of evidence that Petitioner's crime was particularly egregious or beyond the minimum necessary to convict, and no post-conviction evidence demonstrates that Petitioner is a current and unreasonable threat to public safety. The Board's refusal to set a parole date is a denial of procedural protection in direct conflict with the legislative intent of P.C. §3041.

Petitioner's crime indicates the bare minimum to sustain a second degree murder conviction. Like any killing, the crime is most serious, but when compared to other second degree murders, it is not "especially heinous" within the meaning of 15 CCR §2402(c). Petitioner did not intend to kill his victim. (In re Wen Lee, supra, pp.939-940; and In re Weider, supra, pp.159-161.) The facts of this crime clearly do not amount to some evidence that the criminal act was beyond the "minimum necessary" to convict.

While this Court has recently interpreted the parole statute in a manner that undermines the standards previously established to provide proportionality (P.C. §190(a); P.C. §3041 et seq.; and In re Ramirez, supra, p.570), Petitioner contends that Dannenberg unlawfully destroys the plain meaning and intent of the parole scheme, running counter to 3 decades of established law. The determination of parole suitability is guarded by procedural due process protections that rise beyond Dannenberg, requiring a 3

level analysis.

First, the analysis must focus on the question of the commitment offense lawfully being relied on to any degree in finding Petitioner unsuitable for parole. To the extent that the Board in it's decision utilized terminology or elements of first degree murder or murder with express intent and malice to make the crime particularly egregious, the decision violates the rules of Apprendi, supra, Blakely, supra, and Cunningham, supra. The U.S. Supreme Court announced principles that preclude the use of findings to take the case out of the ordinary sentencing range, here the 15 CCR §2403(c) Matrix, unless those findings were alleged in the information and found true by the jury. Here, the jury's actual findings negate the existence of express intent and malice, precluding the Board from reaching the decision it did.

The second level is guided by Biggs v. Terhune, supra, pp.915-916 and Irons v. Carey, supra, pp.661-665. The Ninth Circuit discussed the limits on using the immutable and unchanging facts of the crime to deny parole in the face of evidence of rehabilitation. The Ninth Circuit was clear that after serving the minimum number of years of the indeterminate sentence the crime can no longer be used to deny parole suitability. (Irons v. Carey, supra, pp.664-665.) This point was also addressed in the case of In re Ramirez, supra, p.571, and not disapproved in In re Dannenberg, supra, p.1100. Petitioner has been in custody 20 years, 3 years beyond the minimum number of years of his sentence, and the evidence of his rehabilitation is extensive.

The third level is a "some evidence" review under Dannenberg. The requirements of due process are met if some evidence supports the Boards' decision establishing that an inmate presents an unreasonable danger if released (Biggs v. Terhune, supra, p.915; McQuillion v. Duncan, supra, p.904; Janscek v. Oregon Board of Parole (9th Cir. 1987) 833 F.2d 1389; Superintendent v. Hill, supra, p.456.) and may not be based on whim, caprice

or rumor. (In re Powell (1988) 45 Cal.3d 894; In re Morrall (2002) 102

Cal.App.4th 280.) Penal Code §3041 requires that the factors relied upon must

indicate a legitimate concern that the prisoner represents a "current and

unreasonable threat" to public safety. (In re Wen Lee, supra, pp.936-937,

n.3; In re Elkins, supra, p.521; In re Weider, supra, pp.160-161; Dannenberg,

supra, p.1096; In re Ernest Smith, supra, pp.365-373; and In re Scott, supra,

pp.890-892.)

Under Dannenberg, there is no evidence in Petitioner's offense factors

to justify parole denial. Since the facts of Petitioner's conviction on

"implied malice" bear no evidence beyond the minimum necessary to establish

the elements, as a matter of law, the crime cannot be "particularly egregious"

so as to allow the Board to deny parole date after six hearings and 20 years

in prison.

Nor was there any non-crime or post-conviction evidence that would

preclude setting a date. The Board's denial violates all three levels of

procedural protections and conflicts with the Board's rules under 15 CCR §2400

et seq.. There is no evidence in the July 27, 2006 hearing to support the

Board's denial.

Consistent with the script Denial Form BPT 1000a, the Board specifically

found that Petitioner was unsuitable for parole under 15 CCR §2402(c)(1)[1] and

15 CCR §2402(c)(1)(A) that multiple victims were attacked; §2402(c)(1)(D) that

---

[1] Any factor under 15 CCR §2402(c)(1)(A-E) means that the Board has determined
"[t]he prisoner committed the offense in an especially heinous, atrocious, or
cruel manner." The Board derived this regulation from the language found in
P.C. §190.2(a)(14), a special circumstance allegation. The use of such
factors to find Petitioner unsuitable for parole is arbitrary, capricious and
violates due process of law because Petitioner's offense was not in a special
circumstance category. The U.S. Supreme Court found in death penalty cases
that the terms "especially heinous, atrocious or cruel" are unconstitutionally
vague (Maynard v. Cartwright (1988) 486 U.S. 356, 361-364; and Godfrey v.
State of Georgia (1980) 446 U.S. 420, 428-429), as did the California Supreme
Court in Superior Court v. Engert (1982) 31 Cal.3d 797, 805. Hence, the
regulatory scheme under 15 CCR 2402(c)(1)(A-E) is unconstitutionally vague and
violates due process of law.

the offense was carried out in an especially callous manner and demonstrates an exceptionally callous disregard for human life; and the motive was extremely trivial, 15 CCR §2402(c)(1)(E).

The term "especially" connotes a heightened level beyond what is normally present in a finding of malice. It must be clear from the facts that Petitioner's crime is "especially heinous, atrocious or cruel" or "beyond the minimum necessary to convict" in a way that sets it apart from other second degree murders. (15 CCR §2402(c)(1); In re Ramirez, supra, p.570, Rosenkrantz, supra, p.683, and In re Dannenberg, supra, pp.1094-1095.) Petitioner's "implied malice" conviction is not more callous than other murders. The Board's findings attempt to impress a level of malicious intent upon Petitioner's crime not found by the jury, violating Apprendi, supra, Blakely, supra, and Cunningham, supra. No evidence indicates that Petitioner's offense was heinous, atrocious or cruel that would indicate Petitioner to be a current or unreasonable risk to society.

The Board's finding that multiple victims were attacked is insufficient to support a finding of unsuitability. There is no evidence to support a finding that multiple victims were attacked or killed. One shot was fired. The second victim was struck by the same projectile. (In re Wen Lee, supra, p.940; and In re Weider, supra, p.161.) Petitioner's conduct, albeit unintentional, was reckless resulting in the death and injury. (Martin v. Marshall, supra, p.1040 [multiple shots striking 3 people, killing 2, not particularly egregious.].) The trial court stayed the two assault, acknowledging a "single act" with multiple consequences. Denying parole based on this factor negates the Legislative intent of P.C. §654. Petitioner has already served an aggravated term. No evidence of multiple victims reliably demonstrates Petitioner to be a current or unreasonable threat to public safety.

If Petitioner's commitment offense can be found to demonstrate "the offense was carried out in an especially callous manner" with "an exceptionally callous disregard for human life," it is impossible to imagine a second degree murder that would not.  Second degree murder is always callous and cruel, but the facts of Petitioner's case do not indicate exceptional callousness and cruelty that would distinguish it from other cases.  (In re Scott, supra, pp.891-892;  In re Ernest Smith, supra, p.376;  In re Ramirez, supra, p.570;  In re Van Houten (2004) 116 Cal.App.4th 339, 351;  Rosenkrantz, supra, p.683;  In re Morrall, supra, pp.285-286;  Dannenberg, supra, pp.1094-1095;  In re Scott II, supra, p.920;  In re Shaputis[2] (2005) 37 Cal.Rptr.3d 324, 331-333, n.10;  In re Wen Lee, supra, pp.937-941;  In re Elkins, supra, pp.521-523;  In re Weider, supra, pp.159-161;  Martin v. Marshall, supra, pgs.1040, 1046-1048; and Irons v. Carey, supra, pp.661-665.)  No more than the minimum necessary to convict occurred in the Petitioner's crime.  The Board's finding(s) of callousness and disregard for human suffering are not supported by the evidence and do not indicate a current and unreasonable threat to the public.

The motive for this crime of anger can not support a trivial unsuitability finding.  While the crime may be unjustified, justification is not a requirement to be found suitable.  (See In re Scott, supra, pp.892-893; and Rosenkrantz v. Marshall, supra, p.1082.)  The motive for the crime is explainable, just not excusable, by virtue of Petitioner's enraged and overwhelmed state.  Stating that the motive for the death was trivial implies that the killing was dispassionate.  This is an improper designation of

---

[2] While In re Shaputis (2005) 37 Cal.Rptr.3d 324 was depublished by the California Supreme Court at 2006 DJDAR 6008 (May 17, 2006), the appellate court decision was not overturned.  As lawfully submitted through the accompanying Request/Motion for Judicial Notice (at Exhibits A and B) filed simultaneous to this petition, Petitioner asks this court to take judicial notice of In re Shaputis due to its relevance to the Biggs and Irons line of reasoning.  (Also see Rosenkrantz v. Marshall, supra, pgs.1078, 1084.)

Petitioner's offense because the trial court acquitted Petitioner of
dispassionate, calculated and express intent to kill elements. (Apprendi,
supra; Blakely, supra; Cunningham, supra; and In re Scott, supra, pp.889-890;
and In re Weider, supra, pp.159-160.) Petitioner was scared, enraged and
angry with his judgment impaired by emotion and alcohol. These factors led to
an unintended death. In re Scott, supra, defines fear and anger as common
motives for murder. (Id. 892-893.) When an offense results in death, any
motive would be trivial. The Board's trivial or inexplicable motive finding
does not provide any evidence that Petitioner is currently and unreasonably a
threat to public safety.

Petitioner has openly discussed the crime and his motivation for firing
a scare/warning shot at four prior hearings; testified to the crime at trial;
openly admitted to police his reason for firing the shot; and extensively
discussed the crime with numerous psychologists and correctional staff. The
Board read Petitioner's version of the crime into the record, and Petitioner's
attorney concisely described the court's findings on motive and provocation.
For the Board to state in its decision that "...for a reason still best known
to [Petitioner], he became involved in what would be described today as a road
rage incident" can only be interpreted as a due process violation where the
Board is holding it against Petitioner for not discussing the crime at the
hearing, in violation of P.C. §5011(b). There is no evidence that
Petitioner's decision not to discuss the offense at the sixth hearing
indicates a current and unreasonable risk to the public.

None of the other factors tending to show unsuitability in 15 CCR
§2402(c)(2-6) apply. However, Petitioner is suitable for parole under every
factor that demonstrates suitability under 15 CCR §2402(d)(1-8). (1)
Petitioner has no prior criminal history. (2) Petitioner's central file
contains hundreds of support letters. Petitioner's central file is replete

with numerous laudatory chronos written by institutional staff, teachers and supervisors. With the exception of his failed marriage, Petitioner has experienced a life devoid of tumultuous relationships both inside and out of prison. (3) Petitioner's psychological evaluations have noted that he accepts responsibility for the crime; expresses genuine empathy for the victims of his crime; and shows a full understanding of the underlying offense. (4) Petitioner's crime occurred during a time of significant stress due to divorce, further aggravated by his unrecognized alcoholism. (In re Minnis (1972) 7 Cal.3d 639; In re Strum (1973) 11 Cal.3d 258; Rosenkrantz, supra, p.682; In re Scott, supra, p.894; In re Wen Lee, supra, p.939; In re Weider, supra, p.161; Rosenkrantz v. Marshall, supra, p.1082; and Sass v. California Board of Prison Terms (9th Cir. 2006) 461 F.3d 1123, 1132, 1134-1141.) (5) Battered Women Syndrome does not apply. (6) Petitioner has no criminal history. (In re Scott II, supra, p.926). (7) Petitioner is age 47 and has spent, disciplinary free, nearly half his life in prison. This lack of violence and his current high level of maturity makes recidivism highly unlikely. (Rosenkrantz v. Marshall, supra, pp.1085-1086, n.18.) (8) Petitioner has numerous marketable skills, realistic parole plans and extensive community support. (9) Petitioner's institutional behavior has been "exemplary" and disciplinary free. Petitioner has earned AA, BGS and MA Degrees and a paralegal diploma; completed 4 vocational trades; participated in self-help, anger management, group and one-on-one therapy; volunteered his time; and has extensive laudatory documentation. (Martin v. Marshall, supra, p.1047; and Rosenkrantz v. Marshall, supra, pp.1086-1087, citing Greenholtz, supra, p.15.)

No evidence reliably or rationally demonstrates Petitioner to be a current or unreasonable threat to public safety. The Board has misinterpreted the law and ignored the relevant facts. Despite overwhelming evidence of

Petitioner's suitability, the Board continuously fails to treat his programming and psychological factors as supportive of a grant of parole. (Ramirez, supra, pp.571-572; Rosenkrantz, supra, p.682; In re Scott II, supra, p.920; In re Wen Lee, supra, pp.939-941; In re Elkins, supra, pp.518-523; and In re Weider, supra, pp.158-162; Biggs, supra, pp.916-917; Irons v. Carey, supra, pp.664-665; Rosenkrantz v. Marshall, supra, pp.1086-1087; and Sanchez v. Kane, supra, p.1062.)

Petitioner's July 27, 2006 hearing was a sham. (See In re Ramirez, supra, p.571.)  Nothing in the record indicates that Petitioner is an unreasonable risk to public safety.  This is a glaring violation of the standard set in Biggs v. Terhune, supra, pp.916-917.  The evidence before the Board was that Petitioner is housed at a low-security institution, and psychological and counselor reports make no indication that he is a threat to the public.  All four of Petitioner's psychological evaluations have been supportive of parole, as is all documentation relating to Petitioner's therapy participation.  Yet, the Board ignored the evidence.  (Ramirez, supra, pp.571-572; In re Scott, supra, p.898; In re Scott II, supra, pgs.920, 924-925, 927; Biggs v. Terhune, supra, p.916; Irons v. Carey, supra, pp.664-665; Martin v. Marshall, supra, pp.1044-1048; and Rosenkrantz v. Marshall, supra, pp.1086-1087.)

The Board's neglect and indifference to the extent of Petitioner's therapy and rehabilitation programming is reflected in request for another psychological evaluation.  Petitioner's current evaluation explicitly states that "...there is no psychiatric reason why [Petitioner] should not be paroled..." and "...further psychological reports would be redundant and of little clinical value."  Petitioner's evaluations and other therapy documentation demonstrate actual rehabilitation and must support a finding of parole suitability.  (Rosenkrantz, supra, p.682; In re Ernest Smith, supra,

pp.370-372; Biggs v. Terhune, supra, pp.916-917; Irons v. Carey, supra, p.663; and Rosenkrantz v. Marshall, supra, pp.1084-1087.) Finally, the Board's recommendations for Petitioner to remain disciplinary free, continue self-help and earn positive chronos are vague and meaningless.

All objections by Petitioner's attorney to steer the hearing towards a fair and impartial proceeding were rejected by the Board. Objections were made to the use of police reports and the Probation Officer's Report. The Board must consider only reliable and relevant information. (15 CCR §2402(b).) Accordingly, the District Attorney retried the facts of the case based on these materials. Objection to this tactic was also overruled, even though the Board stated it accepted the trial court's findings. If the Board is not going to follow its own rules, it is a strong indication that Petitioner's hearing was pro forma.

Even more troubling is the "dog and pony show" manner in which the Board allowed the hearing to be manipulated by the District Attorney in the presence of media. Despite objections, the Board allowed fifteen persons in the District Attorney's entourage into the hearing room directly and through video conferencing without prior notice, and press was allowed to attend with one-day notice in violation of the Board's rules. Simply put, the Board gave the District Attorney free reign to set up an environment in the hearing room where opposition to parole could and did exert prejudicial influence.

The fact that Petitioner's hearings have become pro forma "sham" events is exposed by the introduction of the television media. The television media has never been invited to any of Petitioner's prior five hearings. Knowing that the Board has no lawful reason to deny parole, the District Attorney upped the political/emotional ante by inviting the television media, stating "[w]e oppose parole for this man not only because he killed a woman who was an off-duty police officer. Let's make it very clear. We oppose his parole

because he killed a human being...." If this statement was true, Petitioner's hearing would be treated the same as any other convicted murderer. Yet, rarely does the District Attorney invite television media to parole hearings.

The sham nature of Petitioner's hearings is further exposed by actual evidence that the Board has a history of ex parte communication with the Corona Police Department. In letters of opposition, Lt. Anderson has admitted to having prejudicial contact with the Board. Such ex parte communication represents an appearance of bias against Petitioner. (Gibson v. Berryhill (1973) 411 U.S. 564 and Exxon Corp. v. Heinze (9th Cir. 1994) 32 F.3d 1399.) The Board's authority rests on an unbiased panel as required by due process. (Morrissey v. Brewer (1972) 408 U.S. 471, 486-489; Withrow v. Larkin (1975) 421 U.S. 35; Schweiker v. McClure (1982) 456 U.S. 188, 195; O'Bremski v. Maass (9th Cir. 1990) 915 F.2d 418, at 422; Martin v. Marshall, supra, p.1049; and 15 CCR §2250.) The District Attorney's tactic of "loading" the hearing room reeks of the same bias as the ex parte communication with Lt. Anderson. An unbiased panel would not permit such tactics, yet Petitioner's attorney's objections were rejected.

The Board indicated that letters of opposition had some effect in its decision. Although the Board is required to note public opposition (Dannenberg, supra, p.1070; and P.C. §§3042, 3043.5), a Board decision can not be based on District Attorney, victim next-of-kin or other opposition. (In re Powell, supra, p.902; In re Fain (1983) 139 Cal.App.3d 295, 310; O'Bremski v. Maass, supra, pp.285-286; and In re Weider, supra, pp.161-162.) The impact of the crime represents an unchanging offense characteristic. (Biggs, supra, pp.916-917; Irons v. Carey, supra, pp.664-665; and Weider, supra, pp.160-162) Finally, the District Attorney discredited and unlawfully withheld 27 letters of support of Petitioner's parole sent to the District Attorney that demonstrate "actual evidence" of parole suitability from the community. (P.C.

§3043.5; and Dannenberg, supra, pp.1084-1085.)

No evidence by opposition parties reliably indicates Petitioner currently being an unreasonable risk to public safety and the District Attorney withheld evidence of suitability. Thus, Petitioner's hearing must be viewed as a pro forma sham.

The only permissible reason for denying parole is that a prisoner poses a current and unreasonable risk of danger to society. Nothing in Petitioner's post-conviction record or the crime supports the Board's finding of unsuitability, and the Board's repeated reliance on the unchanging facts of the crime violated due process. (Irons v. Carey, supra, pp.664-665; Biggs v. Terhune, supra, pp.916-917; Martin v. Marshall, supra, pp.1046-1048; Rosenkrantz v. Marshall, supra, pp.1086-1087; Sanchez v. Kane, supra, p.1062; Rosenkrantz, supra; Dannenberg, supra; and In re Scott II, supra, p.920.) Nor does the offense exceed the court defined thresholds in aggravation beyond the minimum necessary to convict for second degree murder. (Rosenkrantz, supra, p.683;[3] In re Mark Smith (2003) 109 Cal.App.4th 489, 504, 506; In re Ernest Smith, supra, pgs.351, 367; In re Scott, supra, p.890; In re Dannenberg, supra; In re Wen Lee, supra, pp.937-941; In re Elkins, supra, pp.520-523; In re Weider, supra, pp.158-162; Martin v. Marshall, supra, pgs.1040, 1046-1048; and Irons v. Carey, supra, pp.661-665.) Even in cases that rise beyond the minimum necessary to convict, those offense factors can not be utilized to deny parole beyond the minimum number of years required by the sentence.

---

[3] Petitioner requests that this Court take judicial notice that Robert Rosenkrantz was released on August 4, 2006 after denials on appeal by the Attorney General to the California Court of Appeal, Division Two (July 31, 2006, No.B192676), and petition for review to the California Supreme Court (August 3, 2006, No. S145504) regarding Judge Wesley's Los Angeles County Superior Court order for release, In re Rosenkrantz VI (June 26, 2006, No. BH003529). (See Exhibits C, D and E to Request/Motion for Judicial Notice filed concurrent to this petition.) The Central District Court simultaneously ordered Rosenkrantz released on August 1, 2006. (Rosenkrantz v. Marshall, supra, pgs.1087, 1088 and n.20.)

(Irons v. Carey, supra, pp.661-665.  Also see Schware v. Board of Bar

Examiners (1957) 353 U.S. 323. [holding reliance on remote events as some

evidence that are outdated in light of changed circumstances is arbitrary and

capricious.].)

Petitioner has now served 20 calendar years of a sentence of 17 years-

to-life, 3 calendar years beyond the bright line rule established in Irons v.

Carey, supra, pp.664-665.  His continued incarceration violates due process.

Petitioner's uniform term for the victim and offense factors of his crime is a

P.C. §3041 et seq./15 CCR §2403(c) B-III term of 18-19-20 years.  Petitioner

has a right to earn good time credit.  (P.C. §2931(a); Superintendent v. Hill,

supra, pp.453-455, citing Wolff v. McDonnell, supra.)  Yet, the Board has

failed to apply Petitioner's good time credits in a meaningful manner.  With

15 CCR §2410 credit of 79 months added to the most aggravated term of 20

years, Petitioner has served a disproportionate term of 26 years, 6 months.

After 20 years of disciplinary free rehabilitation, predictability of

Petitioner's future violence based on the crime is nil.  (Irons v. Carey,

supra, pp.661-665; Biggs v. Terhune, supra, pp.916-917; Rosenkrantz v.

Marshall, supra, pp.1084-1085; Sanchez v. Kane, supra, p.1062; In re Scott II,

supra, p.920; In re Shaputis, supra, p.335; In re Wen Lee, supra, pp.939-941;

and In re Elkins, supra, pp.518-523.  All post-conviction evidence points

clearly to Petitioner's readiness for a successful parole.

With findings devoid of evidence, the Board acted arbitrarily and

capriciously in finding Petitioner unsuitable.  There is no evidence that

Petitioner now is a current and unreasonable threat to the community.  As

clearly set forth by the state and federal case law presented herein, the

Board can no longer continuously rely on the crime as the basis for denying

parole.  The Irons v. Carey bright line rule must now be applied to stop the

abuse of discretion by the Board.  (Irons v. Carey, supra, pp.664-665.)

Petitioner is serving a constitutionally prohibited and disproportionate term in excess of the uniformity specified in statutory and regulatory law for the comparative gravity of his crime in violation of his federally protected liberty interest right and due process of law.

### ARGUMENT III

**THE BOARD'S DENIAL IS A VIOLATION OF PETITIONER'S DUE PROCESS RIGHTS AS A BREACH OF CONTRACTUAL OBLIGATIONS AND REQUIRES REMEDY AS A CONTRACT IMPLIED IN LAW.**

At each of Petitioner's five prior hearings, the Board set specific recommendations for Petitioner to comply with to become parole suitable.  In doing so, the Board has implied contractual terms that would lead to parole release.  (Brown v. Poole, supra; Santobello v. New York (1971) 404 U.S. 257, 262; and United States v. Hallman (9th Cir. 1973) 472 F. 2d 168, 169.)  Based on his reliance upon the recommendations set by previous panels, Petitioner has fulfilled every recommendation.  (U.S. v. Guagliardo (9th Cir. 2002) 278 F.3d 868, 872, citing Graynet v. City of Rockford (1972) 408 U.S. 104, 108-109.)  When denied parole on July 27, 2006, Petitioner did not receive his due consideration to the implied contractual terms set by previous panels.  If the Board's recommendations are not acknowledged as sincere offers, then they are mere "hoops" designed to support an elaborate ruse and affront to the due process rights of all prisoners who rely upon them.

### ARGUMENT IV

**A COMPARISON TO THE BOARD'S PAROLE AFFIRMATIVE SUITABILITY DECISIONS AND CASE LAW IN LIKE-CRIMES TO THAT OF PETITIONER'S SECOND DEGREE MURDER REVEALS A COMPLETELY ARBITRARY AND CAPRICIOUS FAILURE TO FIND PETITIONER SUITABLE FOR PAROLE IN VIOLATION OF DUE PROCESS OF LAW.**

In denying parole at the July 27, 2006 hearing, the Board violated Petitioner's liberty interest embedded in P.C. §3041(a) when it failed to use the 15 CCR §2403(c) matrix to make a determination of the appropriate amount

of time Petitioner should serve for his offense characteristics and by failing

to compare his criminal offense characteristics to those of other like-crimes

of second degree murder (specifically and generally) where the Board has made

affirmative suitability findings.  Petitioner's offense requires a 15 CCR

§2403(c) term of 18-19-20 years.

Due process of law mandates that Petitioner's term of imprisonment be

set proportionately as compared to other offenders with like-crimes as

prescribed by P.C. §3041 in In re Ramirez, supra, p.549.  The Court's decision

in In re Dannenberg, supra, that no like-crimes analysis is required violates

federal due process protections embedded in P.C. §3041(a) and renders those

statutory provisions unconstitutionally vague, as that language, on its face,

directly requires such a comparison.  Routinely, state and federal courts

apply like-crimes analysis in published decisions.  The Board has a duty to

perform a like-crimes analyses to protect Petitioner from serving a

disproportionate term.

Twenty-eight "specifically" similar cases (vehicle shooting related

murders) where parole dates were granted for prisoners who committed like-

crimes to that of Petitioner are indicated by the Governor's Report on Parole

Review Decisions (1991-2005).  Petitioner's institutional programming meets or

exceeds that of each of these 28 prisoners, and the offense characteristics of

these 28 cases demonstrate a more deliberate intent to commit murder than

Petitioner's.  Such a determination violates Petitioner's P.C. §3041(a) right

to receive a proportional term for his offense in violation of due process.

Again utilizing information from the Governor's Report on Parole Review

Decisions (1991-2005), a comparison of the Board's parole affirmative

decisions, "generally," in the like-crimes of second degree murder reveals

that Petitioner is regularly and routinely passed over for parole; whereas,

the Board has granted suitability in hundreds of cases where the prisoners

have extensive criminal histories, serious disciplinary records, minimal institutional programming and more egregious offense characteristics than Petitioner. The Governor's Report on Parole Review Decisions 2005 provides a sample group of 120 Board grants for second degree murder.

Of the 120 prisoners in the 2005 sample group only 107 prisoners had quantifiable data, with the average time incarcerated being 20.1 years. Ninety-one prisoners committed intentional or aggravated acts of second-degree murder. Thirty crimes involved multiple victims. Gang affiliation was associated with 28 of the crimes, and 72 prisoners had priors. An extensive drug/alcohol history was indicated in 83 crimes. Four prisoners in the sample group had "specific like crimes" of second degree murder to that of Petitioner's crime. Seventy-three prisoners had violations of serious disciplinary misconduct, and 50 prisoners had extensive numbers of serious disciplinary reports.

An analysis and comparison of the "general like-crimes" of second degree murder and the pre- and post-conviction behavior of the 120 prisoners in the sample group reveals that Petitioner should have been found suitable. Petitioner's "implied malice" conviction simply can not be said to be more egregious than the majority (85.1%) in the sample group who committed "express malice" murders.

Petitioner has served 20 calendar years in custody—one year under the average time served for the "general like-crimes" sample group of 20.1 years (actual time). However, of the 4 "specific like-crimes" in the sample group, Petitioner had served the same amount of time or significantly more. Petitioner has no gang affiliations, prior arrests/convictions or disciplinary infractions. Few of the sample group cases even begin to compare with Petitioner's extensive accomplishments in education.

Based on this evidence, there is no justification for Petitioner's

repeated parole denials.  Statistical data from the Governor's Reports on

Parole Review Decisions (2002-2005) demonstrates that the Board knows exactly

how much time Petitioner should serve, yet he is systematically denied.  While

the 120 sampled cases from 2005 should have been granted parole, Petitioner

contends that he, comparatively, should not have been denied parole.

Ignoring the mandate of the California Legislature in P.C. §3041(a) and

case law, the Dannenberg Court held that the Board need not engage in a

comparative case analysis.  However, the very language (i.e. "particularly

egregious" or "beyond the minimum necessary to convict") defined by

Rosenkrantz and Dannenberg, requires an analysis of like-crimes in order to

determine if Petitioner's crime is more aggravated than other second degree

murders.  These court defined factors can not be deduced in isolation, as

apparent in numerous state court opinions applying like-crimes analyses.  (In

re Ramirez, supra, pp.570-571; In re Rosenkrantz, supra, pp.678-679; In re

Leslie Van Houten, supra, pgs.358-360, 363-365; In re Scott, supra, pgs.891-

892, 893; In re Scott II, supra, pp.922-923; In re Shaputis, supra, p.332; In

re Liber R. Andrade (2006) 46 Cal.Rptr.3d 317, p.329 n.3; In re Dannenberg,

supra, pgs.1102-1103, n.2, 1106-1109; In re Wen Lee, supra, pp.937-939; In re

Elkins, supra, pp.521-523; and In re Weider, supra, pp.160-161.)  Federal

courts have also begun to rely on like-crime case analysis in resolving

complex term-to-life parole decisions.  (Martin v. Marshall, supra, pp.1047-

1048; Sass v. California Board of Prison Terms, supra, pgs.1135, 1137-1138;

and Irons v. Carey, supra, pp.663-665.)

A proportionate upper limit and term of incarceration for a particularly

egregious second degree murder with factors beyond the minimum necessary was

recognized and defined in Rosenkrantz, by Justice Moreno in his concurring

opinion:

> ...there will come a point, which already may have arrived,

> when petitioner would have become eligible for parole if he
> had been convicted of first degree murder.  Once petitioner
> reaches that point, it is appropriate to consider whether
> his offense would still be considered especially egregious
> for a first degree murder in order to promote the parole
> statute's goal of proportionality between the length of
> sentence and the seriousness of the offense.  [Citations.]
> (Id., p.690.)

Justice Moreno's rationale was adopted by Judge David S. Wesley in his

Superior Court order releasing Robert Rosenkrantz:

> "Petitioner has now served in excess of the maximum term for
> both second and first degree murder....  Petitioner has
> reached the point in which the denial of parole can no
> longer be justified by reliance on the commitment offense."[4]

This Honorable Court set a cap of 21 years for an aggravated second degree

murder, in denying the Attorney General's petition for review.[5]  Finally,

Justice Moreno's proportionality rationale was adopted by the Central District

Court ordering release in Rosenkrantz v. Marshall, supra, pgs.1070, n.5 and

1087-1078, n.20.

The recent Rosenkrantz decisions bear directly on the proportionality of

Petitioner's incarceration.  Petitioner's crime factors pale in comparison to

Rosenkrantz'.  Petitioner has served 20 exemplary years of incarceration and

is long past the point where his implied malice/unintentional second degree

murder justifies parole denial.  (See Irons v. Carey, supra, pp.661-665.)  The

failure by the Board to consider Petitioner's matrix term of 18-19-20 years

can only be seen as arbitrary and capricious.

Due process requires that Petitioner receive individualized

consideration in evaluation for parole suitability (In re Rosenkrantz, supra,

pgs.658, 677, 682, 684; In re Ramirez, supra, pp.565-566, 568; and In re

Minnis, supra, p.647.)  As part of individualized consideration, Petitioner's

crime factors and post-conviction behavior must be compared with other like-

crime offenders to ensure proportionality.  While the Board's discretion is

---

[4] See accompanying Request/Motion for Judicial Notice, Exhibit C, p.3:17-23.
[5] See accompanying Request/Motion for Judicial Notice, Exhibit E.

great, it is not so vast that it can simply sweep aside and ignore the mandate of P.C. §3041(a). Due process of law protects the mandate of subsection (a) that requires the Board, at each and every hearing, to conduct a like-crimes analysis to guard against Petitioner's term becoming disproportionate, lest repeated denials result in Petitioner's sentence becoming disproportionate and, eventually, grossly disproportionate. (People v. Wingo (1975) 14 Cal.3d 169, 175-180; In re Rodriguez (1975) 14 Cal.3d 639, 646-656; In re Ramirez, supra, pp.570-571; In re Dannenberg, supra, p.1096; and Lockyer v. Andrade (2003) 538 U.S. 63, 72-73.)

In re Ramirez, supra, established a common sense approach where, absent facts that make the offense "particularly egregious," it is irrational to use the crime factors to hold a prisoner beyond the 15 CCR §2403(c) matrix term. This approach is logical, since it is crime factors that define the matrix. (Little v. Haddin (1980) 540 F.Supp. 558, 562.) As demonstrated by the like-crime analyses and the numerous instances of state and federal case law presented herein, compared to other second degree murders, it can not be said that Petitioner's offense involves the type of especially callous disregard beyond that necessary in any conviction for second degree murder, without arbitrarily and capriciously violating Petitioner's due process rights.

### ARGUMENT V

THE BOARD'S IMPROPER DENIAL OF PAROLE TO PETITIONER IS BASED UPON A MORE INVASIVE, UNLAWFUL POLITICAL POLICY SUPPORTED BY THE EXECUTIVE BRANCH, AS DEMONSTRATED BY A SIXTEEN YEAR RECORD OF THE BOARD'S FAILURE TO NORMALLY GRANT PAROLE IN VIOLATION OF DUE PROCESS OF LAW UNDER THE FIFTH AND FOURTEENTH AMENDMENTS.

The Board "normally" denies parole to approximately 98 percent of parole applicants, statistically demonstrating a bias against parole. The Board's sixteen year record of systematically failing to normally grant parole as required by the California Parole Scheme violated Petitioner's right to Due

Process under the United States Constitution's 5th and 14th Amendments, depriving him of his federally protected liberty interest.

In April 1999, then Governor Gray Davis stated that he was adamant that all murderers should serve life in prison.  Ex-Governor Davis also made it publicly clear that he expected all his political appointees to carry out his political agenda, not necessarily the law.  Davis' policy applied directly to Board Commissioners who have quasi-judicial powers under the Executive Branch. While this Court recognized a no parole policy could exist, the Court held that Rosenkrantz failed to present sufficient evidence to prove it.  (In re Rosenkrantz, supra, pp.684-686.)  Federal District Courts for California have recently found that both former Governors Wilson and Davis practiced a no parole policy.  (See Martin v. Marshall, supra, pp.1048-1049; and Martin v. Marshall (N.D. Cal. 2006) 448 F.Supp.2d 1143, 1144-1145.)

The make-up of the Board is primarily of persons who will act in a political manner prescribed by the governor.  The composition of the Board is in violation of P.C. §5075.  Furthermore, the Board tends to act arbitrarily and capriciously by granting parole to prisoners who have some deficiency in their prison record and/or offense characteristics that can later be utilized by the Board and/or Governor to revoke or rescind the grant of parole suitability, all the while passing over more suitable candidates such as Petitioner.

At the July 27, 2006 hearing, the Board Commissioners were acting in a manner consistent with Ex-Governor Davis' invasive and unlawful political policy.  Current Governor Schwarzenegger reviews approximately the same number of parole grants as his predecessor) and blocked 2 of 3 parole suitability findings in 2004.  In 2005, Schwarzenegger continued blocking parole at an increased ratio of 7 out of 9 grants.  As indicated by various newspaper articles and reports, Governor Schwarzenegger cut back on parole grants and

releases in the first two quarters of 2005 due to political pressure from television ads and protests by Crime Victims United. As of August 2006 (an election year), the Governor significantly reduced parole releases, blocking 9 out of 10 parole grants. Schwarzenegger's actions indicate a politically controlled/inspired bias against parole in violation of due process.

Petitioner's incarceration has become disproportionate as a result of the Executive Branch's violation of his protected liberty interest due process rights, requiring this Court's intervention.

### ARGUMENT VI

**APPLYING THE SOME EVIDENCE STANDARD OF REVIEW TO THE BOARD'S DECISION IS AN UNREASONABLE APPLICATION OF STATE AND FEDERAL LAW IN VIOLATION OF PETITIONER'S DUE PROCESS RIGHTS**

Petitioner now submits that the some evidence standard is inadequate and unlawful. Petitioner asserts that the preponderance of evidence standard is the lawful burden of proof for parole hearings. The some evidence standard was first adopted by the California Supreme Court at the urging of the Attorney General in the case of In re Powell, supra, pp.902-904, and the standard has since been refined and modified by state court decision(s) as it applies to judicial review and Board of Parole Hearings. (Ramirez, supra, p.564; Rosenkrantz, supra, p.665; Dannenberg, supra, p.1095; In re Wen Lee, supra, pp.936-937; In re Elkins, supra, p.521; In re Weider, supra, pp.160.161; McQuillion v. Duncan, supra, pp.904-905; Biggs v. Terhune, supra, pp.915-916; and Irons v. Carey, supra, pp.661-665.) It logically follows from these cases that the Board merely find "some evidence" to deny parole.

While no California statutory or regulatory provision prescribes the standard of proof in parole hearings, a "preponderance of the evidence" is widely utilized by the California Department of Corrections and the Board in disciplinary, rescission and other hearing determinations that involve the

delay or loss of liberty.  California Evidence Code §§115 and 605 provide that

the default standard, if none is defined by statute, is a preponderance of the

evidence.  The Evidence Code is defined by the state legislature; thus, a

preponderance of the evidence standard is the lawful standard to be used in

parole suitability hearings.

The some evidence standard is lawfully inadequate for determining

Petitioner's parole suitability.  (Santosky v. Kramer (1982) 445 U.S. 745;

Superintendent v. Hill, supra; Hamdi v. Rumsfeld (2004) 542 U.S. 507, 537.)

Because the Board relied on the some evidence standard in determining

Petitioner's parole suitability, instead of a preponderance of the evidence,

Petitioner's July 27, 2006 parole suitability hearing violated California

statutory code and due process of law under the State and Federal

Constitutions.

## CONCLUSION

For these reasons, Petitioner respectfully submits that this Court grant

review to force the Board's practices to conform with the guidance provided by

the Legislature in Penal Code §§ 3041, 190; current state and federal case

law; and due process standards.  Petitioner also requests a ruling by this

Court to ensure uniformity of decision making in the lower courts on issues

frequently litigated, and to settle questions so important that they impact

directly upon the rights and liberty interest of a person, such as Petitioner,

to due process of law under the State and Federal Constitutions.

Dated: 15 May 2007

Respectfully submitted,

Harold Harvey Hawks
In Pro Per

COURT OF APPEAL -- STATE OF CALIFORNIA
FOURTH DISTRICT
DIVISION TWO

**ORDER**

FILED
MAY  9 2007
COURT OF APPEAL FOURTH DISTRICT

In re

HAROLD HARVEY HAWKS

on Habeas Corpus.

E042907

(Super.Ct.No. CR26084 &
RIC463199)

The County of Riverside

THE COURT

The petition for writ of habeas corpus and request for judicial notice is DENIED.



_____
Acting P.J.

cc:    See attached list



# EXHIBIT A

# PROOF OF SERVICE BY MAIL
## (C.C.P. §§1013A, 2015.5)

STATE OF CALIFORNIA    )
                               ) SS.  **In re Harold Harvey Hawks on Habeas Corpus**
COUNTY OF MONTEREY )    **(a.k.a Harold Harvey Hawks v. B. Curry, Warden CTF)**

I, _____Harold H. Hawks_____, am a resident of the State of California, County of Monterey. I am over the age of 18 years and I am a party to the within action. My business/residence address is the Correctional Training Facility, P.O. Box 689, Soledad, CA 93960-0689.

On _____15 MAY_____, 2007, I served the following:

**Petition for Review; and Request/Motion for Judicial Notice.**

_____

_____ on the parties listed below by placing a true copy thereof enclosed in a sealed envelope with postage fully prepaid in the United States Mail in the institution's United States Mailbox at the Correctional Training Facility, Soledad, California , addressed as follows:

```
California Supreme Court          Superior Court of California
San Francisco Office              County of Riverside
350 McAllister Street             4075 Main Street, Ste. 310
San Francisco, CA 94102-7303      Riverside, CA  92501


California Court of Appeal        Attorney General of California
Fourth Appellate District, Division 2   Office of the Attorney General
3389 Twelfth Street               P.O. Box-85266
Riverside, CA  92501             San Diego, CA  92186-5266
```

There is a regular service by the United States Postal Service between the place of mailing and the places so addressed.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed this __15TH__ day of _____MAY_____, 2007, at Soledad, California.

/s/ *Harold H. Hawks*