IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

HAROLD HARVEY HAWKS,

    Petitioner,

-vs-

BEN CURRY, Acting Warden,

    Respondent.

    On Habeas Corpus.
_____/
ARNOLD SCHWARZENEGGER,
Governor, BOARD OF PAROLE
HEARINGS,

    Real Parties in Interest.
_____/

C-07-5039 JSW

---

**TRAVERSE TO RESPONDENTS' RETURN TO ORDER TO SHOW
CAUSE RE PETITION FOR WRIT OF HABEAS CORPUS**

---

STEVE M. DEFILIPPIS
SBN 117292
PICONE & DEFILIPPIS, A P.L.C.
625 N. First Street
San Jose CA 95112
(408) 292-0441

Attorneys for Petitioner,
HAROLD HARVEY HAWKS

TABLE OF CONTENTS..................................................................................i
TABLE OF AUTHORITIES........................................................................... ii
INTRODUCTION..........................................................................................1
TRAVERSE TO RESPONDENT'S RETURN.................................................4
REMEDY.....................................................................................................13
PRAYER......................................................................................................15

**Federal Cases**
Biggs v. Terhune, 334 F.3d 910 (9th Cir. 2003) ............................................... 4, 8, 9
Board of Pardons v. Allen (1987) 482 U.S. 369, 376-78 ................................... 9
Greenholtz v. Inmates of Nebraska Penal & Corr. Complex (1979) 442 U.S. 1, 7 ... 9
Irons v. Carey, 479 F.3d 658 (9th Cir 2007) .................................................... 4, 8, 9
Marbury v. Madison, 5 U.S. (1 Cranch) 137, 161-163 (1803) ......................... 16
Martin v. Marshall, 431 F.Supp.2d 1038 (N.D. Cal. 2006) ............................... 4, 10
McQuillion v. Duncan [McQuillion I], 306 F. 3d 895, 901 (9th Cir. 2002) ...... 8, 9, 10
Panetti v. Quarterman, ___ U.S.___, 127 S.Ct. 2842 (2007) ............................ 9
Rosenkrantz v. Marshall [Rosenkrantz VI] 444 F.Supp.2d 1063, at 1085 (C.D. Cal. 2006) 4, 10
Rosenkrantz VI], 444 F.Supp.2d 1063, at 1085 (C.D. Cal. 2006) ..................... 4
Sanchez v. Kane, 444 F.Supp.2d 1049 (N.D. Cal. 2006) .................................. 4, 10
Sandin v. Conner, 515 U.S. 472 (1995) ............................................................ 8
Sass v. Calif. Bd. Of Prison Terms, 461 F.3d 1123, 1128 (9th Cir. 2006) ........ 8, 9
Superintendent v. Hill, 472 U.S. 445, 457 (1985) ............................................. 9

**State Cases**
In re Barker, 151 Cal.App.4th, 346, 365 (2007) ............................................... 10
In re Burdan, 161 Cal.App.4th 14 (2008) ......................................................... 10
In re Elkins, 144 Cal.App.4th 475 (2006) ......................................................... 5, 10
In re Ernest Smith, 114 Cal.App. 4th 343, 369 (2003) ..................................... 4
In re Gray (2007) 151 Cal.App.4th 379, 383 .................................................... 10
In re Lee, 143 Cal.App.4th 1400 (2006) ........................................................... 5, 10
In re Ramirez, 94 Cal. App. 4th 549, 561 (2001) .............................................. 16
In re Roberts, 36 Cal. 4th 575, at 589-590 (2005) ............................................. 5, 11
In re Rodriguez, 14 Cal. 3d 639 (1975) ............................................................. 16
In re Rosenkrantz [Rosenkrantz II], 80 Cal. App. 4th 409 ................................ 16
In re Scott [Scott I], 119 Cal.App.4th 871 (2004) ............................................. 6
In re Scott [Scott II], 133 Cal.App.4th 573, at 594-595 (2006) ........................ 5, 10
In re Sena, 94 Cal. App. 4th 836, at 839 (2003) ................................................ 5, 11
In re Singler, 161 Cal.App.4th 281 (2008) ........................................................ 10
In re Weider, 145 Cal.App.4th 570 (2006) ........................................................ 5, 10
People v. Rosenkrantz (1988) 198 Cal.App.3d 1187 ......................................... 4
Rosenkrantz IV), In re Rosenkrantz, (2002) 29 Cal.4th 616 ............................. 4
Rosenkrantz IV), In re Rosenkrantz, 29 Cal.4th 616 (2002) ............................. 4

**Statutes**
Penal Code § 3041 ............................................................................................. 10
Penal Code §1487 .............................................................................................. 16
Penal Code §1487(2) ......................................................................................... 16
Penal Code §3041 .............................................................................................. 9

**State Regulations**
Cal. Code Regs. tit. 15 ....................................................................................... 6
Pen. Code §5011(b) ........................................................................................... 15

STEVE M. DEFILIPPIS
SBN 117292
PICONE & DEFILIPPIS, A P.L.C.
625 N. First Street
San Jose CA 95112
(408) 292-0441

Attorneys for Petitioner,
HAROLD HARVEY HAWKS

*IN THE UNITED STATES DISTRICT COURT*

*FOR THE NORTHERN DISTRICT OF CALIFORNIA*

| | |
|---|---|
| HAROLD HARVEY HAWKS, | C-07-5039 JSW |
| Petitioner, | *TRAVERSE TO RESPONDENTS' RETURN TO ORDER TO SHOW CAUSE RE PETITION FOR WRIT OF HABEAS CORPUS* |
| -vs- | |
| BEN CURRY, Acting Warden, | |
| Respondent. | |
| On Habeas Corpus. / | |
| ARNOLD SCHWARZENEGGER, Governor, BOARD OF PAROLE HEARINGS, | |
| Real Parties in Interest. / | |

Petitioner, Harold Harvey Hawks, respectfully submits the following traverse to the Respondent's Return in the above-entitled case. In support thereof, Mr. Hawks admits, denies, and alleges as follows:

### INTRODUCTION

Petitioner Harold Harvey Hawks is by all measures the quintessential model inmate. In every respect since the commission of the crime, the facts and circumstances surrounding his incarceration have clearly established the lack of any evidence of current dangerousness. Over the years, he has received multiple psychological evaluations favorable to a grant of parole, and

his applications for parole are always supported by multiple laudatory chronos and memos from the correctional officers and work supervisors that have seen him on a daily basis over the years, all of which attest to his lack of current dangerousness. However, the Board seems to be searching for some way to justify perpetually denying parole, even ordering a new psychological report in the face of a positive current report that expressly stated that further psychological evaluations would be "redundant." (See Respondent's Exhibit 2, p. 152, ln. 22 to 153, ln. 25.)[1] This is particularly disturbing when this Court has on two (2) previous occasions, in ruling on pending proceedings involving much earlier hearings, determined that the crime is not particularly callous, and has stated that the nature of Mr. Hawks' commitment offense will eventually have no predictive value in determining whether he currently presents a threat to the public, when balanced against his overwhelming proof of rehabilitation.

In the three years between the Board's 2003 denial that was previously before this Court and the 2006 denial at issue herein, Mr. Hawks' achievements have continued to put him head and shoulders above even the most sterling of programmers whose cases come before the courts. His work skills, previously supported with four (4) completed vocations, have been enhanced by the completion of a paralegal certification from Blackstone Paralegal Institute, along with continued courses in the Spanish language. He has now participated in AA for eighteen (18) years, since his custody level first permitted that aspect of programming, and has been continuously sober since his arrest twenty two years ago. He has not only continued to participate in Group therapy, using all available means to continue to improve himself, but despite this Court finding that Mr. Hawks' needs no more therapy, he started individual therapy with Dr. Howlin in 2004, and has steadily worked with that doctor ever since. Of course, he has continued to be not just disciplinary free, but free from even the most minor of non-disciplinary adverse write-ups (CDC128A's). Also, since last before this Court, Petitioner received another extremely positive psychological evaluation, addressing every conceivable area of potential concern and negating any issue of current dangerousness, rating him "as having no greater violence potential than the average non-offender population in the community." In fact, the doctor noted, "[i]t is obvious ... that there is no psychiatric reason for the inmate not to be paroled....Furthermore, due to his general stability it is unlikely that his mental status will be

---

[1] When referring to Respondent's Exhibit 2, Petitioner will utilize the actual page numbers in the transcript, rather than the pagination assigned by the Pacer system to the filed document.

2

altered" unless he becomes senile due to old age or receives a brain injury. Because any change in Mr. Hawks' mental suitability for parole was not likely to occur, the doctor stated that any further psychiatric reports would be "redundant and of little clinical value." Of course, the Board ignored this statement, and ordered a new psychological evaluation.[2]

In short, very few inmates in CDC have shown the type of comprehensive and effective rehabilitation that Mr. Hawks presents with. After twenty two (22) years of a perfect disciplinary record, exceptional self help, religious, work, and personal programming, there is simply no basis for the Board's denial of parole. As will be seen throughout the denial and the accompanying points and authorities, there simply is no longer any factual support for the Board's decision. To the contrary, the facts supporting a grant of parole are unequivocal. Thus, the finding of current dangerousness made by the Board regarding Petitioner has no factual basis, and as a result, an indisputably parole suitable inmate is being subjected to multiple, unfounded denials of parole in the face of exclusively favorable evidence, with wholly unsubstantiated findings being used to justify the repeated denials. Under the recent analysis and application of the rule originally stated in *Biggs v. Terhune,* 334 F.3d 910 (9th Cir. 2003), as applied in cases such as *Irons v. Carey,* 479 F.3d 658 (9th Cir 2007), *Sanchez v. Kane,* 444 F.Supp.2d 1049 (N.D. Cal. 2006), *Rosenkrantz v. Marshall* [*Rosenkrantz VI*][3] 444 F.Supp.2d 1063, at 1085 (C.D. Cal. 2006), *Martin v. Marshall,* 431 F.Supp.2d 1038 (N.D. Cal. 2006), and *In re Scott* [*Scott II*][4], 133 Cal.App.4th 573, at 594-595 (2006), *In re Lee,* 143 Cal.App.4th 1400 (2006), *In re Elkins,* 144

---

[2] As the California Court of Appeal stated in *In re Ernest Smith,* 114 Cal.App. 4th 343, 369 (2003), when the "record provides no reasonable grounds to reject, or even challenge, the findings and conclusions of the psychologist and counselor concerning [the inmate's] dangerousness" the Board may not do so either.

[3] The *Rosenkrantz* case has now resulted in six decisions. *People v. Rosenkrantz* (1988) 198 Cal.App.3d 1187 (*Rosenkrantz I*) *In re* Rosenkrantz (2000) 80 Cal.App.4th 409, (*Rosenkrantz II*) *Davis v. Superior Court* [*Rosenkrantz*] (Feb. 22, 2001, B146421) [non pub. opn.] (*Rosenkrantz III*) *In re Rosenkrantz* (2002) formerly published at 95 Cal.App.4th 358 (*Rosenkrantz IV*), *In re Rosenkrantz*, (2002) 29 Cal.4th 616 (*Rosenkrantz V*), and *Rosenkrantz v. Marshall* (C.D.Cal. 2006) 444 F.Supp.2d 1063 (*Rosenkrantz VI*).

[4] There are two "*Scott*" decisions. The first was the reversal of the Board's denial of parole, *In re Scott* [*Scott I*] (2004) 119 Cal.App.4th 871. The second was the reversal of the Governor's action taking Scott's parole date granted at the hearing after the decision in *Scott I*. *In re Scott* [*Scott II*] (2005) 133 Cal. App.4th 573 . They will be differentiated herein by the roman numeral designations I & II. It should be noted that *Scott II* was subsequent to *Hawks*, and the Supreme Court not only denied review, but they refused the Governor's request to depublish the opinion.

Cal.App.4th 475 (2006), and *In re Weider,* 145 Cal.App.4th 570 (2006), Mr. Hawks is clearly entitled to relief.

## *TRAVERSE TO RESPONDENT'S RETURN*

### I.

Petitioner admits the portions of the allegations of paragraph 1 regarding his alleged conviction, and acknowledges that he is in the actual custody of the California Department of Corrections and Rehabilitation (CDCR)[5] at the Correctional Training Facility-Soledad. However, Petitioner denies generally and specifically the remaining allegation that he is currently "lawfully" or properly in the custody of the CDCR, for the reasons alleged in the petition and herein. Contrary to respondent's contention, Petitioner is in fact challenging the manner in which his sentence has been executed, to the extent that the Board wrongfully denied him parole. See *In re Roberts,* 36 Cal. 4th 575, at 589-590 (2005) [treating parole as an integral part of the overall process of sentencing]; see also *In re Sena,* 94 Cal. App. 4th 836, at 839 (2003). Thus, it is the effect of the Board's actions on the execution of the sentence, rather than the initial imposition, that is at issue herein.[6]

### II.

Petitioner admits the allegations in paragraph 2, but denies that said facts are relevant to the question of whether his due process rights were met.

### III.

Petitioner admits the allegations in paragraph 3 that the Board of Prison Terms held a hearing in 2006, made the finding noted in lines 11-13, read the account of the commitment offense as taken primarily from the probation report. The actual facts of the crime are as stated in the Statement of Facts section in Petitioner's Memorandum of Points and Authorities in Support of The Petition For Writ of Habeas Corpus, and the same are incorporated herein by reference as though set forth in full. Furthermore, the Board did not base its decision "in part"

---

[5] The former CDC is now the CDCR, California Department of Corrections & Rehabilitation.

[6] Petitioner only takes issue with the statements in fn. 1 of the return in a technical sense. The proper respondent for all purposes was named in the petition, Ben Curry, the acting warden at CTF Soledad at the time of filing. However, the Board and Governor are named in the petition as real parties in interest, and all parties should retain those designation for all purposes, as those designations are designed to ensure the binding effect of the judgment on the Board and Governor, both of whom are interested in the outcome, represented by the same counsel, the Attorney General's office.

on the commitment offense, but relied exclusively on Petitioner's crime. See ¶¶4-6 of the return [listing only the crime, and DA opposition based exclusively on the crime, as the basis for the denial of parole]. Mr. Hawks denies generally and specifically each and every remaining allegation of said paragraph 3.

### IV.

Petitioner admits the allegation of paragraph 4, that the Board recited factors from *Cal. Code Regs.* tit. 15, §2402(c)(1). However, as fully set forth herein, the Board's finding that Mr. Hawks' commitment offense fit within the parameters of §2402(c) was not supported by the record before the Board. Specifically, this Court has already found that the commitment offense was *not* committed in a dispassionate manner nor did it show an exceptionally callous disregard for human suffering. (*Hawks v. Kane,* No. 05-02853, Docket No. 32, Order Denying Petition For Writ of Habeas Corpus, p. 16.) Similarly, Mr. Hawks' motive for committing the crime, anger, is not "inexplicable" as found by the Board, since the Board itself goes on to explain exactly what the motive was, "what would be described today as a road rage incident." (Resp.'s Exh. 2, pp. 149-150.) The current case law is clear that if the motive can be explained, it is not "inexplicable" under the regulations, and the Board's description of the role of anger in the crime defeats that argument, by showing a motive that is a commonplace one for murder. *In re Scott [Scott I],* 119 Cal.App.4th 871 (2004). Except as specifically admitted herein, Mr. Hawks denies generally and specifically each and every remaining allegation of said paragraph 4.

### V.

Petitioner admits the allegation of paragraph 5 that the Board recited that it had "considered" the opposition of the District Attorney and victim next of kin. Nowhere does the Board state that it relied on that opposition as factual proof of unsuitability. While victim impact is allowed, and can be considered on issues such as whether to parole the inmate back to their community, opposition of the victim next of kin or the prosecuting office does not supply facts to support a finding of unsuitability, as it is not evidence and does not establish any regulatory factor. Furthermore permission of the DA, or forgiveness from the family, is not required as a prerequisite to parole. Also, because the opposition from the District Attorney and the victims' next of kin was based solely on the factors of Mr. Hawks' commitment offense, this opposition, after over two-decades of incarceration, no longer has any predictive value on Mr. Hawks' suitability for release on parole.

## VI.

As to the allegations of paragraph 6, while Petitioner does acknowledge that the Board did, as it always does, issue a series of hollow compliments after denying parole, Mr. Hawks denies any implication that the Board actually gave due consideration to his two-decades of perfect programming, extensive vocational and educational achievements, his long list of self help and volunteer work, his history of always having full psychological clearance for parole, and the more than three dozen letters of support for Mr. Hawks' release that included strong statements from the correctional officers that see his daily interactions. Except as specifically admitted herein, Petitioner generally and specifically denies each and every remaining allegation of said paragraph 6.

## VII.

Petitioner admits the allegation of paragraphs 7, 8, 9 and 10 that his state court habeas claims in the instant petition have been exhausted, and that his petitions to the Riverside Superior Court, 4th District Court of Appeal and California Supreme Court were all summarily denied. However, Petitioner does not understand Respondent's contradictory position in paragraph 10, that he does not admit that the claims have been exhausted "to the extent they are more broadly interpreted to encompass any systematic issues beyond this particular parole consideration hearing," and therefore denies said allegation. Except as specifically admitted herein, Petitioner generally and specifically denies each and every remaining allegation of said paragraphs 8, 9 and 10.[7]

## VIII.

Petitioner denies the allegations set forth in paragraph 11. Both in the petition and in this denial and the accompanying Points and Authorities, Petitioner has set forth the grounds upon which this Court will find that the Board's decision to deny Mr. Hawks parole violated Mr. Hawks' due process rights. As such, Petitioner denies the allegation that Mr. Hawks did not make a case for relief under both prongs of the Antiterrorism and Effective Death Penalty Act of 1996. As fully set forth herein, the state courts' refusal to grant Mr. Hawks' relief from the Board's unconstitutional denial of parole both involved an unreasonable application of clearly

---

[7] Petitioner agrees with Respondent that there is no obvious need for providing the extensive exhibits from the state court proceedings, as they would be duplicative of the exhibits filed by Petitioner herein.

established United States Supreme Court law, and were based on an unreasonable determination of the facts in light of the evidence presented, particularly in light of the findings previously made by this Court that negated the application of three of the four crime based findings made by the Board. Except as specifically admitted herein, Petitioner generally and specifically denies each and every remaining allegation of said paragraph 11.

### IX.

Petitioner denies generally and specifically the allegation in paragraph 12 that Mr. Hawks does not have a federally protected liberty interest in parole under California Penal Code section 3041. In fact, this Court's denial of Respondent's Motion to Dismiss, in the previous habeas proceedings in *Hawks v. Kane*, C-05-2853, Docket No. 20, was based on the holdings of *McQuillion v. Duncan [McQuillion I]*, 306 F. 3d 895, 901 (9th Cir. 2002) and *Biggs v. Terhune*, 334 F. 3d 910, 914 (9th Cir. 2003), and directly controverts this unfounded claim. As this Court has previously determined, under the holdings in each of the above cited cases, Mr. Hawks has a federally protected liberty interest in parole. (*Hawks v. Kane*, et al. C-05-2853, Docket No. 20, Order Denying Motion to Dismiss, Docket No. 32, Order Denying Petition For Habeas Corpus, p. 2 fn. 1.) It is affirmatively alleged that contrary to Respondent's position, it is has now been made clear that California's parole scheme vests all prisoners whose sentences provide for the possibility of parole with a constitutionally protected liberty interest in the receipt of a parole release date, a liberty interest that is protect by the procedural safeguards of the Due Process Clause. *Irons v. Carey*, 479 F.3d 658, 662 (9th Cir. 2007) (citing *Sass v. Calif. Bd. Of Prison Terms*, 461 F.3d 1123, 1128 (9th Cir. 2006); *Biggs v. Terhune*, 334 F.3d 910, 914 (9th Cir. 2003); *McQuillion v. Duncan*, 306 F.3d 895, 903 (9th Cir. 2002.) Petitioner generally and specifically denies each and every remaining allegation in paragraphs 12, and affirmatively alleges that this claim by respondent, in the face of directly contrary governing law, is patently frivolous.

### X.

Petitioner generally and specifically denies the allegations of paragraph 13, 14 and 15. Respondent misapplies *Sandin v. Conner*, 515 U.S. 472 (1995), misstates the rules of *Greenholtz v. Inmates of Nebraska Penal & Corr. Complex* (1979) 442 U.S. 1, 7, and ignores *Board of Pardons v. Allen* (1987) 482 U.S. 369, 376-78, the latter two of which both directly found a federal liberty interest in parole based on the identical type of language as is contained in California's parole statute, *Penal Code* §3041. Under *McQuillion I, Sass, Irons* and *Biggs*,

Petitioner was entitled to more due process protections than alleged, and even if not, he was not afforded a meaningful opportunity to be heard, and denies that the Board gave him due consideration, or that its explanation was sufficient, for all of the reasons stated in the petition, herein and in the accompanying points and authorities.

### XI.

Petitioner specifically denies the allegation in paragraph 15, that there is no Supreme Court decision specifically addressing the "some evidence" requirement in relation to parole hearings. It is affirmatively alleged that the Supreme Court has set a standard of review in *Superintendent v. Hill*, 472 U.S. 445, 457 (1985), which provides the basis for the "some evidence" standard. See ¶X, *supra*. This standard has been utilized by the Ninth Circuit in multiple published opinions, making it clear that under principles of federal due process, California inmates are entitled to a "some evidence" review of their parole hearing. See *Sass, supra*, 461 F.3d 1123, *Irons, supra*, 479 F.3d 658, *Biggs, supra*, 334 F.3d at 914, *McQuillion, supra,* 306 F.3d at 903. Furthermore, Petitioner specifically denies that the lack of a Supreme Court case directly involving a parole hearing precludes the Court from hearing Petitioner's case and granting relief. As fully set forth herein, in *Superintendent v. Hill*, 472 U.S. 445, 457 (1985), the Supreme Court clearly ruled that due process requires court review of the sufficiency of the evidence when a liberty interest is invoked, and in that context applied the "some evidence" standard to prison disciplinary hearings. As the Supreme Court recently clarified in *Panetti v. Quarterman*, ___ U.S.___, 127 S.Ct. 2842 (2007), AEDPA does not require that the Supreme Court address as specific fact pattern before a legal rule may be applied. Here, the Supreme Court has already addressed a virtually identical issue in *Hill* when they were examining the procedures and standard of review necessary in prison disciplinary hearings, the Supreme Court's "legal rule" must similarly be applied in the parole context as the Ninth Circuit found in *Sass v. California Board of Prison Terms,* 461 F.3d 1123 (9th Cir. 2006).

### XII.

For the reasons set forth above, Petitioner admits the allegation of paragraph 16 that the some evidence standard is binding on this Court, based on the above cited 9th Circuit precedent. However, for all of the reasons set forth herein and in the petition, which are incorporated herein by reference as though set forth in full, Petitioner generally and specifically denies the allegations in paragraphs 18 and 19.

### XIII.

Petitioner generally and specifically denies the allegations in paragraph 17 and 20, and affirmatively alleges that *Penal Code* § 3041 language creates a presumption that the inmate will have a parole release date set at that first hearing. *McQuillion v. Duncan, supra*, 306 F.3d 895, 901 ["The scheme 'creates a presumption that parole release will be granted."]. Petitioner further alleges that a rapidly growing body of law requires reversal of the denial of parole by the Board or Governor when there is no evidence rationally showing that the inmate is currently dangerous. *In re Singler*, 161 Cal.App.4th 281 (2008); *In re Burdan*, 161 Cal.App.4th 14 (2008); *In re Barker*, 151 Cal.App.4th, 346, 365 (2007), *In re Scott [Scott II]*, 133 Cal.App.4th 573, at 594-595 (2005) [applic. for stay and req. for depubl. denied at S138430], *In re Gray* (2007) 151 Cal.App.4th 379, 383 [depubl. request denied at S153831] *In re Lee*, 143 Cal.App.4th 1400, 1408-1409 (2006) [req. for depubl. denied at S149411], *In re Elkins*, 144 Cal.App.4th 475, at 499, 521 (2006) [pet'n for rev. & req. for depubl. denied at S148058; applic. for stay denied, at S147840], and *In re Weider*, 145 Cal.App.4th 570, at 589-590 (2006); *Sanchez v. Kane*, 444 F.Supp.2d 1049 (C.D. Cal. 2006), *In re Rosenkrantz [Rosenkrantz VI]*, 444 F.Supp.2d 1063, at 1085 (C.D. Cal. 2006), and *Martin v. Marshall*, 431 F.Supp.2d 1038 (N.D. Cal. 2006). Importantly, the above cited state court decisions came down subsequent to *Dannenberg*, and the Supreme Court not only denied review, but they refused the Governor's various separate requests to block the inmates' release or to depublish the opinions. It is affirmatively alleged that the Board's 2006 denial is not supported by any evidence that Mr. Hawks would present a risk of danger to society if released. Mr. Hawks' programming has been exemplary, and the Board itself has previously admitted that Mr. Hawks' institutional behavior has been "impeccable." In addition, all psychiatric evaluations state that Hawks would ***not pose a risk of danger to society if released***. As such, the Board's decision to deny parole and the state's court's decision to uphold the decision does not comport with the 'some evidence' standard."

### XIV.

Petitioner generally and specifically denies each and every allegation in paragraph 21. Under California law, the Board is discharging part of the trial court's sentencing function in considering parole suitability and setting a term. See *In re Roberts* (2005) 36 Cal. 4th 575, at 589-590 [parole is an integral part of the overall process of sentencing, and that process is not complete until the term is set and the inmate released]; see also *In re Sena* (2003) 94 Cal.App.4th

836, at 839. Thus, the Board is directly considered to be acting in the capacity of a sentencing judge in considering parole.

### XV.

Petitioner generally and specifically denies each and every allegation in paragraph 22. It is precisely the manner in which the regulatory factors were used in this case that renders them unconstitutionally vague, as applied. The unconstitutional manner in which the Board routinely uses the regulatory criteria regarding the commitment offense was found in the proceedings in the consolidated cases of *In re Jamieson* Santa Clara County Superior Court case #71194 (6th DCA Case #H032047), *In re Ngo* Santa Clara County Superior Court case #127611 (6th DCA Case #H032046) and *In re Criscione* Santa Clara County Superior Court case #71614 (6th DCA Case #H032048). As is discussed more fully hereafter, this presents an appropriate matter for the conduct of an evidentiary hearing to resolve this issue.

### XVI.

Petitioner generally and specifically denies each and every allegation of paragraph 23. The Board improperly denied numerous

### XVII.

Petitioner generally and specifically denies each and every allegation of paragraphs 24 and 25. For the reasons set forth herein, in the accompanying Points and Authorities, and in the original petition, Petitioner has established his grounds for relief and shown that he meets both prongs of the AEDPA.

### XVIII.

Petitioner generally and specifically denies the allegations in paragraph 26 that if the petition is granted, Mr. Hawks's remedy is limited to a new parole consideration. If the petition is granted, Mr. Hawks is entitled to immediate release as a remedy. See ¶XXIX, *infra*.

### XIX.

Petitioner admits the allegation of paragraph 27 that there is no procedural bar to this action.

**XX.**

Petitioner generally and specifically denies the allegation of paragraph 28. Petitioner affirmatively alleges that an evidentiary hearing may be necessary to resolve the factual disputes and that the existing state court record is not sufficient and should be properly be augmented.[8]

**XXI.**

Petitioner affirmatively alleges that his security score has been zero[9] throughout the time he has been under consideration for parole, which is the lowest security threat score that it is possible for him to receive under CDCR rules, that he has been granted A1A work and privilege group designations, again the most favorable rating he can receive, and that he has been disciplinary free throughout his twenty two (22) years of incarceration. Additionally, he has been housed in a level II facility, which is the lowest custody permitted for indeterminately sentenced term to life prisoners, and which is prohibited for inmates deemed by the Department of Corrections to possess or present a threat to the safety of others, or to have committed a crime involving "unusual violence" or an execution style killing. *Cal. Code Regs*, tit. 15 §3375.2. Petitioner further affirmatively alleges that his low security score, level II housing, and high privilege-work group score constitutes an admission by the CDCR that Mr. Hawks presents the lowest possible risk of danger among the term to life prison inmate population, and therefore puts him at a risk level that cannot be characterized as an "unreasonable risk of danger to society" if paroled, within the meaning of *Cal. Code of Regs.*, tit. 15, §2402(a). Mr. Hawks has no history of violence in prison, all of his work evaluations were in the above average to exceptional range, and his file contains extensive laudatory chronos documenting consistently

---

[8] A simple test can be done in connection with an evidentiary hearing to illustrate the vagueness of the regulations as they are currently being applied. This Court can order respondent to produce the decisions by the parole Board during the ninety (90) days before and after Mr. Hawks' hearing, along with the Governor's decisions regarding any case where parole was granted by the Board (or en banc decision or rulings by the Decision Review Unit as to any case that was subsequently reversed or modified), and as to any inmate that was released, any prior decisions of the Board denying parole as to that inmate. Petitioner anticipates that this evidence would show that in 100% of all murder cases, the crime has been found to be "especially heinous, atrocious, or cruel" at some point. Thus, as applied, the phrase would be violative of federal due process, in that it can fit any crime, and has lost the ability to distinguish crimes that truly are particularly egregious.

[9] In 2002, CDCR changed the policy for scoring inmate's for housing purposes, making the minimum score applicable to any lifer, even with a zero security score, to be 19. Since then, although his classification score is 19, his security threat score remains at 0.

positive behavior and work ethics, and his psychological reports consistently find that he is not dangerous.

### XXII.

Petitioner affirmatively alleges that he has participated in every applicable self help program available to him in the institution, and as a general population term to life inmate, there is no longer any form of therapy available.[10] At prior hearings, although the Board recommended further self help and therapy, they never identified a single available program that Mr. Hawks has not already completed, or a type of therapy that he can actually participate in and which the Mental Health department has recommended for him. Despite this, he has taken every course offered and sought therapy, and was specifically found by the Mental Health Unit not to need any. Furthermore, despite these CDCR based limits, he recently has managed to obtain therapy since his last hearing. Thus, Petitioner has done everything asked or required of him in order to be found parole suitable and there is no basis for the Board to discount, reject or ignore any of the findings, opinions or conclusions in any of the reports that establish Petitioner does not present an appreciable risk of danger to society and does not need treatment.

### XXIII.

Petitioner alleges that The Board makes findings that are simply based on the language contained in a form, BPT 1000a (Exh. B), rather than an actual individualized assessment of the inmate's suitability, and such findings are unsupported by the record.

### XXIV.

For the reasons set forth herein, there was no competent evidence to support the Board's decision. Here, the evidence indisputably showed that Mr. Hawks had excelled in every aspect of his programming and had no need for further self help or therapy. His achievements meet or exceed every requirement for parole suitability, yet the Board failed to view them as factors favoring the application for parole.

### XXV.

Petitioner affirmatively alleges that jurisdiction, venue and exhaustion issues are all satisfied in this case. Habeas corpus is the proper remedy at this time.

---

[10] Despite this, in 2004, he began a new session of individual therapy with Dr. Howlin, and continues to participate in that treatment to this day.

### XXVI.

Respondent spends the majority of his Return attempting to retry Petitioner for his offense, even though Petitioner fully admits his involvement in the crime, and takes full responsibility for his actions. The crime is what it is and always has been, and cannot be expanded beyond the scope of the record. Respondent also does not, and cannot, dispute that Petitioner is not required to admit to the prosecution's or Board's unsubstantiated version of the facts. *Pen. Code* §5011(b), *Cal. Code of Regs.*, tit. 15, §2236.

### XXVII.

The Board in fact failed to properly consider any of the evidence, and ignored their legal responsibility in reviewing Mr. Hawks' suitability for parole. Despite the Board's recitations of "findings" of unsuitability factors based on the crime, this decision was not based, nor could it properly be based, on the enumerated factors. Nor was there any evidence to support the Board's claimed findings.

### XXVIII.

Mr. Hawks re-alleges and incorporates herein by reference each and every allegation and all of his claims as presented in his Petition, and the factual showing in his exhibits, and affirmatively alleges that Respondent, in its Return, has done nothing more than attempt to re-litigate the offense itself, and restate the Board's decision, without establishing a lawful basis for the reversal of the grant of parole, or offering any real explanation as to how or why the evidence supports a finding that Mr. Hawks would currently pose an unreasonable risk of danger to the public if released. Likewise, Mr. Hawks incorporates herein by reference the memorandum of points and authorities and exhibits submitted with the petition, and the memorandum of points and authorities and exhibits submitted herewith. Respondent mischaracterizes and misconstrues Petitioner's arguments and theories, and the Court's attention is directed to the Petition and the accompanying points and authorities for a full understanding of the actual arguments relied upon herein. These documents provide the legal and factual basis for the claims raised herein.

### *REMEDY*
### XXIX.

Mr. Hawks is entitled to an order of release and the most recent action by the Board confirms this. The 2006 hearing is the sixth time that the Board has denied parole, they have been given the opportunity to correct these types of abuses while this case has been pending

through the state courts, and this is the fourth federal habeas petition brought before this Court. In each of the first two, the only ones which have come to decision, this Court has found that Mr. Hawks' programming has been exemplary, that all of the crime based findings except for "multiple victims" have no support in the record, and the writs were only denied because the continued reliance on the crime had not yet reached the point where it violated federal due process. Mr. Hawks has had two (2) subsequent hearings following the 2006 one at issue herein, in 2007 and 2008. However, instead of correcting the situation, they have made it worse, and in this case, the Board is now perpetuating the series of previous improper parole denials. Under *McQuillion I*, and *Penal Code* §1487(2), this Court has the power to order a discharge from custody when a term of incarceration has become unlawful. Section 1487(2) allows a court to discharge an inmate from custody when his or her incarceration, although initially lawful, has become illegal due to subsequently occurring circumstances. *Penal Code* §1487, subd. (2). This is precisely what occurred in the case of *In re Rodriguez*, 14 Cal. 3d 639 (1975), where the inmate's term became illegal, as it was disproportionate, and he was ordered released. As the court noted in *In re Ramirez*, 94 Cal. App. 4th 549, 561 (2001), the existence of a right carries with it the corollary principle that there must "also exist [] a remedy against their abrogation [citing *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 161-163 (1803)]." The Court of Appeal in the case of *In re Rosenkrantz [Rosenkrantz II]*, 80 Cal. App. 4th 409, at p.428 (2000), stated "we flatly reject the Board's contention that (a) Rosenkrantz's only remedy is the ***continuing charade of meaningless hearings***, and (b) that the Superior Court lacks the power to compel the Board to follow the law." Emphasis added. Here, it would be irrational to keep sending the case back to the Board, since there are no new facts, except positive ones, and Respondent could not render a decision denying parole that would be supported by the evidence. Thus, the only proper action is to order Mr. Hawks released from custody.

## *PRAYER*

WHEREFORE, Mr. Hawks respectfully submits that the petition for writ of habeas corpus should be granted, and that he is entitled to the relief requested in the petition.

Dated:　June 11, 2008　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　LAW OFFICES OF PICONE & DEFILIPPIS


　　　　　　　　　　　　　　　　　　By　　　/s/ Steve M. Defilippis
　　　　　　　　　　　　　　　　　　　　　STEVE M. DEFILIPPIS,
　　　　　　　　　　　　　　　　　　　　　Attorneys for Petitioner,
　　　　　　　　　　　　　　　　　　　　　HAROLD HARVEY HAWKS