*IN THE UNITED STATES DISTRICT COURT*

*FOR THE NORTHERN DISTRICT OF CALIFORNIA*

HAROLD HARVEY HAWKS,                              C-07-5039 JSW

      Petitioner,

        -vs-

BEN CURRY, Acting Warden,

      Respondent.

      On Habeas Corpus.
_____/
ARNOLD SCHWARZENEGGER,
Governor, BOARD OF PAROLE
HEARINGS,

      Real Parties in Interest.
_____/

---

***MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF***
***TRAVERSE TO RESPONDENTS' RETURN TO ORDER TO SHOW***
***CAUSE RE PETITION FOR WRIT OF HABEAS CORPUS***

---

STEVE M. DEFILIPPIS
SBN 117292
PICONE & DEFILIPPIS, A P.L.C.
625 N. First Street
San Jose CA 95112
(408) 292-0441

Attorneys for Petitioner,
HAROLD HARVEY HAWKS

TABLE OF CONTENTS...................................................................................i

TABLE OF AUTHORITIES...........................................................................iii

POINTS & AUTHORITIES............................................................................1

INTRODUCTION...........................................................................................1

LEGAL ARGUMENT.....................................................................................2

      I.     RESPONDENT'S ARGUMENT THAT PETITIONER HAS NO DUE PROCESS RIGHTS BEYOND BEING ALLOWED TO PARTICIPATE IN THE HEARING & BE TOLD OF THE BASIS FOR THE DENIAL IS INCONSISTENT WITH CLEAR 9TH CIRCUIT AUTHORITY.....................................................2

      II.    BECAUSE THE BOARD'S DECISION FINDING THAT PETITIONER WAS AN UNREASONABLE RISK OF DANGER IF RELEASED ON PAROLE WAS NOT SUPPORTED BY ANY EVIDENCE, IT WAS A VIOLATION OF CLEARLY ESTABLISHED FEDERAL LAW.......................................5

          A.    THERE IS NO EVIDENCE IN THE RECORD THAT MR. HAWKS' COMMITMENT OFFENSE IS ESPECIALLY HEINOUS, ATROCIOUS OR CRUEL WITHIN THE MEANING OF CAL. CODE REGS. TIT. 15 § 2402(C)(1). ..............................................6

              1.   THE COMMITMENT OFFENSE WAS NOT COMMITTED WITH AN "EXCEPTIONALLY CALLOUS DISREGARD FOR HUMAN SUFFERING.".........................................7

              2.   THE BOARD'S CLAIM THAT THE MOTIVE WAS "INEXPLICABLE" WAS NOT A VALID BASIS FOR THE DENIAL OF PAROLE. .......9

              3.   THE FACT THAT MULTIPLE VICTIMS WERE INJURED IN THIS CASE IS NOT A VALID BASIS FOR DENYING PAROLE. ................10

          B.    THE OPPOSITION OF THE VICTIM'S FAMILY AND THE DISTRICT ATTORNEY WAS BASED SOLELY ON THE COMMITMENT OFFENSE AND THUS NO LONGER JUSTIFIES A DENIAL OF PAROLE..........12

III.    CONTINUAL RELIANCE ON IMMUTABLE FACTORS AS A BASIS FOR THE DENIAL OF PAROLE RESULTED IN A VIOLATION OF MR. HAWKS'S DUE PROCESS RIGHTS. ...13

    A.    THE BOARD'S RELIANCE ON IMMUTABLE FACTORS OF THE COMMITMENT OFFENSE WAS A VIOLATION OF THE RULE SET FORTH IN IRONS...14

    B.    RELIANCE ON IMMUTABLE FACTORS ARE NOT PREDICTIVE OF MR. HAWKS'S SUITABILITY FOR PAROLE. ........................................................15

IV.    THE BOARD'S RULING RELIES UPON UNCONSTITUTIONALLY VAGUE LANGUAGE, CONTRARY TO CLEARLY ESTABLISHED SUPREME COURT LAW, THAT IS APPLIED IN AN UNCONSTITUTIONALLY VAGUE MANNER.................................................................18

    A.    THE BOARD'S RULING RELIED UPON LANGUAGE THAT WAS UNCONSTITUTIONALLY VAGUE. ...…19

    B.    THE BOARD HAS ARBITRARILY APPLIED THE SUITABILITY FACTORS OF §2402(C)...................20

CONCLUSION.............................................................................22

## Federal Cases

Barapind v. Enomoto, 400 F. 3d 744, 751 fn. 8 (9th Cir. 2005) ..... 16

Blankenship v. Kane, ____F.Supp.___[2007 WL 1113798] ..... 10, 11

Blankenship, 2007 WL1113798 ..... 11

Board of Pardons v. Allen, 482 U.S. 369-377-78 (1987) ..... 4

Carey v. Musladin, _U.S._, 127 S. Ct. 649 (2006) ..... 4, 5

Godfrey v. Georgia, 442 U.S. 420 (1980) ..... 21

Greenholtz v. Inmates of Neb. Penal & Corr. Complex, 442 U.S. 1, 16 (1979) ..... 4

Irons II], 479 F.3d 658 (9th Cir. 2007) ..... 4, 5

Irons v. Carey [Irons III], 505 F. 3d 951, 952 (9th Cir. 2007) ..... 16

Martin v. Marshall, 431 F.Supp.2d 1038 (C.D. Cal. 2006) ..... 8, 13, 18, 21

Maynard v. Cartwright, 486 U.S. 356, 363 (1988) ..... 21

McQuillion v. Duncan, 306 F.3d 895, 904 (9th Cir. 2002) ..... 4

Panetti v. Quarterman, ____ U.S. ___, 127 S.Ct. 2842 (2007) ..... 5, 6

Rosenkrantz VI] 444 F.Supp.2d 1063, at 1085 (C.D. Cal. 2006) ..... 8

Rosenkrantz VI] , 444 F.Supp.2d 1063, at 1085 (C.D. Cal. 2006) ..... 8

Sanchez v. Kane, 444 F.Supp.2d 1049 (C.D. Cal. 2006) ..... 8, 18

Sass v. California Board of Prison Terms, 461 F.3d 1123, 1129 (9th Cir. 2006) ..... passim

Superintendent v. Hill, 472 U.S. 445, 457 (1985) ..... 4

## State Cases

In re Barker, 151 Cal.App.4th, 346, 365 (2008) ..... 8

In re Burdan, 161 Cal.App.4th 14 (2008) ..... 8

In re Ernest Smith, 114 Cal.App.4th 343, at 367 (2003) ..... 10, 12, 23

In re Gray, 151 Cal.App.4th 379, 410 (2007) ..... 9

In re Lee, 143 Cal.App.4th 1400, 1408-1409 (2006) ..... passim

In re Ramirez, 94 Cal.App.4th 549, 570 (2001) ..... 9, 22

In re Rosenkrantz [Rosenkrantz V], 29 Cal.4th 616, at 658 (2002) ..... 7, 8, 10

In re Scott [Scott II], 133 Cal.App.4th 573, 594-595 (2005) ..... 7, 17, 19, 20

In re Singler, 161 Cal.App.4th 281 (2008) ..... 8, 18, 19

In re Sturm (1974) 11 Cal.3d 258 ..... 22

In re Weider (2006) 145 Cal.App.4th 570, 582-583 ..... 23

In re Weider, 45 Cal.App.4th 570, 589 (2006) ..... 8

People v. Rosenkrantz (1988) 198 Cal.App.3d 1187 ..... 8

Rosenkrantz I) In re Rosenkrantz (2000) 80 Cal.App.4th 409 ..... 8

Rosenkrantz IV), In re Rosenkrantz, 29 Cal.4th 616 (2002) ..... 8

## Statutes

Penal Code § 3041(b) ..... 7

Penal Code §3041 ..... 17

Penal Code §3042(a) ..... 15

Penal Code §3043 ..... 14

STEVE M. DEFILIPPIS
SBN 117292
PICONE & DEFILIPPIS, A P.L.C.
625 N. First Street
San Jose CA 95112
(408) 292-0441

Attorneys for Petitioner,
HAROLD HARVEY HAWKS

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HAROLD HARVEY HAWKS, | C-07-5039 JSW |
| Petitioner, | |
| -vs- | *MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF TRAVERSE TO RESPONDENTS' RETURN TO ORDER TO SHOW CAUSE RE PETITION FOR WRIT OF HABEAS CORPUS* |
| BEN CURRY, Acting Warden, | |
| Respondent. | |
| On Habeas Corpus. | |

ARNOLD SCHWARZENEGGER,
Governor, BOARD OF PAROLE
HEARINGS,

Real Parties in Interest.

_____/

### INTRODUCTION

Petitioner Harold Harvey Hawks appears before this Court for the fourth time to challenge what is becoming a long series of repeated denials of parole by the Board in the face of a literally perfect prison record, based solely on an offense that simply does not rise to the level of egregiousness sufficient to justify this action. This Court is well aware of the factual background and procedural history of this case, and those matters will not be repeated herein. While Petitioner regrets having to bring repeated challenges in this Court, the actions of the Board leave him with little choice. His behavior, attitude, actions and programming in prison have been not just above reproach, but he has consistently proven himself as a fully rehabilitated

1

inmate. Every professional who has come into contact with him during his time in custody, from psychologists, to educators, to correctional officers and counselors, has vouched for his sincerity, progress and suitability for parole. Thus, when the Board continues to ignores his efforts after more than two (2) decades in prison, and disregards the proof from its own experts that he can be safely released, it is incumbent on this Court to stop the Board from perpetually relying on the unchanging facts of this implied malice murder to forever preclude parole.

As will be seen, there is *no evidence* to suggest that Mr. Hawks's, after over two decades in prison currently presents a danger to society. In concluding otherwise, neither the Board nor the state courts established a nexus between the factors cited by the Board and an ongoing unreasonable risk of danger to society if Mr. Hawks is released. Mr. Hawks has proven himself ready in every possible way for parole. Since the Board failed to reach the only result that is proper under the evidence, this is a case where the grant of habeas relief needs to include an order of direct release, as sending the case back to the Board for any further proceedings would be an idle act, as they would have no basis to reach any decision other than a finding of suitability.

## LEGAL ARGUMENT

**I.**    **RESPONDENT'S ARGUMENT THAT PETITIONER HAS NO DUE PROCESS RIGHTS BEYOND BEING ALLOWED TO PARTICIPATE IN THE HEARING & BE TOLD OF THE BASIS FOR THE DENIAL IS INCONSISTENT WITH CLEAR 9TH CIRCUIT AUTHORITY.**

Respondent's lead argument is that this Court need not conduct any evaluation of the sufficiency of the evidence, asserting that clearly established federal law does not permit such review. (Answer, pp. 8-12.) Of course, such a review is expressly required by *Sass v. California Board of Prison Terms,* 461 F.3d 1123, 1129 (9th Cir. 2006), *Irons v. Carey* [hereinafter *Irons II*], 479 F.3d 658 (9th Cir. 2007), and *McQuillion v. Duncan,* 306 F.3d 895, 904 (9th Cir. 2002), clear 9th Circuit precedent that is binding on this Court. Respondent seems to forget, or simply ignores, that this Court has twice found, in the prior litigation between these same parties, that inmates in California institutions *do* have a federally protected liberty interest in parole. (*Hawks v. Kane,* et al. C-05-2853, Docket No. 20, Order Denying Motion to Dismiss, Docket No. 32, Order Denying Petition For Habeas Corpus, p. 2 fn. 1.) Presumably, respondent does not anticipate that this Court will change its mind and conclude that binding 9th Circuit precedent need not be followed. However, because they are obviously attempting to make a record to

preserve the argument for appeal, Petitioner will provide a full response to these arguments.

In the answer, Respondent attempts to lessen the due process rights that should be afforded Mr. Hawks at his parole hearing by asserting that he is entitled to no more than (1) an opportunity to be heard; and (2) when parole is denied, a statement by the board informing him in what respects he falls short of qualifying for parole. (Answer, p. 11, citing *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 16 (1979).) However, in *Superintendent v. Hill*, 472 U.S. 445, 457 (1985), the Supreme Court clearly ruled that due process requires court review of the sufficiency of the evidence when a liberty interest is invoked, and in that context applied the "some evidence" standard to prison disciplinary hearings. *Hill* was cited in *Sass*, *Irons II*, and *McQuillion* as a basis for applying the "some evidence" standard to parole hearings. In fact, the Ninth Circuit in *Sass* specifically stated,

> To hold that less than the some evidence standard is required would violate clearly established federal law because it would mean that a state could interfere with a liberty interest-that in parole-without support or in an otherwise arbitrary manner. We therefore reject the state's contention that the some evidence standard is not clearly established in the parole context.

*Sass*, 461 F.3d at 1129. Respondent simply ignores this established Ninth Circuit authority, urging that *Carey v. Musladin*, _U.S._, 127 S. Ct. 649 (2006), which deals with an entirely different set of circumstances, somehow means that *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1 (1979) restricts parole applicants to the type of rights that would apply in a state that does not use mandatory language in its parole statute. However, in *Board of Pardons v. Allen*, 482 U.S. 369-377-78 (1987), a case decided **after** *Greenholtz*, the Supreme Court stated that a liberty interest arises out of the state's use of mandatory language in their parole statute. *Allen*, 482 U.S. at 377-78. Of course, *California Penal Code* §3041 is precisely such a statute, as the 9th Circuit has repeatedly determined in cases such as *McQuillion I*, *Sass* and *Irons*.

Of course, Respondent failed to meaningfully analyze *Musladin*, and a proper examination of that decision illustrates that the Ninth Circuit is correct, and *Hill* is in fact clearly established federal law under AEDPA, and as such, Mr. Hawks is clearly entitled to an evidentiary review the "some evidence" standard. Respondent's argument is that in the absence of a Supreme Court decision specifically applying that standard to prison parole hearings, it is not considered clearly established Supreme Court law. This is too narrow of a reading of *Musladin*. There, the Court was faced with a situation that had not been previously addressed, the

potentially prejudicial effect of conduct by **civilian courtroom spectators,** while the petitioner relied on cases which dealt with the potentially prejudicial conduct *of the state*. Obviously, actions by the state create a situation far different in a constitutional context than the scenario presented to the Court, where the conduct was by a civilian spectator, not a state actor. Since *Musladin*, the Supreme Court has clarified the role of federal precedent, and its impact under the AEDPA, in *Panetti v. Quarterman*, ___ U.S.___, 127 S.Ct. 2842 (2007). In *Panetti*, the Supreme Court explained,

> AEDPA does not 'require state and federal courts to wait for some nearly identical fact pattern before a legal rule must be applied.' *Carey v. Musladin*, 549 US ---,---, 127 S.CT 649, 656 (2006) (slip op., at 2)(Kennedy, J., concurring in judgment.) Nor does AEDPA prohibit a federal court from finding an application of a principle unreasonable when it involves a set of facts different from those of the case in which the principle was announced. [citation omitted] The statute recognizes that, to the contrary, even a general standard may be applied in an unreasonable manner.

*Panetti*, 127 S.Ct. 2842, 2858. Here, unlike *Musladin,* and the authorities the Court relied on in that context, the present case does not pose a completely different scenario than what the Supreme Court faced in *Hill*. *Hill* involved prison disciplinary hearings and the present case concerns prison parole hearings. Both are conducted by the state and both address how long a prisoner may be incarcerated. Because both hearings are given by the same entity within the state, the correctional division of the state's executive branch, the Ninth Circuit has repeatedly used the standard espoused in *Hill* as clearly established Supreme Court authority for the application of the "some evidence" standard in the parole context. See, *Irons II, supra, Sass, supra, McQuillion I, supra*. Thus, as explained by the Supreme Court in *Panetti, Musladin* does not prohibit the use of *Hill* as clearly established Supreme Court authority, and does result in stripping Mr. Hawks' due process rights on the theory that all he gets is to be present at his parole hearing and to be told why the Board denied parole. *Panetti*, 127 S.Ct. at 2858.

**II.**    ***BECAUSE THE BOARD'S DECISION FINDING THAT PETITIONER WAS AN UNREASONABLE RISK OF DANGER IF RELEASED ON PAROLE WAS NOT SUPPORTED BY ANY EVIDENCE, IT WAS A VIOLATION OF CLEARLY ESTABLISHED FEDERAL LAW..***

Respondent takes issue with what the appropriate focus must be when a court reviews the evidentiary sufficiency of a parole decision. (See generally, Resp.'s Answer, pp. 16-17.) This issue was succinctly described by the California Supreme Court in the case of *In re Rosenkrantz [Rosenkrantz V]*, 29 Cal.4th 616, at 658 (2002), noting,

> "[T]he judicial branch is authorized to review the factual basis of a decision of the Board denying parole in order to ensure that the decision comports with the requirements of due process of law, but ... in conducting such a review, the court may inquire only *whether some evidence in the record before the Board supports **the decision to deny parole**, based upon the factors* specified by statute and regulation." (*Rosenkrantz, supra*, 29 Cal.4th at p. 658, italics and bold added.)

It is clear from this language in *Rosenkrantz* that there must be "some evidence" in the record to support "the decision to deny parole, based upon the factors" rather than merely "some evidence" to support a particular factor, and *Rosenkrantz* repeatedly emphasized that the due process-based, some evidence standard applies to "the decision." (*Rosenkrantz*, at pp. 664 and 667.) Thus, the first question to resolve is what is the "decision to deny parole" that must be reviewed for evidentiary sufficiency?    Under *Cal. Code Regs.*, tit. 15 § 2402(a), a finding of unsuitability under the *Penal Code* § 3041(b) "public safety" exception requires a finding that the inmate currently presents an unreasonable risk of danger to society if paroled.    *See In re Scott [Scott II]*, 133 Cal.App.4th 573, 594-595 (2005).    When the Board denies parole, it specifically makes a finding under 2402(a), as it did here, that "the prisoner is not suitable for parole and would pose an unreasonable risk of danger to society or a threat to public safety if released from prison." (Resp.'s Exh. 2, the Transcript of Petitioner's 7/27/06 Parole Hearing, p. 149, lns. 14-17.)[1]    This is the decision, the determination that the inmate presents a current and unreasonable risk of danger if paroled, that must be supported by the requisite "some evidence."

Recognizing that this is the focal point of the evidentiary review, recent published opinions have clarified that the reviewing court must determine whether or not there is "some evidence" of the inmate's current dangerousness.    As one court put it, "[t]he test is not whether

---

[1] When referring to Respondent's Exhibit 2, Petitioner will utilize the actual page numbers in the transcript, rather than the pagination assigned by the Pacer system to the filed document.

some evidence supports the *reasons* the [Board] cites for denying parole, but whether some evidence indicates a parolee's release *unreasonably endangers public safety*." *In re Lee*, 143 Cal.App.4th 1400, 1408-1409 (2006), emphasis in original; see also *Sanchez v. Kane*, 444 F.Supp.2d 1049 (C.D. Cal. 2006), *Rosenkrantz v. Marshall* [hereinafter *Rosenkrantz VI*][2] 444 F.Supp.2d 1063, at 1085 (C.D. Cal. 2006), *Martin v. Marshall*, 431 F.Supp.2d 1038 (C.D. Cal. 2006), *In re Singler*, 161 Cal.App.4th 281 (2008), *In re Burdan*, 161 Cal.App.4th 14 (2008), *In re Barker*, 151 Cal.App.4th, 346, 365 (2008), and *In re Weider*, 45 Cal.App.4th 570, 589 (2006) ["the overarching consideration in the suitability determination is whether the inmate is currently a threat to public safety."]. ) Assuming for a moment that there was "some evidence" in the record to validly support the Board's citation of the §2402(c) factors, respondent has *still* failed to address the final and most important issue before it: is there any evidence in the record to support the Board's conclusion that Mr. Hawks is *currently a danger to society?* As explained in Mr. Hawks's petition, there is no evidence that he is currently dangerous, and his more than two-decade old crime, standing alone, simply cannot overcome the uncontradicted proof of full and complete rehabilitation.

> ### A. THERE IS NO EVIDENCE IN THE RECORD THAT MR. HAWKS' COMMITMENT OFFENSE IS ESPECIALLY HEINOUS, ATROCIOUS OR CRUEL WITHIN THE MEANING OF CAL. CODE REGS. TIT. 15 § 2402(C)(1).

While Respondent attempts to denigrate Petitioner's reference to state law to provide the Court with the rules governing the applicability of the regulatory factors to parole hearings (Resp.'s Answer, p. 16, lns. 19-26), it is axiomatic that the factors of suitability, and the rules of how they are interpreted, must come from state law. See *e.g., Sass*, 461 F.3d at 1135 (Reinhardt, J., dissenting) ["When we assess whether a state parole board's suitability determination is supported by 'some evidence' in a habeas case, our analysis is framed by state law."] In this case, California courts' treatment of similar cases is crucial in determining if the Board is correctly applying the regulatory factors to Mr. Hawks. If they were not, it cannot be said that

---

[2] The *Rosenkrantz* case has now resulted in six decisions. *People v. Rosenkrantz* (1988) 198 Cal.App.3d 1187 (*Rosenkrantz I*) *In re* Rosenkrantz (2000) 80 Cal.App.4th 409, (*Rosenkrantz II*) *Davis v. Superior Court* [*Rosenkrantz*] (Feb. 22, 2001, B146421) [non pub. opn.] (*Rosenkrantz III*) *In re Rosenkrantz* (2002) formerly published at 95 Cal.App.4th 358 (*Rosenkrantz IV*), *In re Rosenkrantz*, (2002) 29 Cal.4th 616 (*Rosenkrantz V*), and *Rosenkrantz v. Marshall* (C.D.Cal. 2006) 444 F.Supp.2d 1063 (*Rosenkrantz VI*).

there was "some evidence" to support their decision – a violation of Mr. Hawks's due process rights.

### 1. THE COMMITMENT OFFENSE WAS NOT COMMITTED WITH AN "EXCEPTIONALLY CALLOUS DISREGARD FOR HUMAN SUFFERING."

Mr. Hawks is not asking that the Court "re-weigh the evidence presented to the Board" (Resp.'s Anwer, p.13, lns. 4-5), but instead inviting the Court to properly examine the record before the Board to determine if Mr. Hawks' crime actually fits into the subcategories of §2402(c)(1), and if so, evaluate whether those facts establish that he remains currently dangerous. Given the Board's *proven*[3] arbitrary use of the §2402(c) factors, it is necessary for courts to closely review the Board's findings under this category to ensure that the Board's decision is in fact tailored to the specific case before it and not a simple recitation of factors that it consistently and arbitrarily applies to inmates that come before it.

California case law states that the Board must weigh the inmate's criminal conduct not against ordinary social norms, *but against other instances of the same crime or crimes* (*In re Lee, supra,* 143 Cal.App.4th at 1408-1409, *In re Ramirez,* 94 Cal.App.4th 549, 570 (2001)), and that the primary issue in evaluating the commitment offense is its value in predicting whether or not the inmate is currently dangerous. *In re Gray,* 151 Cal.App.4th 379, 410 (2007) [noting that the overarching consideration in the suitability determination is whether the inmate is currently a threat to public safety]. Measured against this standard, Mr. Hawks offense cannot be said to be particularly egregious. In fact, in Mr. Hawks' prior habeas proceedings, this Court found that the evidence did not support the Board's finding that Mr. Hawks's crime was committed with an "exceptionally callous disregard for human suffering." (*Hawks v. Hamlet,* No. 04-01822, Order Denying Petition for Writ of Habeas Corpus, p. 16-17; *Hawks v. Kane,* et al. C-05-2853, Docket No. 32, Order Denying Petition For Habeas Corpus, p. 16.) The commitment offense simply cannot fit into the §2402(c)(1) categories as being "particularly egregious." Mr. Hawks had absolutely *no intent to kill* and the crime does not stand out in terms of violence or viciousness. By firing one shot in anger at the van during a heated freeway dispute, Mr. Hawks did not demonstrate a callous disregard for human suffering, as he did not torture or torment the victim,

---

[3] *See* §IV *infra;* Exhibit Trav-A, *In Re Arthur Criscione,* No. 71614 (Santa Clara County Superior Court, 2007).

and did nothing intentional to prolong the victim's ordeal, or to cause untoward suffering beyond the act of killing. See *e.g.*, *In re Ernest Smith*, 114 Cal.App.4[th] 343, at 367 (2003) [distinguishing a callous murder from one that is "exceptionally" cruel or callous, because there was no evidence that Smith acted with cold, calculated, dispassion[4] or that he tormented, terrorized, or injured the victim or that he gratuitously increased or unnecessarily prolonged her pain and suffering].

The facts were clear that Mr. Hawks acted out of extreme stress, due to the circumstances involved in the incident, getting run off the road, his son being partially ejected from his seat, his emotional condition from the prior argument with his estranged wife and the effects of alcohol on his thinking and judgment. When his actions are put in perspective with respect to other cases of second-degree murder, the crime does not stand out in terms of violence or viciousness. Mr. Hawks did not plan the murder, and there was absolutely no evidence of premeditation or deliberation, and express intent to kill was directly rejected by the jury, who acquitted Mr. Hawks of the attempted murder charges, all of which were based on the same single shot that established the implied malice murder.[5] In fact, despite Respondent's attempt to excuse the Board's practice of elevating Mr. Hawks' crime from second to first-degree murder (Answer pp. 15-16), two recent district court cases have specifically chastised the Governor when he tried to do the exact same thing. In *Blankenship v. Kane*, _____F.Supp._____[2007 WL 1113798] (2007 N.D. Cal), the court noted,

> In stating that the crime was premeditated, the Governor appeared to be addressing the standard set forth in *In re Rosenkrantz*, 29 Cal.4th at 658, 683, that when the Board finds parole unsuitable based solely on the facts of the commitment offense, it must cite some evidence of factors beyond the minimum elements of the offense. However, the Governor's characterization of Petitioners' actions as premeditated is incorrect because the trial court found that the offense was murder in the second degree.

---

[4] Although the Board did not make a finding of "dispassionate and calculated" this time, as the Court will recall, that finding was relied on in the 2003 hearing, but was found to be unsupported by any evidence in the record. *Hawks v. Kane*, et al. C-05-2853, Docket No. 32, Order Denying Petition For Habeas Corpus, p. 16.

[5] Mr. Hawks was acquitted of every charge where the element of express malice, i.e., intent to kill, was required to be proven. This included the charge of first-degree murder as to the primary victim and the attempted murder charges as to the other passengers in the van. By using the facts of the single shot to both acquit of attempted murder, and to convict of assault with a firearm, clearly shows that that the jury had determined that intent to kill was non-existent, as that is the only distinguishing element of those two crimes under the facts of this case.

*Blankenship*, 2007 WL1113798, at *7.  Because the Board and the Governor rarely change tactics, the district court was confronted with a similar situation in *Thomas v. Brown*, ___F.Supp.___ [2006 WL3783555], at *7, the court stated,

> Although there was evidence of premeditation as the Governor mentioned, the jury had convicted Thomas of second-degree murder and not first-degree murder. Additionally, Thomas' actions in returning to kill the victim after the initial argument ended is the kind of immutable event that *Biggs* cautioned against relying on in perpetuity to deny parole for present dangerousness.  Thomas' exemplary behavior in prison plus his efforts to work on anger management plus his favorable psychological reports reduce the predictive value of this fact 20 years after the killing.

These same points are just as applicable here.  Thus, the finding by the Board that the crime was committed with an exceptionally callous disregard for human suffering is not only contrary to this Court's orders in the prior litigation, they are not supported by any evidence and were not appropriately relied upon by the Board.

### 2.  THE BOARD'S CLAIM THAT THE MOTIVE WAS "INEXPLICABLE" WAS NOT A VALID BASIS FOR THE DENIAL OF PAROLE.

Here, a sharp distinction needs to be drawn between finding that the motive is "trivial" or that it is "inexplicable."  At the hearing, the Board expressly found that the motive was "inexplicable" and **did not conclude that the motive was trivial**. (Resp.'s Exh. 2, p. 149, lns. 25-26.)  Respondent attempts to "blend" these very different concepts in its effort to justify the Board's decision, even going so far as to refer to "the Board's **finding regarding the trivial motive**." (Resp.'s Answer, p. 15, lns. 13-19, emphasis added.)  However, the record does not bear this out, as the Board's actual finding was that "the motive for the crime is inexplicable in relation to the offense." (Resp.'s Exh. 2, p. 149, lns. 25-26.)  Of course, by the Board's own subsequent statements, this finding is also unsupported by any evidence.  Immediately after stating that the motive was inexplicable, the Board went on to describe exactly what that motive was, stating,

> "he became involved in what would be described today as a road rage incident. He was already angry when he chose to drive after drinking. Rather than

9

> disengage[6] from the incident, he chose to retrieve a shotgun from a bag. He loaded the shotgun with a slug, pointed the shotgun at the van and fired."

(Id. p. 150, lns. 2-9.)  As explained in *Scott I*, a motive that is trivial can be explained, while an inexplicable motive cannot.  Thus, the motive cannot be both trivial and inexplicable.  As noted by the court in *Scott I,* 119 Cal.App.4th at pp. 892-893:

> An "inexplicable" motive, as we understand it, is one that is unexplained...[a] person whose motive for a criminal act cannot be explained or is unintelligible is therefore usually unpredictable and dangerous'. (Citations omitted.)

Here, the motive for the commitment offense is readily explainable, which the Board itself did, acknowledging that it was based on anger over the roadway incident where the other driver had cut him off, thrown a bottle at the car, and driven so erratically as to endanger both Mr. Hawks and his son.[7]  The simple fact that the Board was able to articulate the motive negates entirely the finding that it was "inexplicable" within the meaning of the regulations.  Since the Board did not rely on a claim that the motive was trivial, attempting to justify the finding on that ground is not appropriate.  Furthermore, there simply was no evidence in the record before the Board to support a conclusion that Mr. Hawks' motive to commit the offense was more trivial than in the overwhelming majority of other cases where anger is a motive for murder.  As such, the determination that Mr. Hawks' motive renders him unsuitable for parole, was not "some evidence" of his unsuitability of parole.

### 3.  THE FACT THAT MULTIPLE VICTIMS WERE INJURED IN THIS CASE IS NOT A VALID BASIS FOR DENYING PAROLE.

The final crime based finding that the Board made is that multiple victims were "injured," attempting to fit Mr. Hawks' crime into the unsuitability factor listed in *Cal. Code Regs. tit.* 15 § 2402(c)(1)(A), which requires that the multiple victims be "attacked, injured or killed."  While common sense would by itself dictate that this requires more than just the happenstance of an unintended second victim, as those circumstances would not tend to show an

---

[6]  The alleged failure to "disengage" adds nothing to the analysis, as every murder involves a failure of the killer to stop the commission of the crime.  See *e.g., Elkins, supra,* 144 Cal.App.4th at 517-518, rejecting a similar argument by the Governor.

[7]  A motive being trivial means more than that it does not justify or explain the defendant's conduct.  It must be trivial compared to what normally drives a person to commit a murder.  As noted in *Scott I*, anger is a commonplace motive.  *See also, Ernest Smith,* 114 Cal.App.4th at 366-367.

elevated degree of dangerousness of the inmate, the case law interpreting this provision settles that point. Thus, the Board's reliance on this factor is an unreasonable application of the facts of this case. In *Weider*, 145 Cal.App.4th at 588, the Court rejected the Board's reliance on the "multiple victims" factor where the second injury was unintended. In *Weider*, the petitioner walked into a bar with a loaded gun and after a struggle for the gun, Weider shot his ex-wife's current partner, inadvertently striking two other patrons of the bar. In response to the Board's citation of § 2402(c)(1)(A) as a basis for the denial of parole, the court reasoned,

> Petitioner points out that there is also evidence that multiple victims were injured. True, but again, the question is whether that evidence supports a finding that the crime was more violent or vicious than minimally required suggesting that Weider would be a public safety risk if released. The existence of multiple victims in this case is the inadvertent result of Weider's perpetrating the crime in a restaurant during business hours… But this does not make the murder of [the victim] so excessively violent or vicious that it suggests Weider remains a public safety risk.

*Id.* at 589 (internal citations omitted); *see also Martin v. Marshall*, 431 F.Supp.2d 1038 (N.D. Cal. 2006) [unintended 2nd victim killed and 3rd injured during a shooting in a restaurant], and *Lee, supra,* 143 Cal. App.4th at 1412-1413 [Victim's wife as unintended second victim]. Here, Mr. Hawks did not intend to shoot anyone, let alone kill someone. Only one shot was fired, and the second victim just happened to be sitting in a location that led to her being struck by the slug when it exited the first victim.

Thus, more was required than simply the rote findings that there was more than one person struck by the slug. Despite the immutable fact that there were (and always will be) "multiple victims" in this case, the Board should have explained how this fact could lead to the conclusion that Mr. Hawks currently presents a public safety risk. They did not do so because the record is devoid of any facts that would suggest that Mr. Hawks is currently dangerous. To the contrary, his lengthy history of outstanding programming, twenty two years of disciplinary free behavior, strong self help, vocational, educational, volunteer and work achievements, excellent psychological reports, and the strong support of not just family and friends, but the correctional staff as well, conclusively establishes the exact opposite conclusion.

11

**B.    THE OPPOSITION OF THE VICTIM'S FAMILY AND
THE DISTRICT ATTORNEY WAS BASED SOLELY
ON THE COMMITMENT OFFENSE AND THUS NO
LONGER JUSTIFIES A DENIAL OF PAROLE.**

When reviewing the Board's 2002 denial of parole in the prior litigation, this Court stated the following:

> To the extent that victims' next of kin and the District Attorney's opposition is based solely on the nature of Hawks' offense, which will never change, the Board's continuing reliance on that opposition to deny Hawks' parole may pose the same problems continued reliance on the nature of the offense does, and that factor will cease to lack any predictive value with respect to Hawks' future criminality. *See, e.g. Irons,* 358 F.Supp.2d at 947, n.2.

(*Hawks v. Kane*, et al. C-05-2853, Docket No. 32, Order Denying Petition For Habeas Corpus, p. 22, n. 5.) Then, again, when reviewing Mr. Hawks' 2003 denial of parole, this Court again reiterated,

> "At some point, the facts of Hawks' commitment offense and opposition from others may not have predictive value in determining whether Hawks currently is a threat to the public and unsuitable for parole." (CD, 32 p. 22.)

These conclusions highlight the fact that the opposition is based entirely on the circumstances of Mr. Hawks' offense. However, an even closer analysis is warranted, as the Board in this case did not actually rely on the victim or DA opposition to support a finding of unsuitability. Instead, the merely stated that they had "note[d] that with regard to the 3042 notices, the District Attorney from Riverside County is here...and does oppose parole." (Resp.'s Exh. 2, p.150-151.) Even if the Board had relied on the opposition, it would add nothing to the issue of whether the decision is factually supported.

Nowhere in the regulations is the Board permitted to base a *finding* of unsuitability on the existence of public opposition to parole. Although *Penal Code* §3043 permits consideration of the opposition from the victim's family, those statements do not provide "evidence" of unsuitability. The statements given by the victim's families are not given under oath and therefore do not qualify as evidence, and thus, cannot reliably establish current dangerousness. The Board is required to consider those statements, but those statements are relevant to show circumstances such as whether the victim's family opposes the inmate living in their county or to show the effect of the crime. However, referring to the nature of the crime and how the twenty

two (22) year old offense had previously affected the family, again relies on immutable facts, and does not provide any evidence regarding the inmate's current dangerousness to society.

Similarly, *Penal Code* §3042(a) merely requires that notice be given to the District Attorney about the hearing. It does not elevate the District Attorney's opinion into evidence of unsuitability, as any statement given by the District Attorney is not made under oath and is not evidence of any sort. The Board did not give any explanation as to how the District Attorney's opposition provides evidence of Mr. Hawks's current dangerousness. Again, the District Attorney's opposition is in relation to the nature of the offense, and as such, reliance is on the commitment offense, not any separate evidence, to support the denial. The only factor to be considered at the hearing is whether Mr. Hawks is currently an unreasonable danger to society. Furthermore, permission from either the District Attorney or victim next of kin is not a prerequisite to the Board granting parole. Accordingly, opposition by both the District Attorney and the next of kin does not provide any evidence that Mr. Hawks is a current and unreasonable danger to society, and cannot supply an independent basis for the denial.

Furthermore, in *Weider*, the court specifically addressed this issue. (*Weider, supra*, at p. 590.) It noted that the court is bound to consider such opposition (*Cal. Pen. Code* §§ 3042, 3043), however, the court concluded "the opposition cannot add weight where there is no evidence of unsuitability to place in the balance." (*Id.*) Thus, because the record provided no evidence of unsuitability, the opposition by the District Attorney and the victim's next of kin add no weight to the equation. (*Id.*) Likewise, in the present case, the opposition given by the District Attorney and the victim's next of kin cannot provide any weight to justify the Board's decision, because no evidence exists to support the conclusion that Mr. Hawks is a current and unreasonable danger to society.

### III. CONTINUAL RELIANCE ON IMMUTABLE FACTORS AS A BASIS FOR THE DENIAL OF PAROLE RESULTED IN A VIOLATION OF MR. HAWKS'S DUE PROCESS RIGHTS.

In this case, reliance on immutable factors to deny Mr. Hawks parole *after* he served over his minimum term in prison, had absolutely no disciplinary violations, was sober for over twenty two (22) years and has a file replete with evidence of rehabilitation, violated Mr. Hawks's due process rights. The state courts' failure to grant Mr. Hawks relief based on this violation was simply unreasonable.

### A.    THE BOARD'S RELIANCE ON IMMUTABLE FACTORS OF THE COMMITMENT OFFENSE WAS A VIOLATION OF THE RULE SET FORTH IN IRONS.

In *Biggs*, the 9th Circuit explained that, "continued reliance in the future on an unchanging factor, the circumstances of the offense and conduct prior to imprisonment, runs contrary to the rehabilitative goals espoused by the prison system and could result in a due process violation." *Biggs,* 334 F.3d at 916-917.    In *Sass,* the Court reaffirmed *Biggs* as the law of this circuit and again noted, "continued reliance … [on] the offense and on conduct prior to imprisonment … could result in a due process violation." *Sass,* 461 F.3d at 1129.  Finally, in *Irons II,* the 9th Circiot stated,

> We note that in all the cases in which we have held that a parole board's decision to deem a prisoner unsuitable for parole based solely on the basis of his commitment offense comports with due process, the decision was made before the inmate had served the minimum number of years required by his sentence.  Specifically in *Biggs, Sass,* and here, the petitioners had not served the minimum number of years to which they had been sentenced at the time of the challenged parole denial by the Board. [citations omitted]  All we held in those cases, and all we hold today, therefore is that given the particular circumstances of the offenses in these cases, due process was not violated when these prisoners were deemed unsuitable for parole prior to the expiration of their minimum terms.

*Irons II,* 505 F.3d at 853-54.  Respondent terms the 9th Circuit's warnings in *Biggs, Sass* and *Irons* as "dicta," implying these statements are not legally persuasive. (Resp.'s Answer, p. 20.)  However, as pointed out by Justice Kleinfeld in his dissent from the rehearing of *Irons* en banc,

> Our en banc decision in *Barapind v. Enomoto* says that an issue presented for review and addressed and decided in a panel opinion "became law of the circuit, regardless of whether it was in some technical sense 'necessary' to our disposition of the case"… thus under *Barapind,* the statements of law made in *Irons* that were unnecessary to the decision may nevertheless be construed by subsequent three judge panels, district courts and the state courts as binding law of the circuit.

*Irons v. Carey [Irons III],* 505 F. 3d 951, 952 (9th Cir. 2007) Order Denying Petition for Rehearing En Banc, citing *Barapind v. Enomoto,* 400 F. 3d 744, 751 fn. 8 (9th Cir. 2005).  Therefore, under *Barapind,* this Court's guidance in *Biggs, Sass* and *Irons,* is **binding** on the district and state courts of this circuit.

In this case, Mr. Hawks's denial of parole was a violation of due process because the Board continues to deny Mr. Hawks parole on the basis of his commitment offense even after he

reached his minimum sentence.   It is understandable that this Court highlighted the fact that a due process violation could occur after an inmate reaches his true minimum sentence date because once an inmate has served his *true* minimum term, he has already spent more time in prison than is required under California law.   For instance, Mr. Hawks's *minimum parole eligibility date* was November 28, 1998, at which point he would have served eleven (11) actual years in custody.   By the time he served his true minimum sentence of seventeen (17) years in 2003, he was already five (5) years and four suitability hearings past his actual minimum eligible release date.   At the time of Mr. Hawks's 2006 suitability hearing, with all applicable credits, he had served nearly six (6) years past the *high-end matrix* for second degree murders.   He has now been in custody for twenty-two (22) years, has been denied parole six (6) times as of the 2006 hearing, three (3) additional times since the hearings involved in the prior litigation, and always based solely on the immutable factors of his commitment offense. He is now more than two thirds of the way through the matrix for those convicted of first-degree, premeditated murder.

Although this Court, "will not speculate as to how future parole hearings could proceed" (*Sass,* 461 F.3d at 1129), there is no need to speculate in Mr. Hawks' case.  The Board has, and will continue, to deny Mr. Hawks parole based solely on immutable factors.  Although the Board cites all the laudable achievements Mr. Hawks has accumulated over his twenty-two (22) years of incarceration, the Board seems to give no weight to this evidence when it reaches its conclusion, year after year, that Mr. Hawks is not suitable for parole.  Thus, based on the legal precedent in *Biggs, Sass* and *Irons II,* Mr. Hawks's due process has been violated.

## B.  *RELIANCE ON IMMUTABLE FACTORS ARE NOT PREDICTIVE OF MR. HAWKS'S SUITABILITY FOR PAROLE.*

The exclusive purpose of a parole hearing is to determine whether the inmate is suitable for parole, that is, whether he poses a current and unreasonable risk of danger to society.  *Cal. Code Regs.*, tit. 15 § 2402(a); *Scott II,* 133 Cal.App.4th at 594-595.  The Board *must* establish that the inmate currently presents an unreasonable risk of danger to society if released on parole.  *Id.; Cal. Code Regs.*, tit. 151, §2402(a).  Furthermore, the evidence *must* establish unsuitability under the criteria enumerated in *Penal Code* §3041 and *Cal. Code Regs.*, tit. 15, §2402(c), and continued reliance on the commitment offense as a factor in denying parole, when the evidence of rehabilitation is overwhelming, will violate due process.

For instance, in *Martin, supra*, 431 F.Supp.2d, 1038, a double murder, the court was evaluating the constitutionality of the Governor's reversal of the Board's decision to grant Martin parole. *Id.* at 1041. Martin was imprisoned because he shot the victim, Acosta, killed a bystander and wounded another, was sentenced to fifteen-years to life plus a five (5) year enhancement, and was denied parole five times. *Id.* at 1040. Despite Martin having received twenty (20) prison disciplinary violations, the Board found Martin suitable for parole based on his lack of a violent criminal history, the fact that he showed signs of remorse, his positive psychological evaluations and his accomplishments in prison. *Id.* at 1041. The Governor disagreed with the Board and reversed Martin's parole by relying primarily on the facts of his commitment offense. *Id.* at 1041-42. The court noted that, "[b]ecause petitioner cannot change the past, denying petitioner parole based only on the facts surrounding the crime itself effectively changes his sentence from [fifteen] years to life into a life imprisonment without the possibility of parole." *Id.* at 1046. Relying on *Biggs*, the court found no evidence to support the non-offense related factors and held that relying on the unchanging facts of the commitment offense in denying him parole was a violation of due process. *Martin*, 431 F.Supp. 2d at 1046 -1047. See also, *Sanchez v. Kane*, 444 F.Supp.2d 1049, 1062 (C.D. Cal. 2006) [continued reliance on the commitment offense factors was found to violate the inmate's due process rights after just three (3) prior parole hearings and fourteen (14) years, as it ignored the fact that he continued to "demonstrate exemplary behavior and evidence of rehabilitation." (citations omitted.).]

As the court in the case of *In re Singler*, 161 Cal.App.4th 281 (2008) recently explained "the [California] Supreme Court has endorsed … Court of Appeal decisions that give courts greater leeway in reviewing the Board's determination that an inmate remains a danger to public safety." (*Singler*, 161 Cal.App.4th at 287.) The analysis in *Singler* is instructive. There, the Court of Appeal had summarily denied habeas relief after reviewing the record before the Board. *Singler*, 161 Cal.App.4th at 286-287. However, the California Supreme Court granted the petition for review and transferred the matter back to the appellate court with "directions to vacate [their] denial of the petition and to order the Board to show cause why it did not 'abuse its discretion and violate due process in finding [the] petitioner unsuitable for parole….'" *Id.* In doing so, the California Supreme Court directly cited to the pages of appellate court decisions which addressed the diminishing value of the commitment offense to show current dangerousness. *Singler*, 161 Cal. App. 4th, at 286-287, *citing Scott II*, 133 Cal.App.4th at 594-

16

595 *Lee, supra,* and *Elkins, supra.*    In light of the California Supreme Court's implicit direction, the Court of Appeal concluded that the following analysis applies to review of the Board's decision based on the commitment offense:

> As we now understand the test apparently embraced by the California Supreme Court, a court may overturn the Board's denial of parole based solely on the nature of the commitment offense if (1) a significant period of time has passed since the crime, (2) there is uncontroverted evidence of the inmate's rehabilitation, and (3) the crime was not committed in such an especially heinous, atrocious, or cruel manner so as to undermine the evidence that the inmate's rehabilitative efforts demonstrate he no longer would be a danger to society if released on parole.

*Singler,* 161 Cal. App. 4th at 301.  In *Scott II,* the First District announced the rule that the focal issue is current dangerousness, and with the passage of time, the probative value of the crime based evidence declines until it can no longer show the inmate remains a danger to society.  *Scott II, supra,* 133 Cal.App.4[th] at 594-595.  As that court put it, the "circumstances of the crime reliably established by evidence in the record [must] rationally indicate that the offender will present an unreasonable public safety risk if released from prison." *Id.* at 595.  Since then, this trend has been unanimously supported by the currently published case law, as cited above, including *Barker, Burdan, Gray, Elkins, Lee, Weider, Martin, Sanchez, Rosenkrantz VI, Thomas, Brown,* and *Blankenship*

Mr. Hawks is unquestionably more deserving of parole than virtually any of the inmates who come before the Board.  Mr. Hawks was a completely different person at the time of the commitment offense in comparison with who he is today.  The factors which led to Mr. Hawks's actions that day are absent from his life now, namely the excessive consumption of alcohol and the extreme stress he was under due to his strained relationship with his ex-wife.[8]  At the time of the 2006 hearing, as well as throughout his incarceration, the evidence before the Board proved that Mr. Hawks no longer had any alcohol problems, despite the ready availability of alcohol and drugs in the prison setting.  Mr. Hawks had been a constant participant AA since 1990, when his custody level first permitted that programming, and has been sober for twenty two (22) years.

Also, while there is no disputing the fact that the actual victims of the crime were innocent parties, and while not justifying Mr. Hawks actions in any way, the driver of the van,

---

[8]  Since the time of the crime, his ex-wife, also an alcoholic, herself became sober, and now is among Mr. Hawks' strongest supporters.

Mr. Dwyer, is hardly without blame. As was noted at the hearing, one of the victims, Ms. Varga, sued Mr. Dwyer because he intentionally cut in front of Mr. Hawks's vehicle in a manner that affected the course of Mr. Hawks's vehicle, he threw a metal object at Mr. Hawks's vehicle "with malicious intent to do great bodily injury" and he flashed his high-beams at Mr. Hawks and followed Petitioner's car in an extremely unsafe manner. Mr. Hawks actions that night resulted from a culmination of factors, his alcohol abuse, the emotionally charged argument with his estranged wife, and the actions of Mr. Dwyer. Mr. Hawks has spent every moment of the twenty-two (22) years that he has been incarcerated turning himself into an entirely different person. He no longer has a problem with alcohol, is highly educated and has undergone every available self-help program in the institution, all of which ensure that he will never be in a situation like the one he was in that night.

Mr. Hawks presents absolutely no danger to society and the circumstances of the commitment offense do not suggest otherwise. As is clear from the history of repeated denials, without this Court's intervention the Board *will* indefinitely continue to deny Mr. Hawks parole.

### IV.    THE BOARD'S RULING RELIES UPON UNCONSTITUTIONALLY VAGUE LANGUAGE, CONTRARY TO CLEARLY ESTABLISHED SUPREME COURT LAW, THAT IS APPLIED IN AN UNCONSTITUTIONALLY VAGUE MANNER.

In evaluating an inmate's suitability for parole, the Board is only permitted to come to a finding of unsuitability if the inmate currently presents an unreasonable risk of danger to society if paroled. *Cal. Code Regs.*, tit. 15, §2402(a); *In re Scott [Scott II]* (2005) 133 Cal.App.4[th] 573, at 594-595. The regulations only permit such a finding to be based on the crime if the offense is "especially heinous, atrocious or cruel." *Cal. Code Regs.*, tit. 15, §2402(c)(1). That term is further defined by the regulatory criteria as applying only when the murder is of a particularly egregious type, fitting defining principles set out in the regulations. (Cal. Code Regs. tit. 15 §2402(c)(1)(a)-(e). As will be discussed, these criteria are overly vague, leaving inmates unable to determine if the criteria should properly apply to their particular offense. Furthermore, as has been recently found by a Superior Court in Santa Clara County, the Board's application of the factors set forth in *Cal. Code Regs. tit.* 15 § 2402(c)(1) is unconstitutionally vague.

### A. THE BOARD'S RULING RELIED UPON LANGUAGE THAT WAS UNCONSTITUTIONALLY VAGUE.

Although Respondent alleges to the contrary, the use of the phrase "especially heinous, atrocious, or cruel" is unconstitutionally vague. *See Maynard v. Cartwright*, 486 U.S. 356, 363 (1988) and *Godfrey v. Georgia*, 442 U.S. 420 (1980). While it is true that the phrase "especially heinous, atrocious, or cruel" is qualified by the defining factors listed in *Cal. Code Regs.*, tit. 15 § 2402(c)(1), because the Board has always viewed those factors as non-exhaustive, they are of little guidance in interpreting the breadth of the phrase. Since the Board considers itself unrestricted by the qualifying regulatory factors, any reason can be cited for claiming the offense was "especially heinous, atrocious, or cruel," in which case, the purpose of listing factors to explain the otherwise unconstitutionally vague phrase would be defeated.

Furthermore, none of the five listed factors provide any assistance with regard to the arbitrary use of the phrases at issue because the Board regularly misapplies all of these factors. For example, the courts have attempted to give the "callousness" criteria some meaning, through decisions such as *Ernest Smith*, which analyzed the extent that the inmate induced terror before the killing, caused untoward suffering, or unnecessarily prolonged the ordeal. Here, the Board cited the factor of callousness, but as previously discussed, failed to explain how the alleged callousness shows Mr. Hawks to be currently dangerous, particularly when the actual facts of the commitment offense are compared to the elements of other second-degree murders.

Likewise, the "multiple victim" criteria has been regularly interpreted to exclude unintended second victims. See *e.g.*, *Weider*, 145 Cal.App.4th at 588 [rejecting the Board's reliance on the "multiple victims" factor where the second injury was unintended], *Martin v. Marshall*, 431 F.Supp.2d 1038 (N.D. Cal. 2006) [unintended 2nd victim killed and 3rd injured during a shooting in a restaurant], and *Lee, supra,* 143 Cal. App.4th at 1412-1413 [Victim's wife as unintended second victim]. However, as those cases demonstrated, like they did here, the Board simply ignores this limitation on the governing criteria, and applies it even where it clearly does not apply.

This is also true regarding the criterion of an "inexplicable" or "trivial motive" which the Board and Governor routinely improperly use, such as by calling a motive both "inexplicable" and "trivial" despite those being mutually exclusive terms, or as here, saying the motive is inexplicable and then immediately thereafter describing exactly what that motive is. *See Scott I,*

119 Cal. App. 4th at 890-892. Thus, the Board not only failed to properly employ the criteria in the present case, their historical use of those terms to cover any murder highlights the arbitrary and capricious nature of any decision relying on those regulatory criteria.

### B.    THE  BOARD  HAS  ARBITRARILY  APPLIED  THE SUITABILITY FACTORS OF §2402(C).

On August 30, 2007, Santa Clara County Superior Court, the Honorable Linda Condron presiding, issued a scathing opinion criticizing the Board's arbitrary use of the § 2402(c) factors. (*In re Criscione*, No.71614 (Santa Clara Co. Sup. Ct. 2007), Exh. Trav-A.)[9]  The court stated,

> Where, as here, the question is whether determinations are being made in a manner that is arbitrary and capricious, judicial oversight "must be extensive enough to protect limited right of parole applicants 'to be free from an arbitrary parole decision … and to something more than mere pro-forma consideration.'" (*In re Ramirez* (2001) 94 Cal.App.4th 549 at p. 564, quoting *In re Sturm* (1974) 11 Cal.3d 258 at p. 258.)

Therefore, the court went on to examine the petitioner's "as applied" void for vagueness challenge.  The court allowed an evidentiary hearing and extensive discovery[10] that consisted of a "comprehensive compilation and examination of Board decisions in a statistically significant number of cases;" with over two-thousand cases reviewed. (Exh. Trav-A, p. 7.)  The court was reviewing these cases to determine how many inmates had been denied parole based wholly or partially on § 2401(c)(1)'s "especially heinous, atrocious or cruel" language.  (*Id.*)  The final result was that in 100 percent of the cases examined the Board had at some point relied on §2401(c)(1) as a basis for denial. Thus, the court stated,

> This evidence conclusively demonstrates that the Board completely disregards the detailed standards and criteria of § 2402(c) ….By simple definition, the term "especially" as contained in section 2402(c)(1) cannot possibly apply in 100% of cases, yet that is precisely how it has been applied by the Board.

---

[9]    *Criscione* is one of three cases consolidated for the purpose of conducting an evidentiary hearing.  See the consolidated cases of *In re Jamieson* Case #71194 (6th DCA Case #H032047), *In re Ngo* Case #127611 (6th DCA Case #H032046)and *In re Criscione* Case #71614 (6th DCA Case #H032048).  Because the final orders are nearly identical, only *Criscione* is attached.

[10]    The discovery orders were issued in five cases which were pending before the court all involving life-term inmates.

(Exh. Trav-A, p. 12.) The court noted that the Board's determinations are not "made on the basis of detailed guidelines and individualized consideration, but rather through the use of all encompassing catch phrases gleaned from the regulations." (*Id.* at 13.) "What this reduces to is nothing less than a denial of parole for the very reason the inmates are present before the Board – i.e. they committed murder.... When every single life crime that the Board examines is 'particularly egregious' ... it is obvious that the Board is operating without any limits and unfettered discretion." (*Id.* at 14, 15.)

The court also cited *Ernest Smith,* 114 Cal.App. 4th 343, 369 (2003), wherein the appellate court stated that when the "record provides no reasonable grounds to reject, or even challenge, the findings and conclusions of the psychologist and counselor concerning [the inmate's] dangerousness" the Board may not do so. (Exh. Trav-A, p. 15.) Yet, that is precisely what the Board routinely does, rejecting favorable psychological reports in order to rely exclusively on the crime. This reasoning is particularly applicable here, where *no one,* including the Board, has challenged Mr. Hawks's psychological reports, which have always been favorable, yet the crime is used time and again to justify the denial of parole. The Board's decision in Mr. Hawks's case is just another example of the Board's complete failure to properly discharge their duties by examining the facts of the commitment offense to determine if the crime is truly particularly egregious in a way that rationally shows current dangerousness so as to justify denial under § 2402(c)(1). As the court in *Criscione* stated,

> When an inmate, although only convicted of a second degree murder, has been incarcerated for such time that, with custody credits, he would have reached his MEPD if he had been convicted of a first, the Board *must point to evidence* that his crime was aggravated or exceptional even for a first degree murder if they are going to use the crime as a basis for denying parole. (*In re Weider* (2006) 145 Cal.App.4th 570, 582-583.)

(Exh, Trav-A, p. 15.) Here, Mr. Hawks reached his actual MEPD in November of 1998 nearly ten (10) years ago, and would have passed a first-degree MEPD in late 2003 or early 2004. Thus the Board had a *duty* to provide Mr. Hawks and the reviewing courts some evidence that his crime was so egregious that not only could it be considered particularly egregious in comparison to other second-degree murders, but is particularly egregious in comparison to first-degree, premeditated murders, a showing the Board did not and cannot satisfy. Thus, as the

court did in *Criscione*, this Court should find that the Board's application of the §2402(1) factors to Mr. Hawks' case was unconstitutional.

## CONCLUSION

Based on the foregoing, Petitioner respectfully requests that this Court issue a Writ of Habeas Corpus, directing that he be discharged from all custody, actual and constructive, or alternatively, order the Board of Prison Terms to conduct a new hearing and absent any new evidence to show adverse change since the 2006 hearing, to find Mr. Hawks suitable for parole and set a parole date consistent with the matrix for second degree murders. *Cal. Code Regs.*, tit.15 §2403(d).

Dated:  June 11, 2008                       Respectfully submitted,

                                            LAW OFFICES OF PICONE & DEFILIPPIS


                                            By_____/s/ Steve M. Defilippis_____
                                                STEVE M. DEFILIPPIS,
                                                Attorneys for Petitioner,
                                                HAROLD HARVEY HAWKS