**NOT FOR PUBLICATION**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HAROLD HARVEY HAWKS, | No.  C 07-00366 JSW |
| | No.  C 07-05039 JSW |
| Petitioner, | No.  C 08-04605 JSW |
| v. | **ORDER RESOLVING PETITIONS FOR WRITS OF HABEAS CORPUS** |
| BEN CURRY, | |
| Respondent. | |

**INTRODUCTION**[1]

Now before the Court for consideration are three petitions for writs of habeas corpus,
filed by Petitioner Harold H. Hawks ("Hawks"), pursuant to 28 U.S.C. § 2254.  The petitions
are now ripe for consideration on the merits.  The Court has considered the parties' papers,
including supplemental briefing on the impact of *Hayward v. Marshall*, 603 F.3d 546 (9th Cir.
2010) (*en banc*), the record in each of these cases, relevant legal authority, and, for the reasons
set forth herein, denies in part and denies as moot in part the petitions in cases 07-366 and 07-
5039, and grants the petition in case 08-4605.

**BACKGROUND**

**A.     Procedural History.**[1]

On May 4, 1987, Hawks was convicted by a jury of one count of murder in the second
degree with the use of a firearm, and on June 2, 1987, he was sentenced to an indeterminate
sentence of fifteen (15) years to life, with a two year enhancement as a result of the use of the

---

[1]     For the sake of brevity, the Court omits the procedural history relating to
Hawks' state habeas filings in each of these three cases.  It is undisputed that each of the
Petitions is timely and that Hawks has exhausted his claims for relief.

**United States District Court**

For the Northern District of California

1   firearm.  The three petitions at issue here challenge Board decisions to deny Hawks parole after

2   hearings held in 2005, 2006, and 2007, respectively.  These hearings are his fifth, sixth, and

3   seventh suitability hearings.  At each of these hearings the Board found Hawks unsuitable for

4   parole and deferred a further hearing for a period of one year.[2]

5   **B.      Factual Background.**

6          **1.       The Offense.**

7          Hawks was convicted of killing Patricia Dwyer, an off-duty police officer from the city

8   of Corona, California, and for seriously wounding her friend, Wendy Vargas.  As set forth in

9   this Court's prior orders, the facts as found by the Court of Appeals on direct review are as

10  follows:

11         On the night of August 22, 1986, the murder victim and her friend were
           riding in a van driven by the formers [*sic*] husband.  They were on their
12         way to Riverside on the 91 Freeway to take the couple's son, who had
           been injured earlier, to the hospital.  Hawks, who was upset after a
13         disagreement with his estranged wife, was driving on the same freeway
           with his two year old son when a ... "traffic dispute" arose between the
14         driver of the van and Hawks.  And the latter had become very upset when,
           as he claimed, the van cut him off, forcing him off to the median and one
15         of it's [*sic*] occupants threw an empty soda can at his car.  Hawks then
           reached into his back seat and retrieved his shotgun, which he loaded with
16         a slug and then fired once.  The slug pierced the side of the van, hit the
           victim in the chest, killing her, exiting through her body and lodging in the
17         throat of her companion.

18  *See Hawks v. Hamlet*, 2006 WL 3147693, at *1; *Hawks v. Kane*, 2006 WL 3371416, at *1.

19         **2.       Hawks' Fifth Suitability Hearing.**

20         Hawks appeared before the Board for his fifth suitability hearing on March 2, 2005.  The

21  Board reviewed the circumstances surrounding the offense and Hawks' criminal history, which

22  it noted was "negligible."  (Answer, Ex. 2 (March 2, 2005 Hearing Transcript ("3/2/05 Tr.")) at

23

24

_____

25         [2]      The undersigned previously denied two petitions filed by Hawks in which he
    challenged the California Board of Parole Hearing's (the "Board") decisions to deny him
26  parole in September 2002 and November 2003.  *See Hawks v. Hamlet*, No. 04-1822-JSW,
    2006 WL 3147693 (N.D. Cal. Nov. 1, 2006); *Hawks v. Kane*, No. 05-2853-JSW, 2006 WL
27  3371416 (N.D. Cal. Nov. 21, 2006).  The Board also denied Hawks parole at hearings held in
    2008, 2009, and 2010, although he has not yet filed federal habeas petitions challenging
28  those hearings, because they have not yet been exhausted in state court.  (*See, e.g., Hawks v.
    Kane,* No. C 07-366-JSW, Docket No. 25 (Petitioner's Supplemental Brief at 3 n.2).)

**United States District Court**
For the Northern District of California

**United States District Court**
For the Northern District of California

1   32:14-20).)[3]  The Board also covered Hawks' history with substance abuse, his parole plans and

2   the support network he has established outside of prison.  (*See, e.g., id.* at 37:1-39:26, 54:13-21,

3   59:6-23.)  The Board reviewed Hawks post-conviction history and noted that he had received

4   "one 115 and one counseling chrono since [he has] been in prison, which is remarkable," and

5   that he has received numerous positive reports from those who have worked with him while he

6   has been incarcerated.  The Board also reviewed Hawks' educational and vocational

7   achievements and his continuous participation in Alcoholics Anonymous.  (*Id.* at 41:2-52:22.)

8   The Board also reviewed Hawks' most recent psychological report, which concluded

9   that Hawks has "no greater violence potential than the average non-offender population in the

10  community," and that he was viewed as "below average for the typical parolee" in terms of risk

11  of violence.  (*Id.* at 55:2-56:9, 56:13-58:11.)  The Board noted that there were numerous letters

12  in support of Hawks as well as letters opposing Hawks' release on parole.  Hawks also

13  explained to the Board why he believed he would not commit another offense if released and

14  why he believed he was suitable for parole.  (*Id.* at 70:10-71:4, 91:7-94:15.)  The Board gave

15  the prosecuting attorney and members of the victims' family an opportunity to explain the

16  impact of the crime on their lives and their reasons for opposing parole.  (*Id.* at 75:15-90:1,

17  95:1-102:7.)

18  After it deliberated, the Board acknowledged Hawks' accomplishments during his

19  incarceration but determined that he was "not yet suitable for parole and would pose an

20  unreasonable risk of danger to society or threat to public safety if released from prison."

21  Although it cited to Hawks "unstable social history," and opposition from the victims' next of

22  kin and the prosecuting attorney,  the Board stated that its decision was based primarily on the

23  view that the commitment offense outweighed any of Hawks' post-incarceration

24  accomplishments.  (*Id.* at 103:5-109:22.)

25  //

26

27      [3]     At this hearing, the Board relied on the probation officer's report to recount
the facts underlying the offense.  (3/2/05 Tr. at 21:17-19, 22:6-9.)  The Board also considered
28  Hawks' version of events as set forth in a November 2004 report to the Board.  (*Id.* at 28:19-
21.)

3

1   //

2           **3.      Hawks' Sixth Suitability Hearing.**

3           Hawks next appeared before the Board on July 27, 2006.  Once again the Board covered

4   the nature and circumstances of the commitment offense.[4]  (*See Hawks v. Curry*, 07-5039-JSW,

5   Answer, Ex. 2 (July 27, 2006 Hearing Transcript ("7/27/06 Tr.") at 27:7-43:14).)  The Board

6   also reviewed Hawks' criminal and social history, including his history of substance abuse (*id.*

7   at 43:25-54:15), his post-conviction behavior and programming (*id.* at 54:19-63:6, 90:1-92:27),

8   his most recent psychological report (*id.* at 63:7-69:19), his parole plans and support network

9   upon release (*id.* at 70:2-87:20, 89:1-27), his insights into the commitment offense and the

10  impact on its victims, his reasons for believing he was suitable for parole, and his expectations

11  about the transition from incarceration to parole status (*id.* at 93:1-97:19, 139:15-142:12).

12          The Board also heard from the victims' relatives about the impact of the crime on their

13  lives and why they oppose release (*id.* at 142:21-148:8), from the prosecuting attorney, who

14  opposed release in part on the basis that, in her view, Hawks had not yet accepted the fact that

15  his conviction was not an "accident" (*id.* at 87:21-88:26, 109:15-121:22), and from Hawks'

16  counsel, who noted that although Hawks was prosecuted for first degree murder, he was

17  acquitted of all charges that required an intent to kill.  (*Id.* at 123:4-138:25).

18          The Board acknowledged Hawks' many accomplishments, laudatory chronos, and the

19  favorable psychological evaluation, found his parole plans to be appropriate, noted the

20  opposition to parole, and once again determined that Hawks was "not suitable for parole and

21  would pose an unreasonable risk of danger to society or a threat to public safety if released from

22  prison."  The Board stated that "[w]e come to this conclusion based on the nature and

23  circumstances of the commitment offense."  (*See id.* at 149:9-152:18)[5]

24

25          [4]     At this hearing, the Board read from the Court of Appeals decision, the
    probation officer's report, and from Hawks' version of the offense as recounted in a 2006
26  report to the Board.

27          [5]     Following the denial of parole in 2003, the Board requested a further
    psychological report to address a number of specific issues, including Hawks' insight into his
28  crime and the significance of alcohol or drug abuse as it related to the commitment offense.
    Pursuant to this directive, Dr. Sexton interviewed Hawks and determined that barring a brain

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

1                **4.      Hawks' Seventh Suitability Hearing.**

2          Hawks next appeared before the Board on June 26, 2007.  Once again the Board covered

3   the nature and circumstances of the commitment offense.[6]  (*See Hawks v. Curry*, 08-4605-JSW,

4   Petition, Ex. A (June 26, 2007 Hearing Transcript ("6/26/07 Tr.") at 20:23-25:22, 27:18-31:2).)

5   The Board also reviewed Hawks' criminal and social history, including his history of substance

6   abuse and his relationship with his family.  (*Id.* at 31:8-36:18, 46:5-59:21.)  The Board - and the

7   prosecuting attorney - also inquired into an incident that occurred in 1986 with his ex-wife, in

8   which she accused Hawks of pointing a loaded shotgun at her during an argument.  Hawks

9   explained that his ex-wife pulled a shotgun out of a cabinet, he took it from her and called the

10  police.  Hawks also explained to the Board that although he and his ex-wife had a volatile

11  relationship while they were married, they were now on good terms.  (*Id.* at 36:19-41:18, 123:3-

12  124:9.)

13         The Board then covered Hawks' post-conviction behavior and programming.  (*Id.* at

14  60:20-68:18.)  The Board also considered a psychological report dated March 16, 2007, in

15  which Dr. Marek concluded that Hawks "violence potential is about the same as the average

16  citizen; that is, quite low."  (*Id.* at 68:19-71:14; *see also* Petition, Ex. L (2007 Psychological

17  Evaluation at 3).)  The Board also reviewed Hawks' participation and involvement with

18  Alcoholics Anonymous and its impact on his life.  (6/26/07 Tr. at 71:20-79:19.)  The Board also

19  reviewed Hawks' parole plans and support network upon release and permitted the prosecuting

20  attorney to inquire into those plans.  (*Id.* at 87:8-92:22, 94:6-116:16, 117:3-123:3.)  The Board

21  also heard from the victims' relatives about the impact of the crime on their lives and why they

22  oppose release (*id.* at 159:12-162:23), from the prosecuting attorney, who opposed release on

23  the basis that, in her view, Hawks continued to minimize the severity of the crime, had not yet

24

25  injury or pre-senile dementia, further psychological reports would be redundant and of little
    clinical value.  In spite of Dr. Sexton's conclusion, the Board ordered a further psychological
26  report for use at the next suitability hearing.  (*See* Petition, Ex. G (2005 Psychological
    Evaluation at 2-3); 7/27/06 Tr. at 152:13-16.)
27

28         [6]      At this hearing, and once again over Hawks' objection, the Board recounted
    the facts of the offense from the probation officer's report and recounted Hawks' version of
    events from the 2006 report prepared for the Board.

                                              5

United States District Court

For the Northern District of California

1  accepted the fact that the commitment offense was not an "accident," and lacked insight into the

2  reasons for his actions and his alcoholism (*id.* at 138:6-145:10), and arguments from Hawks and

3  his counsel explaining why they believed release was appropriate. (*Id.* at 145:13-159:5.)

4       After it deliberated, the Board acknowledged Hawks' many accomplishments, laudatory

5  chronos and the favorable psychological evaluation, found his parole plans to be appropriate,

6  noted the opposition to parole, and once again determined that Hawks was "not suitable for

7  parole and would pose an unreasonable risk of danger to society or a threat to public safety if

8  released from prison." The Board set forth a brief summary of its view of the facts of the

9  offense and stated that it found that the commitment offense was motivated by anger and was

10 "one of extraordinary violence." The Presiding Commissioner also noted that, based on his

11 experience, he did not believe it would have been possible to fire a warning shot, as Hawks'

12 claimed to have done, and that Hawks' actions were purposeful. Finally, and most "significant"

13 to its decision, the Board stated it believed that Hawks made an effort minimize the violence

14 involved in the 1986 incident with his ex-wife and stated that it was left with "a sense of

15 avoidance of some degree with regard to [Hawks'] culpability" in both that incident and the

16 commitment offense. (*See id.* at 165:5-171:4.)

17                                    **ANALYSIS**

18 **A.     Standard of Review.**

19      This Court may entertain a petition for a writ of habeas corpus "in behalf of a person in

20 custody pursuant to the judgment of a state court only on the ground that he is in custody in

21 violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); *see*

22 *also Rose v. Hodges*, 423 U.S. 19, 21 (1971). Because the petition in this case was filed after

23 the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"),

24 AEPDA's provisions apply. *Jeffries v. Wood*, 103 F.3d 827 (9th Cir. 1996) (en banc).

25      Under AEPDA, this Court may grant the petition with respect to any claim that was

26 adjudicated on the merits in state court only if the state court's adjudication of the claim: "(1)

27 resulted in a decision that was contrary to, or involved an unreasonable application of, clearly

28 established Federal law, as determined by the Supreme Court of the United States; or (2)

1    resulted in a decision that was based on an unreasonable determination of the facts in light of

2    the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *see also Williams*

3    *(Terry) v. Taylor*, 529 U.S. 362, 413 (2000) (hereinafter "*Williams*").

4            Under the "contrary to" clause of section 2254(d)(1), a federal court may grant the writ

5    only if the state court "applies a rule that contradicts the governing law set forth in [Supreme

6    Court] cases, 'or if it confronts a set of facts that are materially indistinguishable from a

7    decision'" of the Supreme Court and nevertheless arrives at a different result." *Early v. Packer*,

8    537 U.S. 3, 8 (2002) (quoting *Williams*, 529 U.S. at 405-06).  Under the "unreasonable

9    application" clause of section 2254(d)(1), a federal court may grant the writ if the state court

10   identifies the correct governing legal principle from the Supreme Court's decisions but

11   unreasonably applies that principle to the facts of the prisoner's case. *Williams*, 529 U.S. at

12   413.    A federal habeas court "may not issue the writ simply because that court concludes in

13   its independent judgment that the relevant state-court decision applied clearly established

14   federal law erroneously or incorrectly.  Rather, that application must also be unreasonable." *Id.*

15   at 412.  The objectively unreasonable standard is not a clear error standard. *Lockyer v.*

16   *Andrade*, 538 U.S. 63, 75-76 (2003); *Clark v. Murphy*, 331 F.3d 1062, 1067-69 (9th Cir.), *cert.*

17   *denied*,  540 U.S. 968 (2003).  After *Lockyer*, "[t]he writ may not issue simply because, in our

18   determination, a state court's application of federal law was erroneous, clearly or otherwise.

19   While the 'objectively unreasonable' standard is not self-explanatory, at a minimum it denotes a

20   greater degree of deference to the state courts than [the Ninth Circuit] ha[s] previously afforded

21   them." *Clark*, 331 F.3d at 1068.

22           In determining whether the state court's decision is contrary to, or an unreasonable

23   application of, clearly established federal law, a federal court looks to the decision of the

24   highest state court to address the merits of a petitioner's claim in a reasoned decision. *LaJoie v.*

25   *Thompson*, 217 F.3d 663, 669 n.7 (9th Cir. 2000).  If the highest state court has summarily

26   denied a petitioner's claim, the habeas court may "look through" that decision to the last state

27   court addressing the claim in a reasoned decision. *See Shackleford v. Hubbard*, 234 F.3d 1072,

28   1079 n.2 (9th Cir. 2000) (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991)).

United States District Court
For the Northern District of California

7

United States District Court
For the Northern District of California

1    The standard of review under AEDPA is somewhat different where the state court gives

2  no reasoned explanation of its decision on a petitioner's federal claim and where there is no

3  reasoned lower court decision on the claim.  In such a case, a review of the record is the only

4  means of deciding whether the state court's decision was objectively reasonable.  *See Hines v.*

5  *Thompson*, 336 F.3d 848, 853 (9th Cir. 2003); *Greene v. Lambert*, 288 F.3d 1081, 1088 (9th

6  Cir. 2002).  Therefore, while a state court decision on the merits concerning a question of law

7  normally should be afforded respect, "[i]f there is no such decision on the merits ... there is

8  nothing to which to defer." *Greene*, 288 F.3d at 1089.

9    In each of these three cases, Hawks' state habeas petitions and petitions for review

10  were denied without reasoned opinions.  (*See Hawks v. Kane*, No. 07-CV-366-JSW, Answer,

11  Exs. 8, 10, 14; *Hawks v. Curry*, No. 07-CV-5039-JSW, Answer, Exs. 7, 9, 11; *Hawks v. Curry*,

12  No. 08-CV-4605-JSW, Answer, Exs. 2, 5-6.)  Accordingly, the Court has conducted an

13  independent review of the record.

14  **B.    Analysis.**

15    Hawks' primary claim for relief in each of these cases is that the Board's decisions to

16  deny him parole are not supported by "some evidence" of current dangerousness.  However, in

17  cases 07-366 and 07-5039, Hawks raises additional grounds for relief, which the Court can

18  dispose of summarily.

19    In case 07-366, Hawks asserts that the Board denied his due process rights by relying

20  on facts found not found by the jury to deny him parole.  In support of this claim, Hawks relies

21  on *Apprendi v. New Jersey*, 530 U.S. 466 (2000) and *Blakely v. Washington*, 542 U.S. 296

22  (2004).  Hawks also renews an argument that the Board had a contractual obligation to grant

23  him parole. The Court rejects the claims for reasons previously stated.  *See Hawks v. Kane,*

24  2006 WL 3147693, at *9 n.4; *Hawks v. Kane*, 2006 WL 3371416, at *5 n.5.  Hawks also

25  contends that the Executive Branch has a no parole policy, implemented by the Board.  The

26  Court concludes that Hawks has not met his burden to establish a claim for relief on this basis.

27    Finally, in cases 07-366 and 07-5039, Hawks asserts that the Board should have

28  engaged in a comparative or "like crimes" analysis to make its suitability determination.  Those

8

United States District Court
For the Northern District of California

1   claims also must be rejected.  *See In re Lawrence*, 44 Cal. 4th 1181, 1205 (2008); *In re*

2   *Dannenberg*, 34 Cal. 4th 1061, 1082 (2005).

3          Accordingly, the Court denies the petitions in cases 07-366 and 07-5039 to the extent

4   they are premised on these arguments.

5          **1.      The "Some Evidence" Claims.**

6                 **a.      The Impact of *Hayward v. Marshall*.**

7          On April 22, 2010, the Ninth Circuit issued its *en banc* opinion in *Hayward v.*

8   *Marshall*, in which it resolved some open questions pertaining to federal habeas review of

9   challenges to parole suitability decisions.  The Court requested supplemental briefing from the

10  parties on the impact of *Hayward*.  In his supplemental brief, Respondent argues that *California*

11  prisoners have no liberty interest in parole, and that if they do, the only due process protections

12  available are a right to be heard and a right to be informed of the basis for the denial – that is,

13  respondent contends there is no due process right to have the result supported by some

14  evidence.  These arguments are without merit.  *See Pirtle v. California Bd. of Prison Terms*, 611

15  F.3d 1015, 1020-21 (9th Cir. 2010); *Cooke v. Solis*, 606 F.3d 1206, 1213-14 (9th Cir. 2010)

16  (citing *Hayward*, 603 F.3d at 555, 561-64); *Pearson v. Muntz*, 606 F.3d 606, 610-11 (9th Cir.

17  2010) (citing *Hayward*, 603 F.3d at 561-64).

18          In *Hayward*, the Ninth Circuit held that there is no constitutional right to "release on

19  parole, or to release in the absence of some evidence of future dangerousness," arising directly

20  from the Due Process Clause of the federal constitution.  Instead, any such right "has to arise

21  from substantive state law creating a right to release."  *Hayward*, 603 F.3d at 555; *see also id.* at

22  561.  The *Hayward* court overruled *Biggs v. Terhune*, 334 F.3d 910 (9th Cir. 2003), *Sass v.*

23  *California Bd. of Prison Terms*, 461 F.3d 1123 (9th Cir. 2006), and *Irons v. Carey*, 505 F.3d

24  846 (9th Cir. 2007), to the extent those cases might be read to imply a contrary rule.  *Id.* at 555,

25  563; *see also Pearson*, 606 F.3d at 610 n.3.   All three of those cases discussed the "some

26  evidence" requirement, but in all three it was clear that the requirement stemmed from a liberty

27  interest created by state law.  Thus, those aspects of *Biggs*, *Sass*, and *Irons* were not overruled

28  by *Hayward*.  *See Biggs*, 334 F.3d at 914-15; *Sass*, 461 F.3d at 1127-19; *Irons*, 505 F.3d at 850-

9

United States District Court

For the Northern District of California

1   51; *see also Cooke,* 606 F.3d at 1213-14 (noting that California law gives rise to a liberty

2   interest in parole).

3       In sum, the Ninth Circuit recognizes that California law gives rise to a liberty interest in

4   parole. *Pirtle*, 611 F.3d at 1020; *Cooke,* 606 F.3d at 1213-14; *Pearson,* 606 F.3d at 610-11.

5   Under California law, "some evidence" of current dangerousness is required in order to deny

6   parole. *Pirtle*, 611 F.3d at 1020; *Hayward*, 603 F.3d at 562 (citing *In re Lawrence*, 44 Cal.4th

7   1181, 1205-06 (2008), and *In re Shaputis*, 44 Cal.4th 1241 (2008)). "California's 'some

8   evidence' requirement is a component of the liberty interest created by the parole system of that

9   state." *Cooke*, 606 F.3d at 1213. Accordingly, as explained in *Hayward*, the Court reviews

10  Hawks' "some evidence" claims to determine "whether the California judicial decision"

11  approving the Board's decision to deny parole "was an 'unreasonable application' of the

12  California 'some evidence' requirement, or was 'based on an unreasonable determination of the

13  facts in light of the evidence.'" *Hayward*, 603 F.3d at 562-63 (quoting 28 U.S.C. § 2254(d)(1)-

14  (2)); *see also Cooke*, 606 F.3d at 1213; *Pearson*, 606 F.3d at 608.

15              **b.       The Board's Decision to Deny Hawks Parole in 2007 Was Not
                           Supported by Some Evidence of Current Dangerousness.**

16

17      The Court concludes that the Board's decision to deny Hawks parole in 2007 was not

18  supported by some evidence of current dangerousness.[7] The Board based its decision, in part,

19  on its "sense" that Hawks was avoiding his culpability in the commitment offense and in the

20  uncharged incident with his ex-wife. The Board specifically advised Hawks that "we would

21  like to see some work done on his part to go to" that issue. (6/26/07 Tr. at 169:5-17.) These are

22  factors that the Board can properly consider. *See Lawrence*, 44 Cal. 4th at 1214; *Shaputis*, 44

23  Cal. 4th at 1246. The Court concludes, however, that the facts in the record contradict the

24  Board's findings on this point.

25

26

27          [7]      In light of this ruling, the Court denies as moot Hawks' petitions in cases 07-
    366 and 07-5039, to the extent those petitions are premised upon the argument that the
28  Board's decisions to deny parole in 2005 and 2006 were not supported by some evidence of
    current dangerousness.

10

United States District Court

For the Northern District of California

1    For example, throughout the 2007 hearing, Hawks took responsibility for his actions on

2  the night of the commitment offense and expressed his remorse to both the Board and the

3  victims' families.  (6/26/07 Tr. at 59:17-22, 81:15-83:23, 85:7-86:13, 129:9-131:2, 131:19-23,

4  156:6-157:7, 157:18-23, ).  In addition, Hawks has sent letters of apology to the victims'

5  families, the City of Corona, and Corona's Chief of Police.  (Petition, Ex. M.)  Moreover, Dr.

6  Marek opined that "Hawks continues to express remorse and regret for his crime and takes full

7  responsibility."  (2007 Psychological Evaluation at 2.)

8    In addition, in 2005 Dr. Sexton noted that although previous clinicians had not

9  recommended that Hawks attend self-help groups or programs, Hawks took the initiative to

10  participate in 14 such programs.  Dr. Sexton explained that "[w]ith the greater awareness that ...

11  Hawks has obtained through the above programs, he has written letters of apology to the

12  victims and the victims' families.  He has participated in a magazine article, which should be

13  read in its entirety by the Board to better understand this inmate's complete understanding of

14  the crime he committed [and] the pain it has caused other people..."  (2005 Psychological

15  Evaluation at 3-4.)  These assessments are fully consistent with an evaluation prepared in 2000,

16  in which Dr. Reed stated that Hawks "showed excellent insight into his poor anger control

17  problem and alcohol abuse problem.  He showed excellent empathy towards the damage done to

18  the victims and seemed genuinely penitent for his crime."  (Petition, Ex. L (2000 Psychological

19  Evaluation at 4).)[8]

20    The Board also based its decision on the nature and circumstances of the commitment

21  offense.  (6/26/07 Tr. at 165:5-168:6.)  Although it was proper for the Board to do so, the

22  "aggravated nature of the crime does not in and of itself provide some evidence of *current*

23  dangerousness to the public unless the record also establishes that something in the prisoner's

24  pre- or post-incarceration history, or his or her current demeanor and mental state, indicates that

25  the implications regarding the prisoner's dangerousness that derive from his or her commission

26

27    [8]    In addition, a correctional officer, who has experience as a parole agent and
    who has interacted with Hawks frequently, also noted his opinion that Hawks has a deep
28  sense of remorse regarding the offense.  (Petition, Ex. H at 8 (Laudatory Chrono dated
    8/26/2006 from R. Schramm).)

United States District Court
For the Northern District of California

1   of the commitment offense remain probative to the statutory determination of a continuing

2   threat to public safety." *Lawrence*, 44 Cal. 4th at 1214 (emphasis in original); *see also*

3   *Shaputis*, 44 Cal. 4th at 1254-55; *Cooke* 606 F.3d at 1214.  As set forth above, the Board's

4   findings regarding Hawks' insight and remorse are not supported by the record.

5          The Board also relied on the uncharged incident with Hawks' ex-wife.  The facts

6   underlying that incident, like the facts underlying the commitment offense, will never change.

7   Further, as Hawks explained to the Board, at the time of the commitment offense and at the time

8   of the 1986 incident with his ex-wife, he was abusing alcohol.  At the time of the 2007 hearing,

9   however, Hawks had been participating in Alcoholics Anonymous since 1990.  Indeed, the

10  record demonstrates that Hawks' decision to remain sober is due to personal choice and that he

11  is not likely to relapse if he is paroled.  (*See* Petition, Ex. L (2007 Psychological Evaluation at

12  3; 2005 Psychological Evaluation at 1-2).)  Thus, both the commitment offense and the 1986

13  incident with Hawks' ex-wife are "temporally remote and mitigated by circumstances indicating

14  that [such] conduct is unlikely to recur." *Lawrence*, 44 Cal. 4th at 1191.  Further, Hawks

15  advised the Board that he now has a good relationship with his ex-wife.  The Board did not cite

16  to any evidence that would contradict Hawks on this point.

17         At the time of the 2007 hearing, Hawks had served 20 years in custody, three years

18  beyond the base term of 17 years to which he was sentenced.  That circumstance also

19  undermines reliance on the commitment offense to deny parole given the undisputed evidence

20  of Hawks' numerous educational and self-help achievements and his exemplary conduct while

21  incarcerated.  *See id.* at 1211 ("[A]fter these prisoners have served their suggested base terms,

22  the underlying circumstances of the offense alone rarely will provide a valid basis for denying

23  parole when there is strong evidence of rehabilitation and no other evidence of current

24  dangerousness.")

25         Accordingly, the Court concludes that state courts' application of the some evidence

26  standard was an unreasonable determination of the facts in light of the evidence before the

27  Board.  Therefore, Hawks is entitled to relief on this claim, and his petition in case 08-4605 is

28  GRANTED.

12

**United States District Court**
For the Northern District of California

**CONCLUSION**

For the foregoing reasons, the Petitions in cases 07-366 and 07-5039 are denied, in part, and denied as moot, in part.[9]  The Petition in case 08-4605 is GRANTED.  As noted, the Board has denied Hawks parole at three subsequent hearings since the 2007 hearing.  Accordingly, within twenty-one (21) days of the date of this Order, the California Board of Parole Hearings must calculate a term for Hawks and set an imminent date for his release in accordance with Section 3041(a) of the California Penal Code.  Within ten (10) days of Hawks' release, Respondent must file a notice with the Court confirming the date on which Hawks was released.

The Court shall enter separate judgments in each of these cases, and the Clerk is directed to close the files.

**IT IS SO ORDERED.**

Dated:   September 22, 2010

_____
JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE

---

[9]     Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases, the Court now must rule on whether a petitioner is entitled to a certificate of appealability in the same order in which a petition is denied.  Although the Court did not reach the merits of the some evidence claim in cases 07-366 and 07-5039, the Court does find that Hawks made a substantial showing that those claims amounted to a denial of his constitutional rights and demonstrated that a reasonable jurist would find the denial of those claims debatable or wrong.  Accordingly, if Hawks has reason to appeal those claims, the Court grants certificates of appealability *solely* on the issue of whether the Board's decision to deny parole was supported by some evidence of current dangerousness.

13